## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DEPUY SYNTHES PRODUCTS, INC.
and DEPUY SYNTHES SALES, INC.,

      Plaintiffs,

v.

VETERINARY ORTHOPEDIC
IMPLANTS, INC.,

      Defendant.

Civil Action No.

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc. (collectively, "DePuy Synthes"), by and through their undersigned attorneys, complains and alleges against Defendant Veterinary Orthopedic Implants, Inc. ("VOI") as follows:

### THE PARTIES

1.      Plaintiff DePuy Synthes Products, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 325 Paramount Drive, Raynham, Massachusetts 02767.

2.      Plaintiff DePuy Synthes Sales, Inc. is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at 325 Paramount Drive, Raynham, Massachusetts 02767.

3.      Upon information and belief, defendant VOI is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 310 Commerce Lake Drive, Unit 107, St. Augustine, Florida 32095.

**JURISDICTION AND VENUE**

4.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 U.S.C. §§ 1 et seq.

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.     This Court has personal jurisdiction over VOI because, on information and belief, VOI is a Florida corporation with a principal place of business in St. Augustine, Florida, and transacts business in Florida.  This Court further has personal jurisdiction over VOI because, on information and belief, VOI transacts continuous and systematic business within Florida.   Moreover, this Court has personal jurisdiction over VOI because, on information and belief, this lawsuit arises out of VOI's infringing activities including, without limitation, VOI's manufacturing, distributing, selling and/or offering to sell infringing products in Florida, and/or importing infringing products and components into Florida.  Finally, this Court has personal jurisdiction over VOI because, on information and belief, VOI has made, used, sold, offered for sale and/or imported their infringing products and placed such infringing products in the stream of interstate commerce with the expectation that such infringing products would be used, distributed, sold and/or offered for sale within Florida.

7.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.  Venue is also proper within this district because VOI resides in the Middle District of Florida insofar as it is a Florida corporation that maintains a principal place of business in St. Augustine, Florida, which is located within St. Johns County.  In addition, venue is also proper within this

district because, on information and belief, VOI has committed acts of infringement and maintains a regular and established place of business in the Middle District of Florida.

## THE ASSERTED PATENT

8.     On September 3, 2013, U.S. Patent No. 8,523,921 ("the '921 patent"), entitled "Tibial Plateau Leveling Osteotomy Plate," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") and names Timothy J. Horan, Christopher H. Scholl, and Daneen K. Touhalisky as inventors. A copy of the '921 patent is attached as Exhibit A.

9.     The '921 patent is directed to surgical plates for use in tibial plateau leveling osteotomy ("TPLO") procedures. TPLO procedures are used in veterinary medicine to correct ruptured cranial cruciate ligaments in canines and other animals. The '921 patent is also directed to kits and methods of using the plates in TPLO procedures.

10.     By lawful assignment, plaintiff DePuy Synthes Products, Inc. is the owner of all rights, title and interest in and to the '921 patent.

11.     By lawful license, DePuy Synthes Sales, Inc. is the exclusive licensee of the '921 patent from DePuy Synthes Products, Inc. with the exclusive right to sell and offer to sell products covered by the '921 patent to third parties.

## THE ACCUSED PRODUCTS

12.     Defendant VOI manufactures, imports, sells or offers for sale implants, screws and instrumentation for veterinary orthopedic use, including plates and screws for use in tibial plateau leveling osteotomy ("TPLO") procedures.

