**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

DEPUY SYNTHES PRODUCTS, INC.
and DEPUY SYNTHES SALES, INC.,

         Plaintiffs,

v.

VETERINARY ORTHOPEDIC
IMPLANTS, INC., ███████████ and
FIDELIO CAPITAL AB (d/b/a OSSIUM
GROUP),

         Defendants.

_____/

Civil Action No.
3:18-cv-1342-J-20PDB

**JURY TRIAL DEMANDED**

CONTAINS HIGHLY-
CONFIDENTIAL - OUTSIDE
ATTORNEYS EYES ONLY
INFORMATION

<u>**PLAINTIFFS' SECOND AMENDED COMPLAINT**</u>
<u>**AND DEMAND FOR JURY TRIAL**</u>

      Plaintiffs DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc. (collectively, "DePuy Synthes"), by and through their undersigned attorneys, complain and allege against Defendants Veterinary Orthopedic Implants, Inc. ("VOI"), ███████████ ███████, and Fidelio Capital AB (d/b/a Ossium Group) ("Fidelio") (collectively "Defendants") as follows:

**THE PARTIES**

      1.     Plaintiff DePuy Synthes Products, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 325 Paramount Drive, Raynham, Massachusetts 02767.

2.      Plaintiff DePuy Synthes Sales, Inc. is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at 325 Paramount Drive, Raynham, Massachusetts 02767.

3.      On information and belief, defendant VOI is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 310 Commerce Lake Drive, Unit 107, St. Augustine, Florida 32095.

4.      On information and belief, defendant █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

5.      On information and belief, defendant Fidelio is a foreign corporation organized and existing under the laws of Sweden with its principal place of business at Birger Jarlsgatan 13, 111 45 Stockholm, Sweden.

6.      On information and belief, Fidelio announced that it had acquired a majority interest in VOI on or about June 16, 2020. In a corporate disclosure statement filed on October 19, 2020, VOI identified Fidelio as having been its majority shareholder since May 5, 2020. Doc. 214.

7.      On information and belief, Fidelio has been aware of the asserted patent and VOI's infringing activity from pre-acquisition diligence and thus has been on notice of VOI's infringement since no later than on or about May 5, 2020. On information and belief, Fidelio now controls VOI, including with respect to VOI's decision-making whether or not to sell and continue to sell the Accused Products.  As an example, █████████████████████████████████████████████████████████████████████████████████████████████████████████

8.      On information and belief, Fidelio is using VOI as a mere alter ego to sell infringing copies of Plaintiffs' products, without regard for whether VOI is able to account for the liability it has incurred and continues to incur.

9.      VOI has admitted in untimely corporate disclosure statements filed with the Federal Circuit and this Court that its parent is "Fidelio Capital d/b/a Ossium."  *See* Doc. 214. Ossium in turn advertises that it is distributing the orthopedic implants and kits that are the subject of this lawsuit in the United States, listing Patrick Gendreau as one of three individuals under the heading "CEO" and including a link to the VOI website:

> Ossium Group ("Ossium") was created by Fidelio through the acquisition of three companies located in Switzerland and the U.S. during 2019 and 2020, creating a global leader within veterinary orthopedic implants.
>
> In addition to designing and distributing veterinary orthopedic implants and instruments, Ossium runs educational seminars to educate and train veterinarians in the various procedures as well as keeping them up to date of recent product developments.
>
> Boasting a broad product offering ranging from advanced hip implants to sutures, the group will continue to invest in innovation and R&D, and serve the market through best-in-class commercial operations. Products are sold to veterinarians and animal hospitals in 45+ markets with the largest product groups being implants for hips and knees as well as fracture plates.

*Ossium*, FIDELIO CAPITAL, https://fideliocapital.se/cases/ossium-2/.

10.     Public statements by employees of the Ossium Group further confirm that it does not observe corporate formalities and that Fidelio is using the entities that make up the Ossium Group as alter egos.

> **From:** Annette Baez Vega <annette@biomedtrix.com>
> **Date:** October 26, 2020 at 6:21:33 PM MST
> **To:** Ross Lirtzman <Ross@asgscottsdale.com>
> **Subject: BioMedtrix TPLO plates**

3

Hi Ross,

I hope you are well and I heard Synthes is on backorder on their 3.5 plates. We have some in stock as well as VOI and Kyon. In 2021 our finances will be combined into one company and between VOI, Kyon, and BioMedtrix we own a vast percentage in the orthopedic industry.

Please let me know if I can fulfill any of your needs.

Sincerely,
Annette



**Annette Baez**
Technical Sales Associate
📞 973.265.9036 | 📱 908.868.6352

BioMedtrix.com
9 Whippany Rd. Ste B2-7 | Whippany, NJ 07981

11.     For example, on information and belief, employees of one of the Ossium member entities, "Biomedtrix," are offering for sale infringing TPLO plates imported, manufactured, sold, and/or offered by sale by VOI as alternatives to "Synthes" (i.e., Plaintiffs') plates.

12.     For example, on information and belief, Ossium combines Kyon, BioMedtrix, and VOI and treats them as one entity.   On information and belief, Ossium is seeking to establish a combined e-commerce platform that unifies each company's product line in a single location, and that it recently began seeking to employ a single individual on behalf of all three companies to implement this strategy.[1]

---

[1] *See Web Developer – Mid-Level*, PAYLOCITY,
https://recruiting.paylocity.com/recruiting/jobs/Details/379260/Veterinary-Orthopedic-Implants/Web-Developer---Mid-Level.