13.     Defendant VOI has manufactured, imported, sold or offered for sale TPLO plates since at least September 3, 2013.

14.     Defendant VOI's marketing literature depicts many TPLO plates.  Such plates include the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3, 7 DT 2.7 L3, 2 DT 3.5 SM R3, 2 DT 3.5 SM L3, 6 DT 2.7 R3, 6 DT 2.7 L3, 6 DT 3.5 SM R3, 6 DT 3.5 SM L3, 6 DT 3.5 R3, 6 DT 3.5 L3, 9 DT 2.7 R3, 9 DT 2.7 L3, 9 DT 2.7B R3, 9 DT 2.7B L3, 9 DT 3.5 R3, 9 DT 3.5 L3, 9 DT 3.5 SM R3 and 9 DT 3.5 SM L3 TPLO plates.  A copy of Defendant VOI's marketing literature displaying a rendering of these plates is attached hereto as Exhibit B.  In addition, Defendant VOI has marketed TPLO plates bearing at least item numbers 4 S Swiss 3.5 SM L3, 2 Swiss 3.5 SM L3, 2 Swiss 3.5 R3 and 2 Swiss 2.7B L3.  Photos of these plates are shown in a letter from DePuy Synthes to VOI dated October 14, 2013, which is attached hereto as Exhibit C.  Collectively, the TPLO plates identified in this paragraph are the "Accused Products."

15.     Pictures of four samples of the Accused Products, namely 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3, are shown in Exhibit D attached hereto.

16.     The 2 DT 3.5 L3 plate is pictured below in a side-by-side comparison with Figure 1 of the '921 patent.



(Ex. D, VOI 2 DT 3.5 L3)



('921 Patent, Figure 1.)

17.     The 7 DT 2.7 L3 plate is pictured below in a side-by-side comparison with Figure 1 of the '921 patent.





(Ex. D, VOI 7 DT 2.7 L3)



('921 Patent, Figure 1.)

18.     On information and belief, VOI's naming convention is such that it uses the letter "R" (*e.g.*, 2 DT 3.5 **R**3) for plates intended for implantation on the right leg of the animal and the letter "L" (*e.g.*, 2 DT 3.5 **L**3) for plates intended for implantation on the left leg of the animal.  On information and belief, VOI TPLO plates that have the same model number except for an "R" or "L" are mirror images of each other.

## COMMUNICATIONS BETWEEN THE PARTIES

19.     In the October 14, 2013 letter attached hereto as Exhibit C, DePuy Synthes informed VOI that several of VOI's TPLO plates infringed the '921 patent.

20.     VOI responded by letter on November 1, 2013 asking DePuy Synthes to identify the specific claims of the '921 patent that were infringed.  The November 1, 2013 letter is attached hereto as Exhibit E.

21.     DePuy Synthes sent another letter to VOI on November 8, 2013 explaining that VOI infringed all claims of the '921 patent.  The November 8, 2013 letter is attached hereto as Exhibit F.

22.     VOI responded by letter on December 17, 2013 alleging that they did not infringe any claim of the '921 patent.  The December 17, 2013 letter is attached hereto as Exhibit G.

23.     DePuy Synthes replied to VOI by email on January 2, 2014 expressing its disagreement with VOI's letter.  The January 2, 2014 email is attached hereto as Exhibit H.

## COUNT ONE
## VOI's Direct Infringement of the '921 Patent

24.     DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1-23 above.

25.     On information and belief, VOI, without authority, has directly infringed and continues to directly infringe the '921 patent, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products.

26.     As described in greater detail herein, the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates practice each limitation of at least claim 12 of the '921 patent.   On information and belief, these plates are representative of the other Accused Products.   On information and belief, the other Accused Products practice each limitation of at least claim 12 of the '921 patent for the same reasons as those described herein for the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates.

27.     In addition to the Accused Products, VOI manufactures, imports, sells or offers for sale other TPLO plates that may also infringe the '921 patent.   DePuy Synthes will ascertain in discovery whether these additional TPLO plates also infringe the '921 patent. *See Florida Atl. Univ. Research Corp. v. Acer Inc.*, Case No. 12-80694-CIV, 2013 WL 12170521, at *3 (S.D. Fla. Nov. 27, 2013) (granting motion for discovery regarding non-accused products).