**Web Developer - Mid-Level**
St. Augustine, FL



**Description**
Are you interested in working for a leading company in the Veterinary Implant industry? Are you looking for growth potential with a company that has a great culture and a desire to be the best?  As a web developer for Ossium (BioMedtrix, KYON, and Veterinary Orthopedic Implants), you will strive to create and maintain visually appealing sites that feature user-friendly design and clear navigation. You will first be responsible for the successful buildout of a global eCommerce website with the ability to handle multiple currencies and languages on the Big Commerce (or similar open-source platform) for a product portfolio of around 15,000 products.

Apply

13.     On information and belief, VOI is ███████████████████████████

███████████████████ For example, ██████████████████████████████████



**JURISDICTION AND VENUE**

14.     This is an action for patent infringement arising under the patent laws of the

United States, Title 35 U.S.C. §§ 1 et seq.

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331, 1332, and 1338(a).

16.     Each Defendant is subject to this Court's specific and general jurisdiction consistent with the principles of due process and/or the Florida Long Arm Statute.  This Court has personal jurisdiction over VOI because, on information and belief, VOI is a Florida corporation with a principal place of business in St. Augustine, Florida, and transacts business in Florida.  This Court further has personal jurisdiction over VOI because, on information and belief, VOI transacts continuous and systematic business within Florida.  Moreover, this Court has personal jurisdiction over VOI because, on information and belief, this lawsuit arises out of VOI's infringing activities including, without limitation, VOI's manufacturing, distributing, selling and/or offering to sell infringing products in Florida, and/or importing infringing products and components into Florida.  Finally, this Court has personal jurisdiction over VOI because, on information and belief, VOI has made, used, sold, offered for sale and/or imported infringing products and placed such infringing products in the stream of interstate commerce with the expectation that such infringing products would be used, distributed, sold and/or offered for sale within Florida.

17.     This Court has personal jurisdiction over ▮▮▮▮ because, on information and belief, ▮▮▮▮ transacts continuous and systematic business within Florida.  Moreover, this Court has personal jurisdiction over ▮▮▮▮ because, on information and belief, this lawsuit arises out of ▮▮▮▮ infringing activities including, without limitation, ▮▮▮▮ manufacturing, distributing, selling and/or offering to sell infringing products in Florida, and/or importing infringing products and components into Florida.  Finally, this Court has personal jurisdiction over ▮▮▮▮ because, on information and belief, ▮▮▮▮ has made, used, sold, offered for sale and/or imported its infringing products and placed such infringing

products in the stream of interstate commerce with the expectation that such infringing products would be used, distributed, sold and/or offered for sale within Florida.

18.     This Court has personal jurisdiction over Fidelio because, on information and belief, Fidelio transacts continuous and systematic business within Florida, including through its acquisition and control of VOI.  Moreover, this Court has personal jurisdiction over Fidelio because, on information and belief, this lawsuit arises out of Fidelio's infringing activities including, without limitation, actively encouraging VOI's manufacturing, distributing, selling and/or offering to sell infringing products in Florida, and/or importing infringing products and components into Florida.  Finally, this Court has personal jurisdiction over Fidelio because, on information and belief, Fidelio has actively encouraged VOI to have made, used, sold, offered for sale, and/or imported its infringing products and placed such infringing products in the stream of interstate commerce with the expectation that such infringing products would be used, distributed, sold, and/or offered for sale within Florida.  Personal jurisdiction over Fidelio with respect to Plaintiffs' claims is also proper under the doctrine of pendent personal jurisdiction, as this Court has personal jurisdiction over VOI, and Plaintiffs' claims against Fidelio arise out of the same common nucleus of operative facts.

19.     In the alternative, on information and belief, this Court has personal jurisdiction over Fidelio pursuant to Federal Rule of Civil Procedure 4(k)(2) because Fidelio has extensive contacts with the United States, including but not limited to the above-described contacts, is not subject to jurisdiction in any particular state, and exercising jurisdiction over Fidelio is consistent with the laws of the United States and the United States Constitution.

20.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.  Venue is also proper within this district because VOI resides in the Middle District of Florida insofar as it is a Florida corporation that maintains a principal place of business in St. Augustine, Florida, which is located within St. Johns County, and, on information and belief, VOI has committed acts of infringement and maintains a regular and established place of business in the Middle District of Florida.  In addition, venue is also proper in this district because, on information and belief: ████ has committed acts of infringement in the Middle District of Florida, personal jurisdiction exists over ████ in this District, and ████ is a █████████████ and Fidelio has committed acts of infringement in the Middle District of Florida, personal jurisdiction exists over Fidelio in this District, and Fidelio is a Swedish corporation.

21.     Moreover, venue as to Fidelio is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because Fidelio is not a resident of the United States and, therefore, venue is proper in any judicial district.

22.     Defendants are properly joined under 35 U.S.C. § 299(a)(1) because, as set forth in greater detail below, defendants, through their own acts and/or through the acts of each other acting as its representative, alter ego, or agent, commonly and/or jointly manufacture, offer for sale, sell, or import into the United States, the same infringing plates used in tibial leveling osteotomy procedures, such that at least one right to relief is asserted against defendants jointly, severally, and in the alternative with respect to the same transactions, occurrences, or series of transactions or occurrences relating to the making, using, selling and/or offering to sell in, and/or importing into the United States the same accused products.