28.     On information and belief, the 2 DT 3.5 L3 TPLO plate is a mirror image of the 2 DT 3.5 R3 TPLO plate.   The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 2 DT 3.5 R3)                                    (Ex. D, 2 DT 3.5 L3)

29.     On information and belief, the 7 DT 2.7 L3 TPLO plate is a mirror image of the 7 DT 2.7 R3 TPLO plate.  The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 7 DT 2.7 R3)                                    (Ex. D, 7 DT 2.7 L3)

30.     In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates as illustrative examples is attached as Exhibit I, and is incorporated herein by reference.

31.     On information and belief, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates do not differ for purposes of infringement from the other Accused Products.  For example, the 2 DT 3.5 R3 TPLO plate does not differ materially from the 7 DT 2.7 R3 TPLO plate except for the size of the plates, as indicated in the side-by-side comparison below.  The difference in size does not affect the infringement analysis below.  Accordingly, the analysis of the 2 DT 3.5 R3 TPLO plate in Exhibit I also demonstrates infringement of the 7 DT 2.7 R3 TPLO plate.

       

(Ex. D, VOI 2 DT 3.5 R3)            (Ex. D, VOI 7 DT 2.7 R3)

32.     By way of further example, the 2 DT 3.5 L3 and 7 DT 2.7 L3 TPLO plates do not differ for purposes of infringement except for the size of the plates, as indicated in the side-by-side comparison below.  The difference in size does not affect the infringement

analysis below.   Accordingly, the use of the 2 DT 3.5 L3 TPLO plate in Exhibit I also demonstrates infringement of the 7 DT 2.7 L3 TPLO plate.

      



(Ex. D, VOI 2 DT 3.5 L3)              (Ex. D, VOI 7 DT 2.7 L3)

33.     Claim 12 of the '921 patent is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of screw holes each designed to accept a screw; and a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."

34.     The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a distal portion comprising an elongated shaft."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit I, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a distal portion 12.  The shaft 80 of the distal portion 12 is elongated relative to its depth (not shown, but reported by VOI as 3.7 mm) and width W (11 mm).  (*See* Exhibit B.)

35.     The Accused Products satisfy the requirement in claim 12 that the bone plate's distal portion "hav[e] disposed therein a plurality of screw holes each designed to accept a screw."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit I, the distal portion 12 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises three screw holes 16 that are designed to accept screws.  (*See, e.g.*, Exhibit B.)

36.     The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a proximal portion comprising at least three screw holes each designed to accept a screw."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit I, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws.  (*See, e.g.*, Exhibit B.)

37.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a first screw hole [that] is a superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as

Exhibit I, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a superior screw hole 30.

38.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a second screw hole [that] is a cranial screw hole located distally and cranially from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit I, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a cranial screw hole 31, located closer to the distal portion 12 and to the cranial side relative to the superior screw hole 30.  (*See* '921 patent, Fig. 7.)

39.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a third screw hole [that] is a caudal screw hole located distally and caudally from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit I, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a caudal screw hole 32, located closer to the distal portion 12 and to the caudal side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

40.     The Accused Products satisfy the requirement in claim 12 that the "screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."  As described above, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates has three screw holes 30, 31 and 32.  (*See, e.g.*, Exhibit B.)  Screws are inserted

through each of the superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 at predetermined angles in both the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates.

41.     The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is predetermined and angled so as to direct the screw in the superior screw hole 30 away from an articular surface between the tibia and the femur.  The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw holes 31 and caudal screw holes 32 are both located closer to the distal portion 12 (i.e., farther from the articular surface) than the superior screw hole 30 and predetermined and angled such that screws in their cranial and caudal screw holes, respectively, are directed away from an articular surface.

42.     The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw hole 31 and caudal screw hole 32 are predetermined and angled to direct screws away from an osteotomy surface of the tibia.  The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is located farther away from the distal portion 12 than the cranial screw hole 31 and caudal screw hole 32 and is predetermined and angled such that the screw in the superior screw hole 30 is directed away from an osteotomy surface.