23.     Defendants are properly joined under 35 U.S.C. § 299(a)(2) because, as set forth in greater detail below, defendants, through their own acts and/or through the acts of each other acting as its representative, alter ego, or agent, make, use, sell and/or offer to sell in, and/or import into the United States the same infringing plates used in tibial leveling osteotomy procedures, such that questions of fact will arise that are common to all defendants.

## THE ASSERTED PATENT

24.     On September 3, 2013, U.S. Patent No. 8,523,921 ("the '921 patent"), entitled "Tibial Plateau Leveling Osteotomy Plate," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") and names Timothy J. Horan, Christopher H. Scholl, and Daneen K. Touhalisky as inventors.  A copy of the '921 patent is attached as Exhibit A.

25.     The '921 patent is directed to surgical plates for use in tibial plateau leveling osteotomy ("TPLO") procedures.  TPLO procedures are used in veterinary medicine to correct ruptured cranial cruciate ligaments in canines and other animals.  The '921 patent is also directed to kits and methods of using the plates in TPLO procedures. TPLO procedures include CORA-based tibial leveling osteotomy ("CBLO") procedures.

26.     By lawful assignment, plaintiff DePuy Synthes Products, Inc. is the owner of all rights, title and interest in and to the '921 patent.

27.     By lawful license, DePuy Synthes Sales, Inc. is the exclusive licensee of the '921 patent from DePuy Synthes Products, Inc. with the exclusive right to sell and offer to sell products covered by the '921 patent to third parties.

## THE ACCUSED PRODUCTS

28.     Defendants VOI, ███ and Fidelio manufacture, import, sell and/or offer for sale implants, screws and instrumentation for veterinary orthopedic use, including plates and screws for use in tibial plateau leveling osteotomy ("TPLO") procedures, which include plates used in CORA-based tibial leveling osteotomy ("CBLO") procedures.

29.     Defendants have manufactured, imported, sold or offered for sale TPLO plates, as well as products and services suitable for use in TPLO and CBLO procedures.  Defendants' marketing literature depicts many TPLO plates.  For purposes of this action, the plates at issue are those identified on the attached Exhibit B, and the accused non-plate portions of the infringing kits at issue are those identified in Exhibit I, as well as substantially similar designs to those in Exhibits B and I (collectively, Exhibits B and I, and substantially similar designs to the designs in Exhibit B and I, are the "Accused Products").  The Accused Products are not staple articles of commerce suitable for any non-infringing use.

30.     On information and belief, VOI has been on notice of the patent since at least 2013, as evidenced by Exhibit C.

31.     On information and belief, ███ manufactures at least plates and screws that come within the definition of the Accused Products.

32.     Counsel for VOI stated in Court with respect to ███ "[W]e don't have engineers that are creating engineering drawings. So when they [DePuy Synthes] asked for engineering drawings, we went to the manufacturer, which is not us, and got the engineering drawings."

33.     On information and belief, ███████████████ offers for sale in the United States, and sells in the United States the Accused Products, in all cases to at least VOI.

34.     For example, and as evidenced below, invoices show that ██████ is offering to sell to VOI in Florida, selling to VOI in Florida, and shipping to VOI in Florida "TPLO plates" identified by VOI item numbers associated with the Accused Products.







has a history of pirating products.  For example,

████████████████████████████████

████████████

36.     Pictures of four samples of the Accused Products, namely 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 are shown in Exhibit D attached hereto.

37.     On information and belief, the 7 DT 2.7 R3 and 7 DT 2.7 L3 products are also identified by VOI as 2 DT 2.7 R3 and 2 DT 2.7 L3, respectively.

38.     The 2 DT 3.5 L3 plate is pictured below in a side-by-side comparison with Figure 1 of the '921 patent.





(Ex. D, VOI 2 DT 3.5 L3)          ('921 Patent, Figure 1.)

████████████████████████████████

39.     The 7 DT 2.7 L3 (a/k/a the 2 DT 2.7 L3) plate is pictured below in a side-by-side comparison with Figure 1 of the '921 patent.





(Ex. D, VOI 7 DT 2.7 L3)                    ('921 Patent, Figure 1.)

40.     On information and belief, VOI's naming convention is such that it uses the letter "R" (*e.g.*, 2 DT 3.5 **R**3) for plates intended for implantation on the right leg of the animal and the letter "L" (*e.g.*, 2 DT 3.5 **L**3) for plates intended for implantation on the left leg of the animal.  On information and belief, VOI's TPLO plates that have the same model number except for an "R" or "L" are mirror images of each other.

**COMMUNICATIONS BETWEEN DEPUY SYNTHES AND VOI**

41.     Beginning no later than October 14, 2013, DePuy Synthes put VOI on notice of the '921 patent.  Exhibit C. There was an exchange between November 1, 2013 and January 2, 2014, in which VOI made representations regarding how its products were designed.  Exhibits E through H.   Plaintiffs are informed and believe that VOI has since changed its designs.

15

Plaintiffs are informed and believe that VOI arranged for Plaintiffs to receive doctored versions

of VOI plates ███████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

[VOI_031138.]