43.     The caudal screw holes 32, the superior screw holes 30 and the cranial screw holes 31 of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled to direct the screws in their respective screw holes away from edges of the tibia.

44.     The superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled such that screws in their respective holes enter into the central mass of the tibia.

45.     As a result of VOI's infringement of the '921 patent, DePuy Synthes has suffered and will continue to suffer damages.

46.     VOI's infringement of the '921 patent is willful, making this an exceptional case and entitling DePuy Synthes to enhanced damages and attorneys' fees.  VOI has known of the '921 patent no later than DePuy Synthes's letter to VOI dated October 14, 2013.  On information and belief, VOI has knowingly and willfully infringed the '921 patent by manufacturing, importing, using, selling and offering to sell the Accused Products, including the TPLO plates identified in DePuy Synthes's October 14, 2013 letter and the TPLO plates that VOI currently manufactures, imports, uses, sells or offers for sale.

47.     Despite its knowledge of its infringement of the '921 patent, VOI has continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct its customers to use the Accused Products in a manner that infringes.

48.     On information and belief, VOI does not include certain of the Accused Products in its publicly available catalog (*see* Exhibit J), but nevertheless offers the Accused Products for sale to prospective customers through privately circulated marketing materials such as Exhibit B.

49.     VOI contended in its correspondence to DePuy Synthes that its TPLO plates do not infringe claim 12 of the '921 patent because the screw holes are aligned with generally parallel axes and do not have the configuration necessary to achieve the intended function.  Such contentions were and are frivolous because they are not directed to actual claim limitations of the '921 patent.

14

50.     DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that have a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia.

51.     DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '921 patent.

52.     On information and belief, VOI copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

53.     DePuy Synthes has been irreparably harmed by VOI's infringement of the '921 patent and will continue to be harmed unless VOI's infringing conduct is restrained and enjoined by order of this Court.

## PRAYER FOR RELIEF

WHEREFORE, DePuy Synthes respectfully requests that this Court:

1.     Adjudge that VOI has directly infringed, literally or under the doctrine of equivalents, at least claim 12 of the '921 patent, and that the manufacture, use, sale, offer for

sale and/or importation of at least the Accused Products infringe at least claim 12 of the '921 patent;

2.      Permanently enjoin VOI, its officers, agents, servants and employees, and those in active concert or participation with any of them, from infringing the '921 patent;

3.      Award DePuy Synthes compensatory damages for VOI's infringement of the '921 patent;

4.      Award DePuy Synthes increased damages under 35 U.S.C. § 284 for VOI's willful and deliberate infringement of the '921 patent;

5.      Declare this to be an exceptional case under 35 U.S.C. § 285;

6.      Award DePuy Synthes its attorney fees and costs incurred in prosecuting this action, together with pre-judgment and post-judgment interest; and

7.      Grant DePuy Synthes such other and further relief as this Court deems just and proper.

## JURY DEMAND

DePuy Synthes hereby respectfully requests a trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated this 12th day of November 2018.

GRAYROBINSON P.A.

By: /s/  R. Troy Smith
R. Troy Smith
Florida Bar No. 485519
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
Phone: (904) 598-9929
Fax No.: (904) 598-9109
troy.smith@gray-robinson.com

*maria.daniels@gray-robinson.com*

Matthew J. Becker (*pro hac* motion forthcoming)
Connecticut Bar No. 404528
Edward M. Mathias (*pro hac* motion forthcoming)
Connecticut Bar No. 429782
Rebecca L. Clegg (*pro hac* motion forthcoming)
Connecticut Bar No. 437155
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Phone: (860) 275-8100
Fax: (860) 275-8101
*mbecker@axinn.com*
*tmathias@axinn.com*
*rclegg@axinn.com*

**Attorneys for Plaintiffs DePuy Synthes
Products, Inc. and DePuy Synthes Sales, Inc.**