42.     After the above-referenced communications between DePuy Synthes and VOI,

VOI attempted to hide from public scrutiny its activity involving TPLO plates.  For example,

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

43.   As another example, 

44.   As another example,

45.     On information and belief, ██████████████████████████
████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

46.     On information and belief, ████████████████████████
████████████████████████████████████

██████:





## FIDELIO IS INDEPENDENTLY LIABLE

47.     VOI has admitted in untimely corporate disclosure statements that its parent is

"Fidelio Capital d/b/a Ossium."  *See* Doc. 214.

48.     On information and belief, Ossium in turn advertises that it is distributing the

orthopedic implants and kits that are the subject of this lawsuit in the United States, listing

Patrick Gendreau as one of three individuals under the heading "CEO" and including a link to

the VOI website:

> Ossium Group ("Ossium") was created by Fidelio through the acquisition of
> three companies located in Switzerland and the U.S. during 2019 and 2020,
> creating a global leader within veterinary orthopedic implants.
>
> In addition to designing and distributing veterinary orthopedic implants and
> instruments, Ossium runs educational seminars to educate and train
> veterinarians in the various procedures as well as keeping them up to date of
> recent product developments.
>
> Boasting a broad product offering ranging from advanced hip implants to
> sutures, the group will continue to invest in innovation and R&D, and serve
> the market through best-in-class commercial operations. Products are sold to
> veterinarians and animal hospitals in 45+ markets with the largest product
> groups being implants for hips and knees as well as fracture plates.

*Ossium*, FIDELIO CAPITAL, https://fideliocapital.se/cases/ossium-2/.

49.     On information and belief, the training seminars educate and instruct

veterinarians to conduct procedures involving the Accused Products. For example, Matthew

Haas, a former VOI sales executive,

████████████████████████████████████████████████████
██████████████████████████████████████████████ In a sworn

declaration submitted in the matter *Veterinary Orthopedic Implants, Inc. v. Matthew Haas*, No.

20-cv-00868-MMH-MCR (M.D. Fla. Aug. 18, 2020), Mr. Haas further explained that though

such training seminars or "labs" are "ostensibly non-commercial and instead purely

education, . . . approximately 80% of [his] sales occurred at labs because doctors would learn

about the new techniques and ask what products [VOI] sells that can support that technique."

20-cv-00868-MMH-MCR, Doc. 18-2, ¶ 12.

50.    On information and belief, VOI is being used as an alter ego and mere

instrumentality of its majority shareholder Fidelio to unfairly and inequitably shield itself from

liability incurred by VOI's ongoing enterprise of copying Plaintiffs' patented products.   For

example, VOI's corporate representative and President, Patrick Gendreau, testified, ████████

████████████████████████████████████████████████████

████████████████████████████████████ *See, e.g.,* Gendreau

Depo. at ████████   *id.* at ████████ ("████████████████████████████

████████████████████████████"). As another example, Tim

VanHorssen, a VOI Business Development Executive, testified ████████████████████

████████████████████████████████████████████████████

████████████████████ VanHorssen Depo. at ██████.

51.    Public statements by employees of the Ossium Group further confirm that it

does not observe corporate formalities and that it is using the entities that make up the Ossium

Group as alter egos.

**From:** Annette Baez Vega <annette@biomedtrix.com>
**Date:** October 26, 2020 at 6:21:33 PM MST
**To:** Ross Lirtzman <Ross@asgscottsdale.com>
**Subject: BioMedtrix TPLO plates**

Hi Ross,

I hope you are well and I heard Synthes is on backorder on their 3.5 plates. We have some in stock as well as VOI and Kyon. In 2021 our finances will be combined into one company and between VOI, Kyon, and BioMedtrix we own a vast percentage in the orthopedic industry.

Please let me know if I can fulfill any of your needs.

Sincerely,
Annette

 **Annette Baez**
**Technical Sales Associate**
📞 973.265.9036 | 📱 908.868.6352

BioMedtrix.com
9 Whippany Rd, Ste B2-7 | Whippany, NJ 07981
[f] [▶]

52.     For example, on information and belief, employees of one entity "Biomedtrix" are offering for sale infringing TPLO plates imported by VOI as alternatives to "Synthes" (i.e., Plaintiffs') plates.

53.     Further, on information and belief, Ossium combines Kyon, BioMedtrix and VOI and treats them as one entity.

54.     On information and belief, VOI is attempting to hide this commercial behavior. For example, a senior executive at VOI  . VanHorssen Depo. at ███ ("███

21

██████████████████████████████████████████████████████████

██████████████████████████████████████████ ').

## COUNT ONE
### VOI Direct and Indirect Infringement of the '921 patent

55.     DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1–54 above.

56.     On information and belief, VOI, without authority, has directly infringed and continues to directly infringe the '921 patent, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products. For example, through Ossium, Fidelio runs, and VOI participates in, educational seminars to educate and train veterinarians in the various procedures that involve the Accused Products.  VOI also provides screws and equipment that are used with the plates and methods accused of infringement in this action.  On information and belief, the underlying purpose of these seminars is to sell and offer for sale the Accused Products and to instruct veterinarians to use such products in an infringing manner. Through these educational seminars, VOI induces veterinarians to directly infringe the '921 patent.  For example, Matthew Haas, a former VOI sales executive, ██████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████ Haas Depo. at ██████████

In a sworn declaration submitted in the matter *Veterinary Orthopedic Implants, Inc. v. Matthew Haas*, No. 20-cv-00868-MMH-MCR (M.D. Fla. Aug. 18, 2020), Mr. Haas further explained that though such training seminars or "labs" are "ostensibly non-commercial and instead purely education, . . . approximately 80% of [his] sales occurred at labs because doctors would learn

about the new techniques and ask what products [VOI] sells that can support that technique."
20-cv-00868-MMH-MCR, Doc. 18-2, ¶ 12.

57.     VOI manufactures, imports, sells or offers for sale other products and services
that are suitable for use in TPLO and CBLO procedures.   Examples of VOI's products
constituting convoyed sales are included in the attached Exhibit I, as well as substantially
similar designs to those designs in Exhibit I.

58.     A detailed infringement analysis for each of the Accused Products is provided
in the interrogatory responses served in this matter, which are attached as Exhibit L.   For
illustrative purposes, and as described in greater detail herein, the 2 DT 3.5 R3, 2 DT 3.5 L3,
7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates practice each limitation of at least claim 12 of
the '921 patent.   On information and belief, these plates are representative of the other Accused
Products identified in Exhibit B.   On information and belief, the other Accused Products
practice each limitation of at least claim 12 of the '921 patent for the same reasons as those
described herein for the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates.

59.     On information and belief, the 2 DT 3.5 L3 TPLO plate is a mirror image of the
2 DT 3.5 R3 TPLO plate.   The infringement analysis for the two plates is identical after
accounting for the fact that, being mirror images, the placement of the cranial and caudal screw
holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 2 DT 3.5 R3)                    (Ex. D, 2 DT 3.5 L3)

60.     On information and belief, the 7 DT 2.7 L3 TPLO plate is a mirror image of the 7 DT 2.7 R3 TPLO plate.   The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 7 DT 2.7 R3)                    (Ex. D, 7 DT 2.7 L3)

61. In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates as illustrative examples is attached as Exhibit J, and is incorporated herein by reference.

62. On information and belief, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates do not differ for purposes of infringement from the other Accused Products identified in Exhibit B. For example, the 2 DT 3.5 R3 TPLO plate does not differ materially from the 7 DT 2.7 R3 TPLO plate except for the size of the plates, as indicated in the side-by-side comparison below. The difference in size does not affect the infringement analysis below. Accordingly, the analysis of the 2 DT 3.5 R3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 R3 TPLO plate.





(Ex. D, VOI 2 DT 3.5 R3)        (Ex. D, VOI 7 DT 2.7 R3)

63. By way of further example, the 2 DT 3.5 L3 and 7 DT 2.7 L3 TPLO plates do not differ for purposes of infringement except for the size of the plates, as indicated in the side-by-side comparison below. The difference in size does not affect the infringement analysis

below.  Accordingly, the use of the 2 DT 3.5 L3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 L3 TPLO plate.




(Ex. D, VOI 2 DT 3.5 L3)                    (Ex. D, VOI 7 DT 2.7 L3)

64.     Claim 12 of the '921 patent is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of screw holes each designed to accept a screw; and a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."

65.     The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a distal portion comprising an elongated shaft."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a distal portion 12.   The shaft 80 of the distal portion 12 is elongated relative to its depth (not shown, but reported by VOI as 3.7 mm) and width W (11 mm).

66.     The Accused Products satisfy the requirement in claim 12 that the bone plate's distal portion "hav[e] disposed therein a plurality of screw holes each designed to accept a screw."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the distal portion 12 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises three screw holes 16 that are designed to accept screws.

67.     The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a proximal portion comprising at least three screw holes each designed to accept a screw."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws.

68.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a first screw hole [that] is a superior screw hole."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a superior screw hole 30.

69.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a second screw hole [that] is a cranial screw hole located distally and cranially from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a cranial screw hole 31, located closer to the distal portion 12 and to the cranial side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

70.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a third screw hole [that] is a caudal screw hole located distally and caudally from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a caudal screw hole 32, located closer to the distal portion 12 and to the caudal side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

71.     The Accused Products satisfy the requirement in claim 12 that the "screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."  As described above, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates has three screw holes 30, 31 and 32.   Screws are inserted through each of the superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 at predetermined angles in both the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates.

28

72.     The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is predetermined and angled so as to direct the screw in the superior screw hole 30 away from an articular surface between the tibia and the femur.  The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw holes 31 and caudal screw holes 32 are both located closer to the distal portion 12 (i.e., farther from the articular surface) than the superior screw hole 30 and predetermined and angled such that screws in their cranial and caudal screw holes, respectively, are directed away from an articular surface.

73.     The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw hole 31 and caudal screw hole 32 are predetermined and angled to direct screws away from an osteotomy surface of the tibia.  The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is located farther away from the distal portion 12 than the cranial screw hole 31 and caudal screw hole 32 and is predetermined and angled such that the screw in the superior screw hole 30 is directed away from an osteotomy surface.

74.     The caudal screw holes 32, the superior screw holes 30 and the cranial screw holes 31 of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled to direct the screws in their respective screw holes away from edges of the tibia.

75.     The superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled such that screws in their respective holes enter into the central mass of the tibia.

76.     As a result of VOI's infringement of the '921 patent, DePuy Synthes has suffered and will continue to suffer damages.

77.     VOI's infringement of the '921 patent is willful, making this an exceptional case and entitling DePuy Synthes to enhanced damages and attorneys' fees.  VOI became aware of the '921 patent no later than DePuy Synthes's letter to VOI dated October 14, 2013. On information and belief, VOI has knowingly and willfully infringed the '921 patent by manufacturing, importing, using, selling and offering to sell the Accused Products, including the Accused Products identified in this complaint.

78.     Despite its knowledge of its infringement of the '921 patent, VOI has continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct its customers to use the Accused Products in a manner that infringes.

79.     On information and belief, VOI does not include certain of the Accused Products in its publicly available catalog (*see* Exhibit K), but nevertheless offers the Accused Products for sale to prospective customers through privately circulated marketing materials.

80.     VOI contended in its correspondence to DePuy Synthes that its TPLO plates do not infringe claim 12 of the '921 patent because the screw holes are aligned with generally parallel axes and do not have the configuration necessary to achieve the intended function. Such contentions were and are frivolous because they are not directed to actual claim limitations of the '921 patent.

81.     DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that have a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole

paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia.  Additional examples of infringement are attached as Exhibit L.

82.     DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '921 patent.

83.     On information and belief, VOI copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

84.     DePuy Synthes has been irreparably harmed by VOI's infringement of the '921 patent and will continue to be harmed unless VOI's infringing conduct is restrained and enjoined by order of this Court.

**COUNT TWO**
**███ Direct Infringement of the '921 Patent**

85.     DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1–84 above.

86.     On information and belief, ███ without authority, has directly infringed and continues to directly infringe the '921 patent, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products.

87.     On information and belief, ███ manufactures, imports, sells or offers for sale other products and services that are suitable for use in TPLO and CBLO procedures.  Examples of products constituting convoyed sales are included in the attached Exhibit I, as well as

31

substantially similar designs to those designs in Exhibit I.  Plaintiffs are informed and believe that ▮▮▮ at least supplies screws from this list.

88.     A detailed infringement analysis for each of the Accused Products is provided in the interrogatory responses served in this matter, which are attached as Exhibit L.  For illustrative purposes, and as  described in greater detail herein, the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3, and 7 DT 2.7 L3 TPLO plates practice each limitation of at least claim 12 of the '921 patent.  On information and belief, these plates are representative of the other Accused Products identified in Exhibit B.   On information and belief, the other Accused Products practice each limitation of at least claim 12 of the '921 patent for the same reasons as those described herein for the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3, and 7 DT 2.7 L3 TPLO plates.

89.     On information and belief, the 2 DT 3.5 L3 TPLO plate is a mirror image of the 2 DT 3.5 R3 TPLO plate.   The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 2 DT 3.5 R3)                    (Ex. D, 2 DT 3.5 L3)

90.     On information and belief, the 7 DT 2.7 L3 TPLO plate is a mirror image of the 7 DT 2.7 R3 TPLO plate.  The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 7 DT 2.7 R3)                    (Ex. D, 7 DT 2.7 L3)

91.     In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates as illustrative examples is attached as Exhibit J, and is incorporated herein by reference.

92.     On information and belief, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates do not differ for purposes of infringement from the other Accused Products.  For example, the 2 DT 3.5 R3 TPLO plate does not differ materially from the 7 DT 2.7 R3 TPLO plate except for the size of the plates, as indicated in the side-by-side comparison below.  The difference in size does not affect the infringement analysis below.  Accordingly, the analysis of the 2 DT 3.5 R3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 R3 TPLO plate.





(Ex. D, VOI 2 DT 3.5 R3)                    (Ex. D, VOI 7 DT 2.7 R3)

93.     By way of further example, the 2 DT 3.5 L3 and 7 DT 2.7 L3 TPLO plates do not differ for purposes of infringement except for the size of the plates, as indicated in the side-by-side comparison below.  The difference in size does not affect the infringement analysis below.  Accordingly, the use of the 2 DT 3.5 L3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 L3 TPLO plate.





(Ex. D, VOI 2 DT 3.5 L3)                    (Ex. D, VOI 7 DT 2.7 L3)

94.     Claim 12 of the '921 patent is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of screw holes each designed to accept a screw; and a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."

95.     The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a distal portion comprising an elongated shaft."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a distal portion 12.  The shaft 80 of the distal portion 12 is elongated relative to its depth (not shown, but reported by VOI as 3.7 mm) and width W (11 mm).

96.     The Accused Products satisfy the requirement in claim 12 that the bone plate's distal portion "hav[e] disposed therein a plurality of screw holes each designed to accept a screw."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the distal portion 12 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises three screw holes 16 that are designed to accept screws.  The Accused

Products satisfy the requirement in claim 12 that the bone plate comprises "a proximal portion comprising at least three screw holes each designed to accept a screw."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws.

97.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a first screw hole [that] is a superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a superior screw hole 30.

98.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a second screw hole [that] is a cranial screw hole located distally and cranially from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a cranial screw hole 31, located closer to the distal portion 12 and to the cranial side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

99.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a third screw hole [that] is a caudal screw hole located distally and caudally from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a caudal screw hole 32, located

closer to the distal portion 12 and to the caudal side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

100.    The Accused Products satisfy the requirement in claim 12 that the "screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia." As described above, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates has three screw holes 30, 31 and 32.  Screws are inserted through each of the superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 at predetermined angles in both the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates.

101.    The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is predetermined and angled so as to direct the screw in the superior screw hole 30 away from an articular surface between the tibia and the femur.  The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw holes 31 and caudal screw holes 32 are both located closer to the distal portion 12 (i.e., farther from the articular surface) than the superior screw hole 30 and predetermined and angled such that screws in their cranial and caudal screw holes, respectively, are directed away from an articular surface.

102.    The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw hole 31 and caudal screw hole 32 are predetermined and angled to direct screws away from an osteotomy surface of the tibia.  The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is located farther away from the distal portion 12 than the cranial screw hole 31

and caudal screw hole 32 and is predetermined and angled such that the screw in the superior screw hole 30 is directed away from an osteotomy surface.

103.    The caudal screw holes 32, the superior screw holes 30 and the cranial screw holes 31 of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled to direct the screws in their respective screw holes away from edges of the tibia.

104.    The superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled such that screws in their respective holes enter into the central mass of the tibia.

105.    As a result of ██████ infringement of the '921 patent, DePuy Synthes has suffered and will continue to suffer damages.

106.    ██████ infringement of the '921 patent is willful, making this an exceptional case and entitling DePuy Synthes to enhanced damages and attorneys' fees. ██████ ████████████████████████████████████████████████. On information and belief, ████ has knowingly and willfully infringed the '921 patent by manufacturing, importing, using, selling and offering to sell the Accused Products.

107.    Despite its knowledge of its infringement of the '921 patent, ████ has continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct its customers to use the Accused Products in a manner that infringes.

108.    On information and belief, ████ manufactures, sells, imports into the United States, and offers the Accused Products for sale to VOI.

109.     DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that have a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia. Additional examples of infringement are attached as Exhibit L.

110.     DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '921 patent.

111.     On information and belief, █████ copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

112.     DePuy Synthes has been irreparably harmed by █████ infringement of the '921 patent and will continue to be harmed unless █████ infringing conduct is restrained and enjoined by order of this Court.

## COUNT THREE
### Fidelio's Direct and Indirect Infringement of the '921 Patent

113.      DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1–112 above.

114.     On information and belief, Fidelio, without authority, has directly infringed and continues to directly infringe the '921 patent, under 35 U.S.C. § 271(a), at least by

manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products. For example, through Ossium, Fidelio runs educational seminars to educate and train veterinarians in the various procedures involving the Accused Products. On information and belief, the underlying purpose of these seminars is to sell and offer for sale the Accused Products and to instruct veterinarians to use such products in an infringing manner. Through these educational seminars, Fidelio induces veterinarians to directly infringe the '921 patent.

115.    For illustrative purposes, and as described in greater detail herein, the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates practice each limitation of at least claim 12 of the '921 patent.  On information and belief, these plates are representative of the other Accused Products identified in Exhibit B.  On information and belief, the other Accused Products practice each limitation of at least claim 12 of the '921 patent for the same reasons as those described herein for the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates.

116.    On information and belief, the 2 DT 3.5 L3 TPLO plate is a mirror image of the 2 DT 3.5 R3 TPLO plate.  The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 2 DT 3.5 R3)          (Ex. D, 2 DT 3.5 L3)

117.    On information and belief, the 7 DT 2.7 L3 TPLO plate is a mirror image of the 7 DT 2.7 R3 TPLO plate.  The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 7 DT 2.7 R3)          (Ex. D, 7 DT 2.7 L3)

118.    In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates as illustrative examples is attached as Exhibit J, and is incorporated herein by reference.

119.    On information and belief, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates do not differ for purposes of infringement from the other Accused Products identified in Exhibit B.  For example, the 2 DT 3.5 R3 TPLO plate does not differ materially from the 7 DT 2.7 R3 TPLO plate except for the size of the plates, as indicated in the side-by-side comparison below. The difference in size does not affect the infringement analysis below.  Accordingly, the analysis of the 2 DT 3.5 R3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 R3 TPLO plate.





(Ex. D, VOI 2 DT 3.5 R3)                    (Ex. D, VOI 7 DT 2.7 R3)

120.    By way of further example, the 2 DT 3.5 L3 and 7 DT 2.7 L3 TPLO plates do not differ for purposes of infringement except for the size of the plates, as indicated in the side-by-side comparison below.  The difference in size does not affect the infringement analysis

below. Accordingly, the use of the 2 DT 3.5 L3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 L3 TPLO plate.





(Ex. D, VOI 2 DT 3.5 L3)                    (Ex. D, VOI 7 DT 2.7 L3)

121.    Claim 12 of the '921 patent is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of screw holes each designed to accept a screw; and a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."

122.     The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a distal portion comprising an elongated shaft."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a distal portion 12.   The shaft 80 of the distal portion 12 is elongated relative to its depth (not shown, but reported by VOI as 3.7 mm) and width W (11 mm).

123.     The Accused Products satisfy the requirement in claim 12 that the bone plate's distal portion "hav[e] disposed therein a plurality of screw holes each designed to accept a screw."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the distal portion 12 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises three screw holes 16 that are designed to accept screws.

124.     The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a proximal portion comprising at least three screw holes each designed to accept a screw."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws.

125.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a first screw hole [that] is a superior screw hole."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a superior screw hole 30.

126.    The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a second screw hole [that] is a cranial screw hole located distally and cranially from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a cranial screw hole 31, located closer to the distal portion 12 and to the cranial side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

127.    The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a third screw hole [that] is a caudal screw hole located distally and caudally from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a caudal screw hole 32, located closer to the distal portion 12 and to the caudal side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

128.    The Accused Products satisfy the requirement in claim 12 that the "screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."  As described above, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates has three screw holes 30, 31 and 32.    Screws are inserted through each of the superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 at predetermined angles in both the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates.

129.     The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is predetermined and angled so as to direct the screw in the superior screw hole 30 away from an articular surface between the tibia and the femur.  The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw holes 31 and caudal screw holes 32 are both located closer to the distal portion 12 (i.e., farther from the articular surface) than the superior screw hole 30 and predetermined and angled such that screws in their cranial and caudal screw holes, respectively, are directed away from an articular surface.

130.     The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw hole 31 and caudal screw hole 32 are predetermined and angled to direct screws away from an osteotomy surface of the tibia.  The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is located farther away from the distal portion 12 than the cranial screw hole 31 and caudal screw hole 32 and is predetermined and angled such that the screw in the superior screw hole 30 is directed away from an osteotomy surface.

131.     The caudal screw holes 32, the superior screw holes 30 and the cranial screw holes 31 of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled to direct the screws in their respective screw holes away from edges of the tibia.

132.     The superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled such that screws in their respective holes enter into the central mass of the tibia.

133.     On information and belief, Fidelio also induces VOI's direct infringement of the '921 patent. As set forth in Count One, VOI, without authority, has directly infringed and continues to directly infringe the '921 patent, under 35 U.S.C. § 271(a), at least by

46

manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products.

134.    On information and belief, Fidelio controls VOI's decision making with respect to which products to sell or continue to sell. Fidelio has induced VOI's direct infringement of the '921 patent, including by actively encouraging VOI to continue selling the Accused Products.

135.    As a result of Fidelio's infringement of the '921 patent, DePuy Synthes has suffered and will continue to suffer damages.

136.    Fidelio's infringement of the '921 patent is willful, making this an exceptional case and entitling DePuy Synthes to enhanced damages and attorneys' fees. Fidelio became aware of the '921 patent no later than May 5, 2020, when it acquired a majority of VOI's shares. On information and belief, Fidelio has knowingly and willfully infringed the '921 patent by manufacturing, importing, using, selling and offering to sell the Accused Products, including the Accused Products identified in this complaint.

137.    Despite its knowledge of its infringement of the '921 patent, Fidelio has continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct its customers to use the Accused Products in a manner that infringes.

138.    DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that have a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole

paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia.  Additional examples of infringement are attached as Exhibit L.

139.    DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '921 patent.

140.    On information and belief, VOI copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

141.    DePuy Synthes has been irreparably harmed by Fidelio's infringement of the '921 patent and will continue to be harmed unless Fidelio's infringing conduct is restrained and enjoined by order of this Court.

## PRAYER FOR RELIEF

WHEREFORE, DePuy Synthes respectfully requests that this Court:

1.    Adjudge that VOI, ███ and Fidelio have directly infringed, literally or under the doctrine of equivalents, at least claim 12 of the '921 patent, and that the manufacture, use, sale, offer for sale and/or importation of at least the Accused Products infringe at least claim 12 of the '921 patent;

2.    Adjudge that VOI and Fidelio have induced and contributed to direct infringement of at least claim 12 of the '921 patent;

3.      Permanently enjoin VOI, ███ and Fidelio, their officers, agents, servants and employees, and those in active concert or participation with any of them, from infringing the '921 patent;

4.      Award DePuy Synthes compensatory damages for VOI's, ███ and Fidelio's infringement of the '921 patent, including lost profits;

5.      Award DePuy Synthes increased damages under 35 U.S.C. § 284 for VOI's, ███, and Fidelio's willful and deliberate infringement of the '921 patent;

6.      Declare this to be an exceptional case under 35 U.S.C. § 285;

7.      Award DePuy Synthes its attorney fees and costs incurred in prosecuting this action, together with pre-judgment and post-judgment interest;

8.      Hold Fidelio liable for VOI's infringement if justice requires; and

9.      Grant DePuy Synthes such other and further relief as this Court deems just and proper, including an injunction.

## JURY DEMAND

DePuy Synthes hereby respectfully requests a trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated this 3rd day of December, 2020.

GRAYROBINSON, P.A.

By: /s/ R. Troy Smith
R. Troy Smith
Florida Bar No. 485519
Stephen G. Anderson
Florida Bar No. 105697
Cole Y. Carlson
Florida Bar No. 112863
50 N. Laura Street, Suite 1100

Jacksonville, FL 32202
Phone: (904) 598-9929
Facsimile: (904) 598-9109
*troy.smith@gray-robinson.com*
*stephen.anderson@gray-robinson.com*
*cole.carlson@gray-robinson.com*
*maria.daniels@gray-robinson.com*
*jessica.gonzalez@gray-robinson.com*

-and-

Jason G. Sheasby (admitted *pro hac vice*)
California Bar No.: 205455
Andrew E. Krause (admitted *pro hac vice*)
California Bar No.: 294850
Irell & Manella, LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067-4276
Phone: (310) 203-7096
Facsimile: (310) 203-7199
*jsheasby@irell.com*
*akrause@irell.com*

**Attorneys for Plaintiffs DePuy Synthes
Products, Inc. and DePuy Synthes Sales, Inc.**

# 1822468 v1