**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| DEPUY SYNTHES PRODUCTS, INC. and DEPUY SYNTHES SALES, INC., | Civil Action No. 3:18-cv-1342-J-20PDB |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| v. | |
| VETERINARY ORTHOPEDIC IMPLANTS, INC., SYNTEC SCIENTIFIC CORPORATION, and FIDELIO CAPITAL AB, | CONTAINS HIGHLY-CONFIDENTIAL - OUTSIDE ATTORNEYS EYES ONLY INFORMATION |
| Defendants. | |

_____/

## PLAINTIFFS' THIRD AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc. (collectively, "DePuy Synthes"), by and through their undersigned attorneys, complain and allege against Defendants Veterinary Orthopedic Implants, Inc. ("VOI"), Syntec Scientific Corporation ("Syntec"), and Fidelio Capital AB ("Fidelio") (collectively "Defendants") as follows:

### THE PARTIES

1.    Plaintiff DePuy Synthes Products, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 325 Paramount Drive, Raynham, Massachusetts 02767.

2.    Plaintiff DePuy Synthes Sales, Inc. is a corporation organized and existing under the laws of the State of Massachusetts with its principal place of business at 325 Paramount Drive, Raynham, Massachusetts 02767.

3.      On information and belief, defendant VOI is a corporation organized and existing under the laws of the State of Florida with its principal place of business at 310 Commerce Lake Drive, Unit 107, St. Augustine, Florida 32095.

4.      On information and belief, defendant Syntec is a foreign corporation organized and existing under the laws of Taiwan with its principal place of business at 2, Kung San Road, Chuan Shing Industrial Zone, Shen Kang, Chang Hua, Taiwan.

5.      On information and belief, defendant Fidelio is a foreign corporation organized and existing under the laws of Sweden with its principal place of business at Birger Jarlsgatan 13, 111 45 Stockholm, Sweden.

6.      On information and belief, Fidelio announced that it had acquired a majority interest in VOI on or about June 16, 2020. In a corporate disclosure statement filed on October 19, 2020, VOI identified Fidelio as having been its majority shareholder since May 5, 2020. Doc. 214.

7.      On information and belief, Fidelio has been aware of the asserted patent and VOI's infringing activity from pre-acquisition diligence and thus has been on notice of VOI's infringement since no later than on or about May 5, 2020. On information and belief, Fidelio now controls VOI, including with respect to VOI's decision-making whether or not to sell and continue to sell the Accused Products.  As an example, in June, it was a Fidelio executive, not a VOI executive, who approached the Plaintiffs to discuss this lawsuit.

8.      On information and belief, Fidelio is using VOI as a mere alter ego to sell infringing copies of Plaintiffs' products, without regard for whether VOI is able to account for the liability it has incurred and continues to incur.

9.      VOI has admitted in untimely corporate disclosure statements filed with the Federal Circuit and this Court that its parent is "Fidelio Capital d/b/a Ossium."  *See* Doc. 214. Ossium in turn advertises that it is distributing the orthopedic implants and kits that are the subject of this lawsuit in the United States, listing Patrick Gendreau as one of three individuals under the heading "CEO" and including a link to the VOI website:

> Ossium Group ("Ossium") was created by Fidelio through the acquisition of three companies located in Switzerland and the U.S. during 2019 and 2020, creating a global leader within veterinary orthopedic implants.
>
> In addition to designing and distributing veterinary orthopedic implants and instruments, Ossium runs educational seminars to educate and train veterinarians in the various procedures as well as keeping them up to date of recent product developments.
>
> Boasting a broad product offering ranging from advanced hip implants to sutures, the group will continue to invest in innovation and R&D, and serve the market through best-in-class commercial operations. Products are sold to veterinarians and animal hospitals in 45+ markets with the largest product groups being implants for hips and knees as well as fracture plates.

*Ossium*, FIDELIO CAPITAL, https://fideliocapital.se/cases/ossium-2/.

10.      Public statements by employees of the Ossium Group further confirm that it does not observe corporate formalities and that Fidelio is using the entities that make up the Ossium Group as alter egos.

> **From:** Annette Baez Vega <annette@biomedtrix.com>
> **Date:** October 26, 2020 at 6:21:33 PM MST
> **To:** Ross Lirtzman <Ross@asgscottsdale.com>
> **Subject: BioMedtrix TPLO plates**

Hi Ross,

I hope you are well and I heard Synthes is on backorder on their
3.5 plates. We have some in stock as well as VOI and Kyon. In
2021 our finances will be combined into one company and
between VOI, Kyon, and BioMedtrix we own a vast percentage in
the orthopedic industry.

Please let me know if I can fulfill any of your needs.

Sincerely,
Annette



**Annette Baez**
Technical Sales Associate
📞 973.265.9036 | 📱 908.868.6352

BioMedtrix.com
9 Whippany Rd. Ste B2-7 | Whippany, NJ 07981

11.     For example, on information and belief, employees of one of the Ossium

member entities, "Biomedtrix," are offering for sale infringing TPLO plates imported,

manufactured, sold, and/or offered by sale by VOI as alternatives to "Synthes" (i.e., Plaintiffs')

plates.

12.     For example, on information and belief, Ossium combines Kyon, BioMedtrix,

and VOI and treats them as one entity.  On information and belief, Ossium is seeking to

establish a combined e-commerce platform that unifies each company's product line in a single

location, and that it recently began seeking to employ a single individual on behalf of all three

companies to implement this strategy.[1]

---

[1] *See Web Developer – Mid-Level*, PAYLOCITY,
https://recruiting.paylocity.com/recruiting/jobs/Details/379260/Veterinary-Orthopedic-Implants/Web-
Developer---Mid-Level.



**Web Developer - Mid-Level**
St. Augustine, FL




Apply

**Description**

Are you interested in working for a leading company in the Veterinary Implant industry? Are you looking for growth potential with a company that has a great culture and a desire to be the best?  As a web developer for Ossium (BioMedtrix, KYON, and Veterinary Orthopedic Implants), you will strive to create and maintain visually appealing sites that feature user-friendly design and clear navigation. You will first be responsible for the successful buildout of a global eCommerce website with the ability to handle multiple currencies and languages on the Big Commerce (or similar open-source platform) for a product portfolio of around 15,000 products.

13.     On information and belief, VOI is attempting to hide this commercial behavior during this proceeding.  For example, at deposition, a senior VOI executive denied that Kyon or BioMedtrix employees are marketing VOI products merely weeks before the above-referenced solicitation by Biomedtrix on behalf of all Ossium members (including VOI). VanHorssen Depo. at 12:7–14 ("Q. Do KYON and BioMedtrix's employees market VOI products to customers? A. They have not that I'm aware of. Q. Is that something that's being discussed? A. We have spoke about it. Q. And what have been the contents of the discussions? A. I don't recall the details.").

**JURISDICTION AND VENUE**

14.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 U.S.C. §§ 1 et seq.

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1338(a).

16.     Each Defendant is subject to this Court's specific and general jurisdiction consistent with the principles of due process and/or the Florida Long Arm Statute.  This Court has personal jurisdiction over VOI because, on information and belief, VOI is a Florida corporation with a principal place of business in St. Augustine, Florida, and transacts business in Florida.  This Court further has personal jurisdiction over VOI because, on information and belief, VOI transacts continuous and systematic business within Florida.  Moreover, this Court has personal jurisdiction over VOI because, on information and belief, this lawsuit arises out of VOI's infringing activities including, without limitation, VOI's manufacturing, distributing, selling and/or offering to sell infringing products in Florida, and/or importing infringing products and components into Florida.  Finally, this Court has personal jurisdiction over VOI because, on information and belief, VOI has made, used, sold, offered for sale and/or imported infringing products and placed such infringing products in the stream of interstate commerce with the expectation that such infringing products would be used, distributed, sold and/or offered for sale within Florida.

17.     This Court has personal jurisdiction over Syntec because, on information and belief, Syntec transacts continuous and systematic business within Florida.  Moreover, this Court has personal jurisdiction over Syntec because, on information and belief, this lawsuit arises out of Syntec's infringing activities including, without limitation, Syntec's manufacturing, distributing, selling and/or offering to sell infringing products in Florida, and/or importing infringing products and components into Florida.  Finally, this Court has personal jurisdiction over Syntec because, on information and belief, Syntec has made, used, sold, offered for sale and/or imported its infringing products and placed such infringing

products in the stream of interstate commerce with the expectation that such infringing products would be used, distributed, sold and/or offered for sale within Florida.

18.     This Court has personal jurisdiction over Fidelio because, on information and belief, Fidelio transacts continuous and systematic business within Florida, including through its acquisition and control of VOI.  Moreover, this Court has personal jurisdiction over Fidelio because, on information and belief, this lawsuit arises out of Fidelio's infringing activities including, without limitation, actively encouraging VOI's manufacturing, distributing, selling and/or offering to sell infringing products in Florida, and/or importing infringing products and components into Florida.  Finally, this Court has personal jurisdiction over Fidelio because, on information and belief, Fidelio has actively encouraged VOI to have made, used, sold, offered for sale, and/or imported its infringing products and placed such infringing products in the stream of interstate commerce with the expectation that such infringing products would be used, distributed, sold, and/or offered for sale within Florida.  Personal jurisdiction over Fidelio with respect to Plaintiffs' claims is also proper under the doctrine of pendent personal jurisdiction, as this Court has personal jurisdiction over VOI, and Plaintiffs' claims against Fidelio arise out of the same common nucleus of operative facts.

19.     In the alternative, on information and belief, this Court has personal jurisdiction over Fidelio pursuant to Federal Rule of Civil Procedure 4(k)(2) because Fidelio has extensive contacts with the United States, including but not limited to the above-described contacts, is not subject to jurisdiction in any particular state, and exercising jurisdiction over Fidelio is consistent with the laws of the United States and the United States Constitution.

20.     Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400.  Venue is also proper within this district because VOI resides in the Middle District of Florida insofar as it is a Florida corporation that maintains a principal place of business in St. Augustine, Florida, which is located within St. Johns County, and, on information and belief, VOI has committed acts of infringement and maintains a regular and established place of business in the Middle District of Florida.  In addition, venue is also proper in this district because, on information and belief: Syntec has committed acts of infringement in the Middle District of Florida, personal jurisdiction exists over Syntec in this District, and Syntec is a Taiwanese corporation; and Fidelio has committed acts of infringement in the Middle District of Florida, personal jurisdiction exists over Fidelio in this District, and Fidelio is a Swedish corporation.

21.     Moreover, venue as to Fidelio is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because Fidelio is not a resident of the United States and, therefore, venue is proper in any judicial district.

22.     Defendants are properly joined under 35 U.S.C. § 299(a)(1) because, as set forth in greater detail below, defendants, through their own acts and/or through the acts of each other acting as its representative, alter ego, or agent, commonly and/or jointly manufacture, offer for sale, sell, or import into the United States, the same infringing plates used in tibial leveling osteotomy procedures, such that at least one right to relief is asserted against defendants jointly, severally, and in the alternative with respect to the same transactions, occurrences, or series of transactions or occurrences relating to the making, using, selling and/or offering to sell in, and/or importing into the United States the same accused products.

23.     Defendants are properly joined under 35 U.S.C. § 299(a)(2) because, as set forth in greater detail below, defendants, through their own acts and/or through the acts of each other acting as its representative, alter ego, or agent, make, use, sell and/or offer to sell in, and/or import into the United States the same infringing plates used in tibial leveling osteotomy procedures, such that questions of fact will arise that are common to all defendants.

## THE ASSERTED PATENTS

24.     On September 3, 2013, U.S. Patent No. 8,523,921 ("the '921 patent"), entitled "Tibial Plateau Leveling Osteotomy Plate," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") and names Timothy J. Horan, Christopher H. Scholl, and Daneen K. Touhalisky as inventors.  A copy of the '921 patent is attached as Exhibit A.

25.     The '921 patent is directed to surgical plates for use in tibial plateau leveling osteotomy ("TPLO") procedures.  TPLO procedures are used in veterinary medicine to correct ruptured cranial cruciate ligaments in canines and other animals.  The '921 patent is also directed to kits and methods of using the plates in TPLO procedures. TPLO procedures include CORA-based tibial leveling osteotomy ("CBLO") procedures.

26.     By lawful assignment, plaintiff DePuy Synthes Products, Inc. is the owner of all rights, title and interest in and to the '921 patent.

27.     By lawful license, DePuy Synthes Sales, Inc. is the exclusive licensee of the '921 patent from DePuy Synthes Products, Inc. with the exclusive right to sell and offer to sell products covered by the '921 patent to third parties.

28.     On June 8, 2021, U.S. Patent No. 11,026,728 (the "'728 patent"), entitled "Tibial Plateau Leveling Osteotomy Plate," was duly and legally issued by the United States

Patent and Trademark Office ("USPTO") and names Timothy J. Horan, Christopher H. Scholl, and Daneen K. Touhalisky as inventors.  A copy of the '728 patent is attached as Exhibit M. The '728 patent is a continuation of the '921 patent and shares a common specification.

29.     Like the '921 patent, the '728 patent is directed to surgical plates for use in tibial plateau leveling osteotomy ("TPLO") procedures as well as to kits and methods of using the plates in TPLO procedures.

30.     By lawful assignment, plaintiff DePuy Synthes Products, Inc. is the owner of all rights, title and interest in and to the '728 patent.

31.     By lawful license, plaintiff DePuy Synthes Sales, Inc. is the exclusive licensee of the '728 patent from DePuy Synthes Products, Inc. with the exclusive right to sell and offer to sell products covered by the '728 patent to third parties.

**THE ACCUSED PRODUCTS**

32.     Defendants VOI, Syntec, and Fidelio manufacture, import, sell and/or offer for sale implants, screws and instrumentation for veterinary orthopedic use, including plates and screws for use in tibial plateau leveling osteotomy ("TPLO") procedures, which include plates used in CORA-based tibial leveling osteotomy ("CBLO") procedures.

33.     Defendants have manufactured, imported, sold or offered for sale TPLO plates, as well as products and services suitable for use in TPLO and CBLO procedures.  Defendants' marketing literature depicts many TPLO plates.  For purposes of this action, the plates at issue are those identified on the attached Exhibit B, as well as VOI's NXT TPLO plates with locking screw holes for the '728 patent, and the accused non-plate portions of the infringing kits at issue are those identified in Exhibit I, as well as substantially similar designs to those in

10

Exhibits B and I (collectively, Exhibits B and I, the NXT TPLO plates with locking screw holes, and substantially similar designs to the designs in Exhibit B and I, and the NXT TPLO plates with locking screw holes, are the "Accused Products").  The Accused Products are not staple articles of commerce suitable for any non-infringing use.

34.    On information and belief, VOI has been on notice of the '921 patent since at least 2013, as evidenced by Exhibit C.

35.    On information and belief, VOI has been on notice of the '728 patent since it issued on June 8, 2021, as Plaintiffs informed VOI of its forthcoming issuance no later than April 8, 2021. At that time, Plaintiffs also provided VOI with detailed claim charts explaining how the Accused Products would infringe the '728 patent. Ex. N.

36.    On information and belief, Syntec manufactures at least plates and screws that come within the definition of the Accused Products.

37.    Counsel for VOI stated in Court with respect to Syntec: "[W]e don't have engineers that are creating engineering drawings. So when they [DePuy Synthes] asked for engineering drawings, we went to the manufacturer, which is not us, and got the engineering drawings."

38.    On information and belief, Syntec ships into the United States, offers for sale in the United States, and sells in the United States the Accused Products, in all cases to at least VOI.

39.    For example, and as evidenced below, invoices show that Syntec is offering to sell to VOI in Florida, selling to VOI in Florida, and shipping to VOI in Florida "TPLO plates" identified by VOI item numbers associated with the Accused Products.

 亞太醫療器材科技股份有限公司

彰化縣伸港鄉全興工業區工三路2號 TEL:886-4-7987099 FAX:886-4-7987077

SYNTEC   SCIENTIFIC   CORPORATION

2,KUNG SAN ROAD,CHUAN SHING INDUSTRIAL ZONE,SHEN KANG,CHANG HUA,TAIWAN

## Invoice

page:1/1

#251
03-08-2019

OSQP-012-10-A

Invoice No : OPW1903018

Date : MAR.08, 2019

TO :

BY FEDEX NO. 8133-9697-6451

**Veterinary Orthopedic Implants**

Your A/C NO. 8055-1080-3

310 Commerce Lake Drive,

Sent On : MAR.08, 2019

Unit 107 St-Augustine, FL 32095

From  Taiwan      To  USA

ATTN : Mr. Patrick Gendreau

Your Purchase Order No : 23309

| Item No. | Item No. Customer's | Item No.Syntec | Description of \ goods | Quantity | Unit Price USD | Total Amount USD | Lot No. |
|---|---|---|---|---|---|---|---|
| | | | **for veterinary use only** | | | FOB Taiwan tariff code# 7218.99.00.90-7 | |
| 1 | ET-35R | VT-048-P8-3.5-LC-T11 | VOI Elite TPLO 3.5mm DCP, Locking, Pre-Bent, Low Contact, - Right | 391  EA | 33.00 | 12,903.00 | V033864/V18110287 |
| 2 | ET-35L | VT-04L-P8-3.5-LC-T15 | VOI Elite TPLO 3.5mm DCP, Locking, Pre-Bent, Low Contact,-Left | 500  EA | 33.00 | 16,500.00 | V033143/V18100644 |

TOTAL QUANTITY AND AMOUNT :  891  EA      USD 29,403.00

Production/Origin : Taiwan
**Manufacturer : Syntec Scientific Corporation**
**Address : 2,KUNG SAN ROAD, CHUAN SHING INDUSTRIAL ZONE,**
**SHEN KANG,CHANG HUA,TAIWAN**

SYNTEC SCIENTIFIC CORPORATION

Patrick Tsao / Sales Manager



亞太醫療器材科技股份有限公司
彰化縣神岡鄉全興工業區工三路2號 TEL:886-4-7987059 FAX:886-4-7987077
SYNTEC   SCIENTIFIC   CORPORATION
2,KUNG SAN ROAD,CHUAN SHING INDUSTRIAL ZONE,SHEN KANG,CHANG HUA,TAIWAN

# Invoice

page:1/1

| #240 |
|------|
| 10-26-2018 |

OSQP-012-10-A

Invoice No : OPW1810112

Date : OCT, 26.2018

TO :
Veterinary Orthopedic Implants
310 Commerce Lake Drive,
Unit 107 St-Augustine, FL 32095

BY FEDEX NO. 8115-3262-9129
Your A/C NO. 8055-1080-3
Sent On : OCT, 26.2018
From Taiwan          To USA

ATTN : Mr. Patrick Gendreau

Your Purchase Order No : 23121

| Item No. | Item No. Customer's | Item No.Syntec | Description of \ goods | Quantity | Unit Price USD | Total Amount USD | Lot No. |
|---|---|---|---|---|---|---|---|
| | | | for veterinary use only | | | FOB Taiwan tariff code# 7218.99.00.90-7 | |
| 1 | 2 DT 2.4 L3 | VT-2Swiss2.4L3 | Locking, dcp, low contact, Left (** Swiss 2.4) (Laser mark 2.4 L) | 100 | EA 27.00 | 2,700.00 | V03127/V18180774 |
| 2 | 2 DT 2.7 L3 | VT-75wiss2.7L3-P | 2.7 Locking, DCP, Low contact, Left (Laser mark 2.7 L) | 41 | EA 29.00 | 1,189.00 | V033085/V18085565 |
| 3 | 2 DT 2.7 L3 | VT-75wiss2.7L3-P | 2.7 Locking, DCP, Low contact, Left (Laser mark 2.7 L) | 109 | EA 29.00 | 3,161.00 | V03594/V18090824 |
| 4 | 2 DT 2.7 R3 | VT-75wiss2.7R3-P | 2.7 Locking, DCP, Low contact, Right (Laser mark 2.7 R) | 160 | EA 29.00 | 4,640.00 | V03595/V18185029 |
| 5 | 2.009 LCCP | 243589 | 2.0mm Limited Contact DCP 9 Hole | 8 | EA 14.00 | 112.00 | 076180/18100487 |
| 6 | DT L.7.0 DF-9R | VT-04S-2-0-5-DT | Distal Femur Plate(Right)φ2.0 x 9Holes x L49.8mm | 12 | EA 17.00 | 204.00 | V03543/V18100860 |
| 7 | DT L LC 2.407 | VT-LLC2407-DT-P | Locking Low Contact 2.4 7 Hole, 52mm | 28 | EA 15.20 | 425.60 | V03062/V18090032 |
| 8 | DT L LC 2.411 | VT-LLC2411-DT-P | Locking Low Contact 2.4 11 Hole. 80mm | 30 | EA 20.00 | 600.00 | V03063/V18090033 |
| 9 | DT L LC 3.512 N | VT-LLC3512-N-DT-P | Locking Low Contact 3.5 12 Hole Narrow, 126mm | 30 | EA 18.25 | 547.50 | V03262/V18090054 |
| 10 | SLH ST 150.06 | 02214006 | 1.5mm Star Locking Head Self-Tap screw 6mm | 200 | EA 4.50 | 900.00 | 076243/18100549 |
| 11 | SLH ST 150.07 | 02214007 | 1.5mm Star Locking Head Self-Tap screw 7mm | 116 | EA 4.50 | 522.00 | 076243/18100550 |
| 12 | SLH ST 150.14 | 02214014 | 1.5mm Star Locking Head Self-Tap screw 14mm | 70 | EA 4.50 | 315.00 | 076245/18100552 |
| 13 | SLH ST 150.18 | 02214018 | 1.5mm Star Locking Head Self-Tap screw 18mm | 60 | EA 4.50 | 270.00 | 076246/18100553 |

TOTAL QUANTITY AND AMOUNT :   964  EA      USD 15,586.10

Production/Origin : Taiwan
Manufacturer : Syntec Scientific Corporation
Address : 2,KUNG SAN ROAD, CHUAN SHING INDUSTRIAL ZONE,
          SHEN KANG,CHANG HUA,TAIWAN

SYNTEC SCIENTIFIC CORPORATION

Patrick Tsao / Sales Manager



**OS**® 亞太醫療器材科技股份有限公司

彰化縣伸港鄉全興工業區丁字路7號   TEL:886 4 7987099 FAX:886 4 7987077

**SYNTEC   SCIENTIFIC   CORPORATION**

2,KUNG SAN ROAD,CHUAN SHING INDUSTRIAL ZONE,SHEN KANG,CHANG HUA,TAIWAN

## Invoice

page:1/1

#251
03-08-2019

OSQP-012-10-A

Invoice No : OPW1903024

TO :
Veterinary Orthopedic Implants
310 Commerce Lake Drive,
Unit 107 St-Augustine, FL 32095

ATTN : Mr. Patrick Gendreau

Date : MAR.08, 2019
BY FEDEX NO. 8133-9697-6451
Your A/C NO. 8055-1080-3
Sent On : MAR.08, 2019
From  Taiwan        To USA

Your Purchase Order No : 23826

| Item No. | Item No. Customer's | Item No.Syntec | Description of \ goods | Quantity | Unit Price USD | Total Amount USD | Lot No. |
|---|---|---|---|---|---|---|---|
| | | | for veterinary use only | | | FOB Taiwan tariff code# 7218.99.00.90-7 | |
| 1 | 2 DT 3.5 L3 | VT-43L-3.5-T15-P | DT Locking, dcp, low contact, 3.5mm with, 50mm long, 3.5cm thick (1st Series 1.5) (Laser mark 3.5 L3) | 49 | EA 30.00 | 1,470.00 | V039J042/V19030024 |
| 2 | 2 DT 3.5 R3 | VT-43R-3.5-T15-P | DT Locking, dcp, low contact, 3.5mm with, 50mm long, 3.5cm thick (1st Series 3.5)(Laser mark 3.5 R3) | 67 | EA 30.00 | 2,010.00 | V039J04A/V19030023 |
| 3 | 6 DT 2.0 L3 | VT-82-wins2.0L3-B | 2.0 Locking, DT, DCP, Low contact, 1 DCP Hole, Left (Laser Mark 2.0 L) | 25 | EA 25.00 | 625.00 | V037H0GV/V19040046 |
| 4 | L 3.5B KPLC L | VT-81L-P3-03-LCCB | 3.5mm Broad TPLO,Locking,Pre-Bent,Limited Contact-Left | 15 | EA 29.00 | 435.00 | V037935/V19010481 |
| 5 | LS 3.5 DKLC L | VT-81L-03-DK-LCCB | 3.5mm TPLO, Soft, DCP, Locking, limited Contact- Left | 20 | EA 28.00 | 560.00 | V037H0V/V19010436 |
| 6 | RBG 350.24 | 204024 | Cortex Screw φ3.5x24mmL | 382 | EA 1.50 | 573.00 | 079298/19020430 |
| 7 | S ST 270.12 | TOX202812V-3 | 2.7mm Star head Self-Tap Screw 12mm | 427 | EA 3.05 | 1,302.35 | V039055/V19020452 |
| 8 | S ST 270.16 | TOX202816V-3 | 2.7mm Star head Self-Tap Screw 16mm | 17 | EA 3.05 | 51.85 | V039005/V19020455 |
| 9 | S ST 270.18 | TOX202818V-3 | 2.7mm Star head Self-Tap Screw 18mm | 319 | EA 3.05 | 972.95 | V039H76/V19020526 |
| 10 | S ST 350.28 | TOX204828V-3 | 3.5mm Self-Tap, Star Head Screw 28mm | 479 | EA 3.05 | 1,460.95 | V039254/V19020556 |
| 11 | SLH ST 150.06 | 02214006 | 1.5mm Star Locking Head Self-Tap screw 6mm | 119 | EA 4.50 | 535.50 | 079480/19020612 |
| 12 | SLH ST 150.07 | 02214007 | 1.5mm Star Locking Head Self-Tap screw 7mm | 104 | EA 4.50 | 468.00 | 079481/19020613 |
| 13 | SLH ST 150.12 | 02214012 | 1.5mm Star Locking Head Self-Tap screw 12mm | 45 | EA 4.50 | 202.50 | 079482/19020614 |
| 14 | ST 350.22 | 204822V-3 | Cortex Screw Self Tapping φ3.5x22mmL (Flutex3) | 2209 | EA 1.65 | 3,644.85 | V039132/V19020182 |
| 15 | ST 350.22 | 204822V-3 | Cortex Screw Self Tapping φ3.5x22mmL (Flutex3) | 2790 | EA 1.65 | 4,603.50 | V039133/V19020183 |

TOTAL QUANTITY AND AMOUNT : 7,067 EA    USD 18,915.45

Production/Origin : Taiwan
Manufacturer : Syntec Scientific Corporation
Address : 2,KUNG SAN ROAD, CHUAN SHING INDUSTRIAL ZONE,
        SHEN KANG,CHANG HUA,TAIWAN

SYNTEC SCIENTIFIC CORPORATION

Patrick Tsao / Sales Manager

40.    Syntec  has  a  history  of  pirating  products.   For  example,  in  2012,  a  Final

Judgment  was  entered  against  Syntec  by  default  forbidding  it  from  engaging  in  a  number  of

activities involving Synthes products. *See* Final Judgment Pursuant to Rule 54(b) against defendant Syntec Sci. Corp., Synthes U.S. v. Syntec Sci. U.S. Corp., No. ED CV 09-1875-DMG (C.D. Cal. Jul. 6, 2012) (No. 91).[2]

41.     Pictures of four samples of the Accused Products, namely 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 are shown in Exhibit D attached hereto.

42.     On information and belief, the 7 DT 2.7 R3 and 7 DT 2.7 L3 products are also identified by VOI as 2 DT 2.7 R3 and 2 DT 2.7 L3, respectively.

43.     The 2 DT 3.5 L3 plate is pictured below in a side-by-side comparison with Figure 1 of the '921 patent.







(Ex. D, VOI 2 DT 3.5 L3)                    ('921 Patent, Figure 1.)

---

[2] Syntec's US distribution arm, doing business as Syntec North America, was represented in the matter by the Fox Rothschild firm, including Attorney James Doroshow, the same attorney that represented VOI during its 2013 interactions with DePuy Synthes about the '921 patent. Mr. Doroshow is also counsel of record for VOI in the present case. DePuy Synthes is informed and believed that these facts establish the close relationship between Syntec and VOI.

44.     The 7 DT 2.7 L3 (a/k/a the 2 DT 2.7 L3) plate is pictured below in a side-by-side comparison with Figure 1 of the '921 patent.






(Ex. D, VOI 7 DT 2.7 L3)                    ('921 Patent, Figure 1.)

45.     On information and belief, VOI's naming convention is such that it uses the letter "R" (*e.g.*, 2 DT 3.5 **R**3) for plates intended for implantation on the right leg of the animal and the letter "L" (*e.g.*, 2 DT 3.5 **L**3) for plates intended for implantation on the left leg of the animal.  On information and belief, VOI's TPLO plates that have the same model number except for an "R" or "L" are mirror images of each other.

### COMMUNICATIONS BETWEEN DEPUY SYNTHES AND VOI

46.     Beginning no later than October 14, 2013, DePuy Synthes put VOI on notice of the '921 patent.  Exhibit C. There was an exchange between November 1, 2013 and January 2, 2014, in which VOI made representations regarding how its products were designed.  Exhibits E through H.   Plaintiffs are informed and believe that VOI has since changed its designs.

Plaintiffs are informed and believe that VOI arranged for Plaintiffs to receive doctored versions of VOI plates (with "old angles") to hide the plates' true design "on purpose":

| From: | Veterinary Orthopedic Implants [patrick@vetimplants.com] |
|---|---|
| Sent: | 3/14/2016 3:03:12 PM |
| To: | Steve McQueen [steve@vetimplants.com] |
| Subject: | Re: Dr. Jim Rousch #1707 |

On Mon, Mar 14, 2016 at 12:40 PM, Steve McQueen <steve@vetimplants.com> wrote:
Just a heads-up. This is the guy that I remember Shawn having issues with. He has not bought from us in several years. Said he used to know Sandy.

He was asking Fuji very detailed questions about our Swiss TPLO plates. Synthes told him that our plates did not have the correct screw angles proximally and he wanted to verify. Also asking about mechanical testing, etc.

We sent Synthes a sample of a plate some time back and we sent a single threaded locking plate with the old angles (on purpose). In ways I believe this has kept them off of our back.

I told Fuji to say she did not know but we would get back with him. I don't plan on calling him back. I believe he throws us under the bus as much as possible. He now has a mobile practice in CA.

I added another note to his account.

OK thanks for the heads up,
Patrick

[VOI_031138.]

47.     After the above-referenced communications between DePuy Synthes and VOI, VOI attempted to hide from public scrutiny its activity involving TPLO plates.  For example, in May 2016, the President of VOI instructed a VOI employee not to make available for "online direct purchase," the "SYNTHES TPLO plates," making clear that VOI was both copying DePuy Synthes designs and attempting to hide this because of fear of a lawsuit.

On Mon, May 23, 2016 at 4:18 PM, Kevin Vandyke <kevin@vetimplants.com> wrote:
Are all items in the catalog available for online direct purchase?

Not the SYNTHES TPLO plates. Everything else yes.

48.     As another example, in March 2017, a VOI employee requested that the company include in its brochure the "Swiss TPLO plate."  The President of VOI responded "I can't handle the risk of a lawsuit/injunction by J&J on all Swiss tplo plates would be a knockout punch at this time."

| Message | |
|---|---|
| **From:** | Veterinary Orthopedic Implants [patrick@vetimplants.com] |
| **Sent:** | 3/29/2017 8:27:28 AM |
| **To:** | Marcy Vandyke [marcy@vetimplants.com] |
| **CC:** | Tim Van Horssen [tim@vetimplants.com] |
| **BCC:** | rebecca@vetimplants.com |
| **Subject:** | Re: [Test] Be Prepared This Year... |

I can't handle the risk of a lawsuit / injunction by J&J on all Swiss tplo plates would be a knockout punch at this time.

I say no.

Perhaps down the road.

P

49.     As another example, in February 2017, VOI employees, including the President of VOI noted that in VOI's catalogues "we can not use the synthes like TPLO plates for obvious reasons."

| | |
|---|---|
| **From:** | Cassandra Dygert [cassandra@vetimplants.com] |
| **Sent:** | 2/2/2016 10:48:34 AM |
| **To:** | Tim VanHorssen [tim@vetimplants.com]; Patrick Gendreau [patrick@vetimplants.com]; Rebecca Ballou [rebecca@vetimplants.com] |
| **Subject:** | Quality X-Rays |

Hi everyone :)

The catalog is ready except for this cover debate heh!

Just an FYI

Tim, I know you do not like the current X-Ray of our Y TPLO plate, and we can not use the synthes like TPLO plates for obvious reasons. The CBLO  X-rays are just not looking so hot, so I think we need to reach out somehow for new X Rays.

50.     On information and belief, Syntec was involved in the copying activities.  For example in late 2013 Syntec and VOI were exchanging emails regarding the creation of plates that "match[] Synthes samples."

| | |
|---|---|
| **From:** | Steve McQueen [steve@vetimplants.com] |
| **Sent:** | 8/19/2013 10:06:23 AM |
| **To:** | Jennifer Sung-new e-mail [jennifer.s@eagleseye.com.tw] |
| **CC:** | Patrick Gendreau [patrick@vetimplants.com]; Charles Chang-Syntec [synchang@ms71.hinet.net]; peter@eagleseye.com.tw |
| **Subject:** | Swiss TPLO plate production |
| **Attachments:** | Swiss TPLO Plates.xlsx |

Please note that we still have some wrong angles on the TOP holes of Swiss TPLO plate in stock, & some under production.  Attached please kindly find the list of these plates are under production, and kindly confirm to accept them.  As for the q'ty in stock, we are still checking, and will inform you A.S.A.P.

Meanwhile, you attached a list for all the plates to be applied to, which we can't print out, so please kindly re-sent the excel files for our reference.  Thanks.

I have attached a list of all TPLO plates that need to have the hole angles verified as matching Synthes samples

51.     On information and belief, Syntec manufactures all of VOI's accused TPLO plates as well as its accused TPLO Kits and materials that are functionally part of the accused TPLO Kits:

[BY MR. SHEASBY:
Q.]     Let me ask you this:  Who manufactures the accused products in this
        case?
MR. ENDERSBY:  Objection to form.
THE WITNESS:  I have never seen them being manufactured, so I can't --
        I can't say for sure.
BY MR. SHEASBY:
Q.      What company ships them to you?
A.      Syntec Scientific.
Q.      That goes for the screws as well, sir?
MR. ENDERSBY:  Objection to form.
THE WITNESS:  Correct.
BY MR. SHEASBY
Q.      Is VOI exploring an alternative source of manufacture
MR. ENDERSBY:  Form.
THE WITNESS:  We have multiple sources, and we're always looking for
        supplemental and better sources.  It's an ongoing process.
BY MR. SHEASBY:

> Q.      Have you identified any supplemental or better sources for the
>          products at issue in this case? MR. ENDERSBY:  Objection to form.
> THE WITNESS:  I don't know.
> BY MR. SHEASBY:
> Q.      Who would know that information?
> A.      I would.

Gendreau Depo. at 23:9–24:10.

## FIDELIO IS INDEPENDENTLY LIABLE

52.      VOI has admitted in untimely corporate disclosure statements that its parent is

"Fidelio Capital d/b/a Ossium."  *See* Doc. 214. On information and belief, Fidelio may now be

conducting similar activities under the name "Movora."

53.      On information and belief, Ossium in turn advertises that it is distributing the

orthopedic implants and kits that are the subject of this lawsuit in the United States, listing

Patrick Gendreau as one of three individuals under the heading "CEO" and including a link to

the VOI website:

> Ossium Group ("Ossium") was created by Fidelio through the acquisition of
> three companies located in Switzerland and the U.S. during 2019 and 2020,
> creating a global leader within veterinary orthopedic implants.
>
> In addition to designing and distributing veterinary orthopedic implants and
> instruments, Ossium runs educational seminars to educate and train
> veterinarians in the various procedures as well as keeping them up to date of
> recent product developments.
>
> Boasting a broad product offering ranging from advanced hip implants to
> sutures, the group will continue to invest in innovation and R&D, and serve
> the market through best-in-class commercial operations. Products are sold to
> veterinarians and animal hospitals in 45+ markets with the largest product
> groups being implants for hips and knees as well as fracture plates.

*Ossium*, FIDELIO CAPITAL, https://fideliocapital.se/cases/ossium-2/.

54.      On information and belief, the training seminars educate and instruct

veterinarians to conduct procedures involving the Accused Products. For example, Matthew

Haas, a former VOI sales executive, explained at deposition that the purpose of such educational seminars was to "target [veterinarians] to try to have them gain interest and confidence in their ability to do TPLO through a course." Haas Depo. at 19:9–16. In a sworn declaration submitted in the matter *Veterinary Orthopedic Implants, Inc. v. Matthew Haas*, No. 20-cv-00868-MMH-MCR (M.D. Fla. Aug. 18, 2020), Mr. Haas further explained that though such training seminars or "labs" are "ostensibly non-commercial and instead purely education, . . . approximately 80% of [his] sales occurred at labs because doctors would learn about the new techniques and ask what products [VOI] sells that can support that technique." 20-cv-00868-MMH-MCR, Doc. 18-2, ¶ 12.

55.     On information and belief, VOI is being used as an alter ego and mere instrumentality of its majority shareholder Fidelio to unfairly and inequitably shield itself from liability incurred by VOI's ongoing enterprise of copying Plaintiffs' patented products.  For example, VOI's corporate representative and President, Patrick Gendreau, testified, "I don't have an opinion" when asked whether VOI was solvent when it was purchased by Fidelio and refused to provide testimony on VOI's financial arrangements with Fidelio. *See, e.g.,* Gendreau Depo. at 110:16–19; *id.* at 35:8–12 ("Q. Did Fidelio make a capital investment into VOI? [Objection] A. I signed an agreement agreeing not to speak to this."). As another example, Tim VanHorssen, a VOI Business Development Executive, testified that VOI management has weekly calls with executives the Fidelio group, but could not or would not identify anything that was discussed on such calls. VanHorssen Depo. at 11–21.

56.     Public statements by employees of the Ossium Group further confirm that it does not observe corporate formalities and that it is using the entities that make up the Ossium Group as alter egos.

**From:** Annette Baez Vega <annette@biomedtrix.com>
**Date:** October 26, 2020 at 6:21:33 PM MST
**To:** Ross Lirtzman <Ross@asgscottsdale.com>
**Subject: BioMedtrix TPLO plates**

Hi Ross,

I hope you are well and I heard Synthes is on backorder on their 3.5 plates. We have some in stock as well as VOI and Kyon. In 2021 our finances will be combined into one company and between VOI, Kyon, and BioMedtrix we own a vast percentage in the orthopedic industry.

Please let me know if I can fulfill any of your needs.

Sincerely,
Annette



**Annette Baez**
**Technical Sales Associate**
☏ 973.265.9036 | ☐ 908.868.6352

BioMedtrix.com
9 Whippany Rd, Ste B2-7 | Whippany, NJ 07981

57.     For example, on information and belief, employees of one entity "Biomedtrix" are offering for sale infringing TPLO plates imported by VOI as alternatives to "Synthes" (i.e., Plaintiffs') plates.

58.     Further, on information and belief, Ossium combines Kyon, BioMedtrix and VOI and treats them as one entity.

59.     On information and belief, VOI is attempting to hide this commercial behavior. For example, a senior executive at VOI denied that Kyon or BioMedtrix employees are

22

marketing VOI products merely weeks before the above-referenced solicitation by Biomedtrix on behalf of all Ossium members (including VOI). VanHorssen Depo. at 12:7–14 ("Q. Do KYON and BioMedtrix's employees market VOI products to customers? A. They have not that I'm aware of. Q. Is that something that's being discussed? A. We have spoke about it. Q. And what have been the contents of the discussions? A. I don't recall the details.").

**COUNT ONE**
**VOI Direct and Indirect Infringement of the '921 patent**

60. DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1–59 above.

61. On information and belief, VOI, without authority, has directly infringed and continues to directly infringe the '921 patent, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products. For example, through Ossium (and/or Movora), Fidelio runs, and VOI participates in, educational seminars to educate and train veterinarians in the various procedures that involve the Accused Products. VOI also provides screws and equipment that are used with the plates and methods accused of infringement in this action. On information and belief, the underlying purpose of these seminars is to sell and offer for sale the Accused Products and to instruct veterinarians to use such products in an infringing manner. Through these educational seminars, VOI induces veterinarians to directly infringe the '921 patent. For example, Matthew Haas, a former VOI sales executive, explained at deposition that the purpose of such educational seminars was to "target [veterinarians] to try to have them gain interest and confidence in their ability to do TPLO through a course." Haas Depo. at 19:9–16. In a sworn declaration submitted in the matter *Veterinary Orthopedic Implants, Inc. v.*

*Matthew Haas*, No. 20-cv-00868-MMH-MCR (M.D. Fla. Aug. 18, 2020), Mr. Haas further explained that though such training seminars or "labs" are "ostensibly non-commercial and instead purely education, . . . approximately 80% of [his] sales occurred at labs because doctors would learn about the new techniques and ask what products [VOI] sells that can support that technique." 20-cv-00868-MMH-MCR, Doc. 18-2, ¶ 12.

62.     VOI manufactures, imports, sells or offers for sale other products and services that are suitable for use in TPLO and CBLO procedures.   Examples of VOI's products constituting convoyed sales are included in the attached Exhibit I, as well as substantially similar designs to those designs in Exhibit I.

63.     A detailed infringement analysis for each of the Accused Products is provided in the interrogatory responses served in this matter, which are attached as Exhibit L.   For illustrative purposes, and as described in greater detail herein, the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates practice each limitation of at least claim 12 of the '921 patent.   On information and belief, these plates are representative of the other Accused Products identified in Exhibit B.   On information and belief, the other Accused Products practice each limitation of at least claim 12 of the '921 patent for the same reasons as those described herein for the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates.

64.     On information and belief, the 2 DT 3.5 L3 TPLO plate is a mirror image of the 2 DT 3.5 R3 TPLO plate.   The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 2 DT 3.5 R3)                    (Ex. D, 2 DT 3.5 L3)

65.    On information and belief, the 7 DT 2.7 L3 TPLO plate is a mirror image of the 7 DT 2.7 R3 TPLO plate.  The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 7 DT 2.7 R3)                    (Ex. D, 7 DT 2.7 L3)

66.      In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates as illustrative examples is attached as Exhibit J, and is incorporated herein by reference.

67.      On information and belief, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates do not differ for purposes of infringement from the other Accused Products identified in Exhibit B.  For example, the 2 DT 3.5 R3 TPLO plate does not differ materially from the 7 DT 2.7 R3 TPLO plate except for the size of the plates, as indicated in the side-by-side comparison below. The difference in size does not affect the infringement analysis below.  Accordingly, the analysis of the 2 DT 3.5 R3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 R3 TPLO plate.




(Ex. D, VOI 2 DT 3.5 R3)          (Ex. D, VOI 7 DT 2.7 R3)

68.      By way of further example, the 2 DT 3.5 L3 and 7 DT 2.7 L3 TPLO plates do not differ for purposes of infringement except for the size of the plates, as indicated in the side-by-side comparison below.  The difference in size does not affect the infringement analysis

below.  Accordingly, the use of the 2 DT 3.5 L3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 L3 TPLO plate.





(Ex. D, VOI 2 DT 3.5 L3)    (Ex. D, VOI 7 DT 2.7 L3)

69.    Claim 12 of the '921 patent is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of screw holes each designed to accept a screw; and a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."

70.     The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a distal portion comprising an elongated shaft."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a distal portion 12.  The shaft 80 of the distal portion 12 is elongated relative to its depth (not shown, but reported by VOI as 3.7 mm) and width W (11 mm).

71.     The Accused Products satisfy the requirement in claim 12 that the bone plate's distal portion "hav[e] disposed therein a plurality of screw holes each designed to accept a screw."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the distal portion 12 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises three screw holes 16 that are designed to accept screws.

72.     The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a proximal portion comprising at least three screw holes each designed to accept a screw."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws.

73.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a first screw hole [that] is a superior screw hole."   As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a superior screw hole 30.

74.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a second screw hole [that] is a cranial screw hole located distally and cranially from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a cranial screw hole 31, located closer to the distal portion 12 and to the cranial side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

75.     The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a third screw hole [that] is a caudal screw hole located distally and caudally from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a caudal screw hole 32, located closer to the distal portion 12 and to the caudal side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

76.     The Accused Products satisfy the requirement in claim 12 that the "screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."  As described above, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates has three screw holes 30, 31 and 32.   Screws are inserted through each of the superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 at predetermined angles in both the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates.

77.     The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is predetermined and angled so as to direct the screw in the superior screw hole 30 away from an articular surface between the tibia and the femur.  The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw holes 31 and caudal screw holes 32 are both located closer to the distal portion 12 (i.e., farther from the articular surface) than the superior screw hole 30 and predetermined and angled such that screws in their cranial and caudal screw holes, respectively, are directed away from an articular surface.

78.     The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw hole 31 and caudal screw hole 32 are predetermined and angled to direct screws away from an osteotomy surface of the tibia.  The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is located farther away from the distal portion 12 than the cranial screw hole 31 and caudal screw hole 32 and is predetermined and angled such that the screw in the superior screw hole 30 is directed away from an osteotomy surface.

79.     The caudal screw holes 32, the superior screw holes 30 and the cranial screw holes 31 of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled to direct the screws in their respective screw holes away from edges of the tibia.

80.     The superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled such that screws in their respective holes enter into the central mass of the tibia.

81.     As a result of VOI's infringement of the '921 patent, DePuy Synthes has suffered and will continue to suffer damages.

82.    VOI's infringement of the '921 patent is willful, making this an exceptional case and entitling DePuy Synthes to enhanced damages and attorneys' fees.  VOI became aware of the '921 patent no later than DePuy Synthes's letter to VOI dated October 14, 2013. On information and belief, VOI has knowingly and willfully infringed the '921 patent by manufacturing, importing, using, selling and offering to sell the Accused Products, including the Accused Products identified in this complaint.

83.    Despite its knowledge of its infringement of the '921 patent, VOI has continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct its customers to use the Accused Products in a manner that infringes.

84.    On information and belief, VOI does not include certain of the Accused Products in its publicly available catalog (*see* Exhibit K), but nevertheless offers the Accused Products for sale to prospective customers through privately circulated marketing materials.

85.    VOI contended in its correspondence to DePuy Synthes that its TPLO plates do not infringe claim 12 of the '921 patent because the screw holes are aligned with generally parallel axes and do not have the configuration necessary to achieve the intended function. Such contentions were and are frivolous because they are not directed to actual claim limitations of the '921 patent.

86.    DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that have a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole

paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia.  Additional examples of infringement are attached as Exhibit L.

87.     DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '921 patent.

88.     On information and belief, VOI copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

89.     DePuy Synthes has been irreparably harmed by VOI's infringement of the '921 patent and will continue to be harmed unless VOI's infringing conduct is restrained and enjoined by order of this Court.

**COUNT TWO**
**Syntec's Direct Infringement of the '921 Patent**

90.     DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1–89 above.

91.     On information and belief, Syntec, without authority, has directly infringed and continues to directly infringe the '921 patent, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products.

92.     On information and belief, Syntec manufactures, imports, sells or offers for sale other products and services that are suitable for use in TPLO and CBLO procedures.  Examples of products constituting convoyed sales are included in the attached Exhibit I, as well as

substantially similar designs to those designs in Exhibit I.  Plaintiffs are informed and believe

that Syntec at least supplies screws from this list.

93.     A detailed infringement analysis for each of the Accused Products is provided

in the interrogatory responses served in this matter, which are attached as Exhibit L.   For

illustrative purposes, and as   described in greater detail herein, the 2 DT 3.5 R3, 2 DT 3.5 L3,

7 DT 2.7 R3, and 7 DT 2.7 L3 TPLO plates practice each limitation of at least claim 12 of

the '921 patent.  On information and belief, these plates are representative of the other Accused

Products identified in Exhibit B.   On information and belief, the other Accused Products

practice each limitation of at least claim 12 of the '921 patent for the same reasons as those

described herein for the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3, and 7 DT 2.7 L3 TPLO plates.

94.     On information and belief, the 2 DT 3.5 L3 TPLO plate is a mirror image of the

2 DT 3.5 R3 TPLO plate.   The infringement analysis for the two plates is identical after

accounting for the fact that, being mirror images, the placement of the cranial and caudal screw

holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 2 DT 3.5 R3)                    (Ex. D, 2 DT 3.5 L3)

95.     On information and belief, the 7 DT 2.7 L3 TPLO plate is a mirror image of the 7 DT 2.7 R3 TPLO plate.  The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 7 DT 2.7 R3)                         (Ex. D, 7 DT 2.7 L3)

96.     In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates as illustrative examples is attached as Exhibit J, and is incorporated herein by reference.

97.     On information and belief, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates do not differ for purposes of infringement from the other Accused Products.  For example, the 2 DT 3.5 R3 TPLO plate does not differ materially from the 7 DT 2.7 R3 TPLO plate except for the size of the plates, as indicated in the side-by-side comparison below.  The difference in size does not affect the infringement analysis below.  Accordingly, the analysis of the 2 DT 3.5 R3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 R3 TPLO plate.

 

(Ex. D, VOI 2 DT 3.5 R3)          (Ex. D, VOI 7 DT 2.7 R3)

98.     By way of further example, the 2 DT 3.5 L3 and 7 DT 2.7 L3 TPLO plates do not differ for purposes of infringement except for the size of the plates, as indicated in the side-by-side comparison below.  The difference in size does not affect the infringement analysis below.  Accordingly, the use of the 2 DT 3.5 L3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 L3 TPLO plate.

 

(Ex. D, VOI 2 DT 3.5 L3)          (Ex. D, VOI 7 DT 2.7 L3)

99.     Claim 12 of the '921 patent is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of screw holes each designed to accept a screw; and a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."

100.    The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a distal portion comprising an elongated shaft."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a distal portion 12.  The shaft 80 of the distal portion 12 is elongated relative to its depth (not shown, but reported by VOI as 3.7 mm) and width W (11 mm).

101.    The Accused Products satisfy the requirement in claim 12 that the bone plate's distal portion "hav[e] disposed therein a plurality of screw holes each designed to accept a screw."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the distal portion 12 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises three screw holes 16 that are designed to accept screws.  The Accused

Products satisfy the requirement in claim 12 that the bone plate comprises "a proximal portion comprising at least three screw holes each designed to accept a screw."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws.

102.    The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a first screw hole [that] is a superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a superior screw hole 30.

103.    The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a second screw hole [that] is a cranial screw hole located distally and cranially from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a cranial screw hole 31, located closer to the distal portion 12 and to the cranial side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

104.    The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a third screw hole [that] is a caudal screw hole located distally and caudally from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a caudal screw hole 32, located

closer to the distal portion 12 and to the caudal side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

105.    The Accused Products satisfy the requirement in claim 12 that the "screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia." As described above, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates has three screw holes 30, 31 and 32. Screws are inserted through each of the superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 at predetermined angles in both the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates.

106.    The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is predetermined and angled so as to direct the screw in the superior screw hole 30 away from an articular surface between the tibia and the femur. The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw holes 31 and caudal screw holes 32 are both located closer to the distal portion 12 (i.e., farther from the articular surface) than the superior screw hole 30 and predetermined and angled such that screws in their cranial and caudal screw holes, respectively, are directed away from an articular surface.

107.    The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw hole 31 and caudal screw hole 32 are predetermined and angled to direct screws away from an osteotomy surface of the tibia. The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is located farther away from the distal portion 12 than the cranial screw hole 31

and caudal screw hole 32 and is predetermined and angled such that the screw in the superior screw hole 30 is directed away from an osteotomy surface.

108.    The caudal screw holes 32, the superior screw holes 30 and the cranial screw holes 31 of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled to direct the screws in their respective screw holes away from edges of the tibia.

109.    The superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled such that screws in their respective holes enter into the central mass of the tibia.

110.    As a result of Syntec's infringement of the '921 patent, DePuy Synthes has suffered and will continue to suffer damages.

111.    Syntec's infringement of the '921 patent is willful, making this an exceptional case and entitling DePuy Synthes to enhanced damages and attorneys' fees.  Syntec became aware of the '921 patent no later than when it was informed of this lawsuit and provided certain design information to VOI as part of this lawsuit.  On information and belief, Syntec has knowingly and willfully infringed the '921 patent by manufacturing, importing, using, selling and offering to sell the Accused Products.

112.    Despite its knowledge of its infringement of the '921 patent, Syntec has continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct its customers to use the Accused Products in a manner that infringes.

113.    On information and belief, Syntec manufactures, sells, imports into the United States, and offers the Accused Products for sale to VOI.

114.     DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that have a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia. Additional examples of infringement are attached as Exhibit L.

115.     DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '921 patent.

116.     On information and belief, Syntec copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

117.     DePuy Synthes has been irreparably harmed by Syntec's infringement of the '921 patent and will continue to be harmed unless Syntec's infringing conduct is restrained and enjoined by order of this Court.

### COUNT THREE
### Fidelio's Direct and Indirect Infringement of the '921 Patent

118.     DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1–117 above.

119.     On information and belief, Fidelio, without authority, has directly infringed and continues to directly infringe the '921 patent, under 35 U.S.C. § 271(a), at least by

manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products. For example, through Ossium (and/or Movora), Fidelio runs educational seminars to educate and train veterinarians in the various procedures involving the Accused Products. On information and belief, the underlying purpose of these seminars is to sell and offer for sale the Accused Products and to instruct veterinarians to use such products in an infringing manner. Through these educational seminars, Fidelio induces veterinarians to directly infringe the '921 patent.

120.    For illustrative purposes, and as described in greater detail herein, the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates practice each limitation of at least claim 12 of the '921 patent.  On information and belief, these plates are representative of the other Accused Products identified in Exhibit B.  On information and belief, the other Accused Products practice each limitation of at least claim 12 of the '921 patent for the same reasons as those described herein for the 2 DT 3.5 R3, 2 DT 3.5 L3, 7 DT 2.7 R3 and 7 DT 2.7 L3 TPLO plates.

121.    On information and belief, the 2 DT 3.5 L3 TPLO plate is a mirror image of the 2 DT 3.5 R3 TPLO plate.  The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 2 DT 3.5 R3)          (Ex. D, 2 DT 3.5 L3)

122.    On information and belief, the 7 DT 2.7 L3 TPLO plate is a mirror image of the 7 DT 2.7 R3 TPLO plate.  The infringement analysis for the two plates is identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed, as indicated in the side-by-side comparison below.



(Ex. D, 7 DT 2.7 R3)          (Ex. D, 7 DT 2.7 L3)

123.     In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates as illustrative examples is attached as Exhibit J, and is incorporated herein by reference.

124.     On information and belief, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates do not differ for purposes of infringement from the other Accused Products identified in Exhibit B.  For example, the 2 DT 3.5 R3 TPLO plate does not differ materially from the 7 DT 2.7 R3 TPLO plate except for the size of the plates, as indicated in the side-by-side comparison below. The difference in size does not affect the infringement analysis below.  Accordingly, the analysis of the 2 DT 3.5 R3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 R3 TPLO plate.

      

(Ex. D, VOI 2 DT 3.5 R3)          (Ex. D, VOI 7 DT 2.7 R3)

125.     By way of further example, the 2 DT 3.5 L3 and 7 DT 2.7 L3 TPLO plates do not differ for purposes of infringement except for the size of the plates, as indicated in the side-by-side comparison below.  The difference in size does not affect the infringement analysis

below.  Accordingly, the use of the 2 DT 3.5 L3 TPLO plate in Exhibit J also demonstrates infringement of the 7 DT 2.7 L3 TPLO plate.

          

(Ex. D, VOI 2 DT 3.5 L3)          (Ex. D, VOI 7 DT 2.7 L3)

126.    Claim 12 of the '921 patent is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of screw holes each designed to accept a screw; and a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."

127.    The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a distal portion comprising an elongated shaft."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a distal portion 12.  The shaft 80 of the distal portion 12 is elongated relative to its depth (not shown, but reported by VOI as 3.7 mm) and width W (11 mm).

128.    The Accused Products satisfy the requirement in claim 12 that the bone plate's distal portion "hav[e] disposed therein a plurality of screw holes each designed to accept a screw."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the distal portion 12 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises three screw holes 16 that are designed to accept screws.

129.    The Accused Products satisfy the requirement in claim 12 that the bone plate comprises "a proximal portion comprising at least three screw holes each designed to accept a screw."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws.

130.    The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a first screw hole [that] is a superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a superior screw hole 30.

131.    The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a second screw hole [that] is a cranial screw hole located distally and cranially from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a cranial screw hole 31, located closer to the distal portion 12 and to the cranial side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

132.    The Accused Products satisfy the requirement in claim 12 that the bone plate's proximal portion comprises "a third screw hole [that] is a caudal screw hole located distally and caudally from the superior screw hole."  As shown in the illustrative examples contained in Exhibit D and the claim chart attached hereto as Exhibit J, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates comprises a caudal screw hole 32, located closer to the distal portion 12 and to the caudal side relative to the superior screw hole 30. (*See* '921 patent, Fig. 7.)

133.    The Accused Products satisfy the requirement in claim 12 that the "screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia."  As described above, the proximal portion 14 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates has three screw holes 30, 31 and 32.    Screws are inserted through each of the superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 at predetermined angles in both the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates.

134.    The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is predetermined and angled so as to direct the screw in the superior screw hole 30 away from an articular surface between the tibia and the femur.  The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw holes 31 and caudal screw holes 32 are both located closer to the distal portion 12 (i.e., farther from the articular surface) than the superior screw hole 30 and predetermined and angled such that screws in their cranial and caudal screw holes, respectively, are directed away from an articular surface.

135.    The 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates' cranial screw hole 31 and caudal screw hole 32 are predetermined and angled to direct screws away from an osteotomy surface of the tibia.  The superior screw hole 30 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates is located farther away from the distal portion 12 than the cranial screw hole 31 and caudal screw hole 32 and is predetermined and angled such that the screw in the superior screw hole 30 is directed away from an osteotomy surface.

136.    The caudal screw holes 32, the superior screw holes 30 and the cranial screw holes 31 of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled to direct the screws in their respective screw holes away from edges of the tibia.

137.    The superior screw hole 30, cranial screw hole 31 and caudal screw hole 32 of each of the 2 DT 3.5 R3 and 2 DT 3.5 L3 TPLO plates are predetermined and angled such that screws in their respective holes enter into the central mass of the tibia.

138.    On information and belief, Fidelio also induces VOI's direct infringement of the '921 patent. As set forth in Count One, VOI, without authority, has directly infringed and continues to directly infringe the '921 patent, under 35 U.S.C. § 271(a), at least by

manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products.

139.    On information and belief, Fidelio controls VOI's decision making with respect to which products to sell or continue to sell.  Fidelio has induced VOI's direct infringement of the '921 patent, including by actively encouraging VOI to continue selling the Accused Products.

140.    As a result of Fidelio's infringement of the '921 patent, DePuy Synthes has suffered and will continue to suffer damages.

141.    Fidelio's infringement of the '921 patent is willful, making this an exceptional case and entitling DePuy Synthes to enhanced damages and attorneys' fees.  Fidelio became aware of the '921 patent no later than May 5, 2020, when it acquired a majority of VOI's shares. On information and belief, Fidelio has knowingly and willfully infringed the '921 patent by manufacturing, importing, using, selling and offering to sell the Accused Products, including the Accused Products identified in this complaint.

142.    Despite its knowledge of its infringement of the '921 patent, Fidelio has continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct its customers to use the Accused Products in a manner that infringes.

143.    DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that have a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole

paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia. Additional examples of infringement are attached as Exhibit L.

144. DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '921 patent.

145. On information and belief, VOI copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

146. DePuy Synthes has been irreparably harmed by Fidelio's infringement of the '921 patent and will continue to be harmed unless Fidelio's infringing conduct is restrained and enjoined by order of this Court.

## COUNT FOUR
### VOI's Direct and Indirect Infringement of the '728 Patent

147. DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1–146 above.

148. On information and belief, VOI, without authority, has directly infringed and continues to directly infringe the '728 patent, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products. For example, through Ossium (and/or Movora), Fidelio runs, and VOI participates in, educational seminars to educate and train veterinarians in the various procedures that involve the Accused Products. VOI also provides screws and equipment that are used with the plates and methods accused of infringement in this action.

On information and belief, the underlying purpose of these seminars is to sell and offer for sale the Accused Products and to instruct veterinarians to use such products in an infringing manner. Through these educational seminars, VOI induces veterinarians to directly infringe the '728 patent.  For example, Matthew Haas, a former VOI sales executive, explained at deposition that the purpose of such educational seminars was to "target [veterinarians] to try to have them gain interest and confidence in their ability to do TPLO through a course." Haas Depo. at 19:9–16. In a sworn declaration submitted in the matter *Veterinary Orthopedic Implants, Inc. v. Matthew Haas*, No. 20-cv-00868-MMH-MCR (M.D. Fla. Aug. 18, 2020), Mr. Haas further explained that though such training seminars or "labs" are "ostensibly non-commercial and instead purely education, . . . approximately 80% of [his] sales occurred at labs because doctors would learn about the new techniques and ask what products [VOI] sells that can support that technique." 20-cv-00868-MMH-MCR, Doc. 18-2, ¶ 12.

149.    VOI manufactures, imports, sells or offers for sale other products and services that are suitable for use in TPLO and CBLO procedures.  Examples of VOI's products constituting convoyed sales are included in the attached Exhibit I, as well as substantially similar designs to those designs in Exhibit I.

150.    A detailed infringement analysis for each of the Accused Products is provided in Exhibit N.  For illustrative purposes, and as described in greater detail herein, the VOI Elite TPLO plates practice each limitation of at least claim 1 of the '728 patent.  On information and belief, these plates are representative of the other Accused Products, including the NXT TPLO plates.  On information and belief, the other Accused Products practice each limitation of at

least claim 1 of the '728 patent for the same reasons as those described herein for the Elite TPLO plates.

151.    On information and belief, the left and right versions of each of VOI's Elite and NXT TPLO plates are mirror images of one another. The infringement analysis for the left-handed and right-handed plates are identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed.

152.    In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the Elite and NXT TPLO plates as illustrative examples is attached as Exhibit N, and is incorporated herein by reference.

153.    On information and belief, the different models of Elite and NXT TPLO plates do not differ for purposes of infringement except for the size of the plates.  The difference in size does not affect the infringement analysis below.

154.    Claim 1 of the '728 patent[3] is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of distal portion screw holes designed to accept a screw; and a proximal portion configured for attachment to a cut-away and repositioned portion of the tibia, the cut-away portion of the tibia comprising an articular surface at which the tibia interacts with the femur, the proximal portion having a bone-contacting surface configured and dimensioned to conform to the cut-away portion of the tibia when the distal portion is coupled to the shaft of the tibia in a desired

_____

[3] Allowed Claim 33 of the patent application that issued as the '728 patent was renumbered as Claim 1 of the issued patent.

orientation and when the cut-away portion of the tibia has been re-positioned as desired, the proximal portion comprising at least three proximal portion screw holes each designed to accept a screw, wherein a first proximal portion screw hole is a superior screw hole, a second proximal portion screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third proximal portion screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for at least two of the three screw holes of the proximal portion are predetermined and angled to direct screws inserted therethrough, when the bone plate is positioned on the tibia in a desired position, into a central mass of the tibia, wherein the elongated shaft extends along a longitudinal shaft axis and the plate defines a base plane parallel to the shaft axis, the screw hole path of the superior screw hole being angled no more than 90 degrees relative to the base plane."

155.    The Accused Products satisfy the requirement in claim 1 that the bone plate is "for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal."  As shown in the claim chart attached hereto as Exhibit N, the Elite TPLO plates are "TPLO" plates for use in tibial leveling osteotomy procedures.

156.    The Accused Products satisfy the requirement in claim 1 that the bone plate comprises "a distal portion comprising an elongated shaft having disposed therein a plurality of distal portion screw holes designed to accept a screw."  As shown in the claim chart attached hereto as Exhibit N, the Elite TPLO plates each have a distal portion 12.  The shaft 80 of the distal portion 12 is elongated relative to its depth. The distal portion of the Elite TPLO plates further comprises three distal screw holes (16) that are designed to accept screws.

157.   The Accused Products satisfy the requirement in claim 1 that the bone plate comprises "a proximal portion configured for attachment to a cut-away and repositioned portion of the tibia, the cut-away portion of the tibia comprising an articular surface at which the tibia interacts with the femur, the proximal portion having a bone-contacting surface configured and dimensioned to conform to the cut-away portion of the tibia when the distal portion is coupled to the shaft of the tibia in a desired orientation and when the cut-away portion of the tibia has been re-positioned as desired, the proximal portion comprising at least three proximal portion screw holes each designed to accept a screw."  As shown in the claim chart attached hereto as Exhibit N, the Elite TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws. During a tibial leveling procedure, an osteotomy is performed which creates two tibial bone segments. The proximal portion of the tibia, which includes the articular surface that interacts with the femur at the knee or stifle joint, is rotated during the procedure. After this portion of the tibia is cut away and rotated, the Elite TPLO plates are configured to provide fixation for the osteotomy by attaching the bone-contacting surface of the proximal portion of the Elite TPLO plate (14) to the cut-away portion of the tibia comprising an articular surface at which the tibia interacts with the femur, and the distal portion of the Elite TPLO plate (12) to the shaft of the tibia.

158.   The Accused Products satisfy the requirement in claim 1 that "a first proximal portion screw hole is a superior screw hole, a second proximal portion screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third proximal portion screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for at least two of the three screw holes of the proximal portion

are predetermined and angled to direct screws inserted therethrough, when the bone plate is positioned on the tibia in a desired position, into a central mass of the tibia, wherein the elongated shaft extends along a longitudinal shaft axis and the plate defines a base plane parallel to the shaft axis, the screw hole path of the superior screw hole being angled no more than 90 degrees relative to the base plane."  As shown in the claim chart attached hereto as Exhibit N, the proximal portion (14) of each of the Elite TPLO plates has three screw holes – a superior screw hole (30), cranial screw hole (31), and a caudal screw hole (32). The screw holes in the proximal portion of the Elite TPLO plates direct screws inserted therethrough into a central mass of the tibia, such that when the appropriate screws are inserted, the screw hole path of the superior screw is angled by no more than 90 degrees relative to a base plane parallel to a longitudinal shaft axis.

159.    As a result of VOI's infringement of the '728 patent, DePuy Synthes has suffered and will continue to suffer damages.

160.    VOI's infringement of the '728 patent is willful, making this an exceptional case and entitling DePuy Synthes to enhanced damages and attorneys' fees.  VOI became aware of the '728 patent no later than upon its issuance on June 8, 2021.  On information and belief, VOI has knowingly and willfully infringed the '728 patent by manufacturing, importing, using, selling and offering to sell the Accused Products, including the Accused Products identified in this complaint.

161.    Despite its knowledge of its infringement of the '728 patent, VOI has continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct its customers to use the Accused Products in a manner that infringes.

162.    DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that have a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths direct screws inserted therethrough into a central mass of the tibia, such that when the appropriate screws are inserted, the screw hole path of the superior screw is angled by no more than 90 degrees relative to a base plane parallel to a longitudinal shaft axis.

163.    DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '728 patent.

164.    On information and belief, VOI copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

165.    DePuy Synthes has been irreparably harmed by VOI's infringement of the '728 patent and will continue to be harmed unless VOI's infringing conduct is restrained and enjoined by order of this Court.

**COUNT FIVE**
**Syntec's Direct Infringement of the '728 Patent**

166.     DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1–165 above.

167.    On information and belief, Syntec, without authority, has directly infringed and continues to directly infringe the '728 patent, under 35 U.S.C. § 271(a), at least by

manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products.

168.     On information and belief, Syntec also manufactures, imports, sells or offers for sale other products and services that are suitable for use in TPLO and CBLO procedures. Examples of Syntec's products constituting convoyed sales are included in the attached Exhibit I, as well as substantially similar designs to those designs in Exhibit I.

169.     A detailed infringement analysis for each of the Accused Products is provided in Exhibit N.  For illustrative purposes, and as described in greater detail herein, the VOI Elite TPLO plates practice each limitation of at least claim 1 of the '728 patent.  On information and belief, these plates are representative of the other Accused Products, including the NXT TPLO plates.  On information and belief, the other Accused Products practice each limitation of at least claim 1 of the '728 patent for the same reasons as those described herein for the Elite TPLO plates.

170.     On information and belief, the left and right versions of each of VOI's Elite and NXT TPLO plates are mirror images of one another. The infringement analysis for the left-handed and right-handed plates are identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed.

171.     In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the Elite and NXT TPLO plates as illustrative examples is attached as Exhibit N, and is incorporated herein by reference.

172.     On information and belief, the different models of Elite and NXT TPLO plates do not differ for purposes of infringement except for the size of the plates.  The difference in size does not affect the infringement analysis below.

173.     Claim 1 of the '728 patent[4] is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of distal portion screw holes designed to accept a screw; and a proximal portion configured for attachment to a cut-away and repositioned portion of the tibia, the cut-away portion of the tibia comprising an articular surface at which the tibia interacts with the femur, the proximal portion having a bone-contacting surface configured and dimensioned to conform to the cut-away portion of the tibia when the distal portion is coupled to the shaft of the tibia in a desired orientation and when the cut-away portion of the tibia has been re-positioned as desired, the proximal portion comprising at least three proximal portion screw holes each designed to accept a screw, wherein a first proximal portion screw hole is a superior screw hole, a second proximal portion screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third proximal portion screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for at least two of the three screw holes of the proximal portion are predetermined and angled to direct screws inserted therethrough, when the bone plate is positioned on the tibia in a desired position, into a central mass of the tibia, wherein the elongated shaft extends along a longitudinal shaft axis

---

[4] Allowed Claim 33 of the patent application that issued as the '728 patent was renumbered as Claim 1 of the issued patent.

and the plate defines a base plane parallel to the shaft axis, the screw hole path of the superior screw hole being angled no more than 90 degrees relative to the base plane."

174.   The Accused Products satisfy the requirement in claim 1 that the bone plate is "for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal."  As shown in the claim chart attached hereto as Exhibit N, the Elite TPLO plates are "TPLO" plates for use in tibial leveling osteotomy procedures.

175.   The Accused Products satisfy the requirement in claim 1 that the bone plate comprises "a distal portion comprising an elongated shaft having disposed therein a plurality of distal portion screw holes designed to accept a screw."  As shown in the claim chart attached hereto as Exhibit N, the Elite TPLO plates each have a distal portion 12.  The shaft 80 of the distal portion 12 is elongated relative to its depth. The distal portion of the Elite TPLO plates further comprises three distal screw holes (16) that are designed to accept screws.

176.   The Accused Products satisfy the requirement in claim 1 that the bone plate comprises "a proximal portion configured for attachment to a cut-away and repositioned portion of the tibia, the cut-away portion of the tibia comprising an articular surface at which the tibia interacts with the femur, the proximal portion having a bone-contacting surface configured and dimensioned to conform to the cut-away portion of the tibia when the distal portion is coupled to the shaft of the tibia in a desired orientation and when the cut-away portion of the tibia has been re-positioned as desired, the proximal portion comprising at least three proximal portion screw holes each designed to accept a screw."  As shown in the claim chart attached hereto as Exhibit N, the Elite TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws. During a tibial

leveling procedure, an osteotomy is performed which creates two tibial bone segments. The proximal portion of the tibia, which includes the articular surface that interacts with the femur at the knee or stifle joint, is rotated during the procedure. After this portion of the tibia is cut away and rotated, the Elite TPLO plates are configured to provide fixation for the osteotomy by attaching the bone-contacting surface of the proximal portion of the Elite TPLO plate (14) to the cut-away portion of the tibia comprising an articular surface at which the tibia interacts with the femur, and the distal portion of the Elite TPLO plate (12) to the shaft of the tibia.

177.    The Accused Products satisfy the requirement in claim 1 that "a first proximal portion screw hole is a superior screw hole, a second proximal portion screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third proximal portion screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for at least two of the three screw holes of the proximal portion are predetermined and angled to direct screws inserted therethrough, when the bone plate is positioned on the tibia in a desired position, into a central mass of the tibia, wherein the elongated shaft extends along a longitudinal shaft axis and the plate defines a base plane parallel to the shaft axis, the screw hole path of the superior screw hole being angled no more than 90 degrees relative to the base plane."  As shown in the claim chart attached hereto as Exhibit N, the proximal portion (14) of each of the Elite TPLO plates has three screw holes – a superior screw hole (30), cranial screw hole (31), and a caudal screw hole (32). The screw holes in the proximal portion of the Elite TPLO plates direct screws inserted therethrough into a central mass of the tibia, such that when the appropriate screws are inserted, the screw hole

path of the superior screw is angled by no more than 90 degrees relative to a base plane parallel to a longitudinal shaft axis.

178.    As a result of Syntec's infringement of the '728 patent, DePuy Synthes has suffered and will continue to suffer damages.

179.    Syntec's infringement of the '728 patent is willful, making this an exceptional case and entitling DePuy Synthes to enhanced damages and attorneys' fees.  On information and belief, Syntec became aware of the '728 patent no later than upon its issuance on June 8, 2021.  On information and belief, Syntec has knowingly and willfully infringed the '728 patent by manufacturing, importing, using, selling and offering to sell the Accused Products, including the Accused Products identified in this complaint.

180.    Despite its knowledge of its infringement of the '728 patent, Syntec has continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct its customers to use the Accused Products in a manner that infringes.

181.    DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that have a proximal portion comprising at least three screw holes each designed to accept a screw wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths direct screws inserted therethrough into a central mass of the tibia, such that when the appropriate screws are inserted, the screw hole path of the superior screw is angled by no more than 90 degrees relative to a base plane parallel to a longitudinal shaft axis.

182.    DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '728 patent.

183.    On information and belief, Syntec copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

184.    DePuy Synthes has been irreparably harmed by Syntec's infringement of the '728 patent and will continue to be harmed unless Syntec's infringing conduct is restrained and enjoined by order of this Court.

## COUNT SIX
### Fidelio's Direct and Indirect Infringement of the '728 Patent

185.     DePuy Synthes incorporates by reference each of the allegations set forth in paragraphs 1–184 above.

186.    On information and belief, Fidelio, without authority, has directly infringed and continues to directly infringe the '728 patent, under 35 U.S.C. § 271(a), at least by manufacturing, importing, distributing, selling, offering for sale and/or using within the United States at least the Accused Products. For example, through Ossium (and/or Movora), Fidelio runs educational seminars to educate and train veterinarians in the various procedures that involve the Accused Products.  Fidelio also provides screws and equipment that are used with the plates and methods accused of infringement in this action.  On information and belief, the underlying purpose of these seminars is to sell and offer for sale the Accused Products and to instruct veterinarians to use such products in an infringing manner. Through these educational seminars, Fidelio induces veterinarians to directly infringe the '728 patent.  For example, Matthew Haas, a former VOI sales executive, explained at deposition that the purpose of such

educational seminars was to "target [veterinarians] to try to have them gain interest and confidence in their ability to do TPLO through a course." Haas Depo. at 19:9–16. In a sworn declaration submitted in the matter *Veterinary Orthopedic Implants, Inc. v. Matthew Haas*, No. 20-cv-00868-MMH-MCR (M.D. Fla. Aug. 18, 2020), Mr. Haas further explained that though such training seminars or "labs" are "ostensibly non-commercial and instead purely education, . . . approximately 80% of [his] sales occurred at labs because doctors would learn about the new techniques and ask what products [VOI] sells that can support that technique." 20-cv-00868-MMH-MCR, Doc. 18-2, ¶ 12.

187.    Fidelio also manufactures, imports, sells or offers for sale other products and services that are suitable for use in TPLO and CBLO procedures.  Examples of Fidelio's products constituting convoyed sales are included in the attached Exhibit I, as well as substantially similar designs to those designs in Exhibit I.

188.    A detailed infringement analysis for each of the Accused Products is provided in Exhibit N.  For illustrative purposes, and as described in greater detail herein, the VOI Elite TPLO plates practice each limitation of at least claim 1 of the '728 patent.  On information and belief, these plates are representative of the other Accused Products, including the NXT TPLO plates.  On information and belief, the other Accused Products practice each limitation of at least claim 1 of the '728 patent for the same reasons as those described herein for the Elite TPLO plates.

189.    On information and belief, the left and right versions of each of VOI's Elite and NXT TPLO plates are mirror images of one another. The infringement analysis for the left-

handed and right-handed plates are identical after accounting for the fact that, being mirror images, the placement of the cranial and caudal screw holes are reversed.

190.    In addition to the infringement analysis provided below, a claim chart alleging facts demonstrating infringement using the Elite and NXT TPLO plates as illustrative examples is attached as Exhibit N, and is incorporated herein by reference.

191.    On information and belief, the different models of Elite and NXT TPLO plates do not differ for purposes of infringement except for the size of the plates.  The difference in size does not affect the infringement analysis below.

192.    Claim 1 of the '728 patent[5] is directed to: "A bone plate for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal, the bone plate comprising: a distal portion comprising an elongated shaft having disposed therein a plurality of distal portion screw holes designed to accept a screw; and a proximal portion configured for attachment to a cut-away and repositioned portion of the tibia, the cut-away portion of the tibia comprising an articular surface at which the tibia interacts with the femur, the proximal portion having a bone-contacting surface configured and dimensioned to conform to the cut-away portion of the tibia when the distal portion is coupled to the shaft of the tibia in a desired orientation and when the cut-away portion of the tibia has been re-positioned as desired, the proximal portion comprising at least three proximal portion screw holes each designed to accept a screw, wherein a first proximal portion screw hole is a superior screw hole, a second proximal portion screw hole is a cranial screw hole located distally and cranially from the

---

[5] Allowed Claim 33 of the patent application that issued as the '728 patent was renumbered as Claim 1 of the issued patent.

superior screw hole, and a third proximal portion screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for at least two of the three screw holes of the proximal portion are predetermined and angled to direct screws inserted therethrough, when the bone plate is positioned on the tibia in a desired position, into a central mass of the tibia, wherein the elongated shaft extends along a longitudinal shaft axis and the plate defines a base plane parallel to the shaft axis, the screw hole path of the superior screw hole being angled no more than 90 degrees relative to the base plane."

193.    The Accused Products satisfy the requirement in claim 1 that the bone plate is "for securing two tibial bone segments as part of a tibial leveling osteotomy procedure for an animal."  As shown in the claim chart attached hereto as Exhibit N, the Elite TPLO plates are "TPLO" plates for use in tibial leveling osteotomy procedures.

194.    The Accused Products satisfy the requirement in claim 1 that the bone plate comprises "a distal portion comprising an elongated shaft having disposed therein a plurality of distal portion screw holes designed to accept a screw."  As shown in the claim chart attached hereto as Exhibit N, the Elite TPLO plates each have a distal portion 12.  The shaft 80 of the distal portion 12 is elongated relative to its depth. The distal portion of the Elite TPLO plates further comprises three distal screw holes (16) that are designed to accept screws.

195.    The Accused Products satisfy the requirement in claim 1 that the bone plate comprises "a proximal portion configured for attachment to a cut-away and repositioned portion of the tibia, the cut-away portion of the tibia comprising an articular surface at which the tibia interacts with the femur, the proximal portion having a bone-contacting surface configured and dimensioned to conform to the cut-away portion of the tibia when the distal

portion is coupled to the shaft of the tibia in a desired orientation and when the cut-away portion of the tibia has been re-positioned as desired, the proximal portion comprising at least three proximal portion screw holes each designed to accept a screw." As shown in the claim chart attached hereto as Exhibit N, the Elite TPLO plates each have a proximal portion 14 comprising three screw holes 30, 31 and 32 that are designed to accept screws. During a tibial leveling procedure, an osteotomy is performed which creates two tibial bone segments. The proximal portion of the tibia, which includes the articular surface that interacts with the femur at the knee or stifle joint, is rotated during the procedure. After this portion of the tibia is cut away and rotated, the Elite TPLO plates are configured to provide fixation for the osteotomy by attaching the bone-contacting surface of the proximal portion of the Elite TPLO plate (14) to the cut-away portion of the tibia comprising an articular surface at which the tibia interacts with the femur, and the distal portion of the Elite TPLO plate (12) to the shaft of the tibia.

196.   The Accused Products satisfy the requirement in claim 1 that "a first proximal portion screw hole is a superior screw hole, a second proximal portion screw hole is a cranial screw hole located distally and cranially from the superior screw hole, and a third proximal portion screw hole is a caudal screw hole located distally and caudally from the superior screw hole, wherein screw hole paths for at least two of the three screw holes of the proximal portion are predetermined and angled to direct screws inserted therethrough, when the bone plate is positioned on the tibia in a desired position, into a central mass of the tibia, wherein the elongated shaft extends along a longitudinal shaft axis and the plate defines a base plane parallel to the shaft axis, the screw hole path of the superior screw hole being angled no more than 90 degrees relative to the base plane." As shown in the claim chart attached hereto as

Exhibit N, the proximal portion (14) of each of the Elite TPLO plates has three screw holes –
a superior screw hole (30), cranial screw hole (31), and a caudal screw hole (32). The screw
holes in the proximal portion of the Elite TPLO plates direct screws inserted therethrough into
a central mass of the tibia, such that when the appropriate screws are inserted, the screw hole
path of the superior screw is angled by no more than 90 degrees relative to a base plane parallel
to a longitudinal shaft axis.

197.    As a result of Fidelio's infringement of the '728 patent, DePuy Synthes has
suffered and will continue to suffer damages.

198.    Fidelio's infringement of the '728 patent is willful, making this an exceptional
case and entitling DePuy Synthes to enhanced damages and attorneys' fees. On information
and belief, Fidelio became aware of the '728 patent no later than upon its issuance on June 8,
2021.  On information and belief, Fidelio has knowingly and willfully infringed the '728 patent
by manufacturing, importing, using, selling and offering to sell the Accused Products,
including the Accused Products identified in this complaint.

199.    Despite its knowledge of its infringement of the '728 patent, Fidelio has
continued to manufacture, import, use, sell and offer to sell the Accused Products and instruct
its customers to use the Accused Products in a manner that infringes.

200.    DePuy Synthes markets TPLO plates (the "DePuy Synthes TPLO plates") that
have a proximal portion comprising at least three screw holes each designed to accept a screw
wherein a first screw hole is a superior screw hole, a second screw hole is a cranial screw hole
located distally and cranially from the superior screw hole, and a third screw hole is a caudal
screw hole located distally and caudally from the superior screw hole, wherein screw hole

paths direct screws inserted therethrough into a central mass of the tibia, such that when the appropriate screws are inserted, the screw hole path of the superior screw is angled by no more than 90 degrees relative to a base plane parallel to a longitudinal shaft axis.

201.    DePuy Synthes marks the DePuy Synthes TPLO plates with the patent number of the '728 patent.

202.    On information and belief, Fidelio copied the DePuy Synthes TPLO plates and has designed the Accused Products to have proximal portion screw holes that result in the same screw angles as those in the DePuy Synthes TPLO plates.

203.    DePuy Synthes has been irreparably harmed by Fidelio's infringement of the '728 patent and will continue to be harmed unless Fidelio's infringing conduct is restrained and enjoined by order of this Court.

**PRAYER FOR RELIEF**

WHEREFORE, DePuy Synthes respectfully requests that this Court:

1.    Adjudge that VOI, Syntec, and Fidelio have directly infringed, literally or under the doctrine of equivalents, at least claim 12 of the '921 patent, and that the manufacture, use, sale, offer for sale and/or importation of at least the Accused Products infringe at least claim 12 of the '921 patent;

2.    Adjudge that VOI and Fidelio have induced and contributed to direct infringement of at least claim 12 of the '921 patent;

3.    Permanently enjoin VOI, Syntec, and Fidelio, their officers, agents, servants and employees, and those in active concert or participation with any of them, from infringing the '921 patent;

4.     Award DePuy Synthes compensatory damages for VOI's, Syntec's, and Fidelio's infringement of the '921 patent, including lost profits;

5.     Award DePuy Synthes increased damages under 35 U.S.C. § 284 for VOI's, Syntec's, and Fidelio's willful and deliberate infringement of the '921 patent;

6.     Adjudge that VOI, Syntec, and Fidelio have directly infringed, literally or under the doctrine of equivalents, at least claim 1 of the '728 patent, and that the manufacture, use, sale, offer for sale and/or importation of at least the Accused Products infringes at least claim 1 of the '728 patent;

7.     Adjudge that VOI and Fidelio have induced and contributed to direct infringement of at least claim 1 of the '728 patent;

8.     Permanently enjoin VOI, Syntec, and Fidelio, their officers, agents, servants and employees, and those in active concert or participation with any of them, from infringing the '728 patent;

9.     Award DePuy Synthes compensatory damages for VOI's, Syntec's, and Fidelio's infringement of the '728 patent, including lost profits;

10.     Award DePuy Synthes increased damages under 35 U.S.C. § 284 for VOI's, Syntec's, and Fidelio's willful and deliberate infringement of the '728 patent;

11.     Declare this to be an exceptional case under 35 U.S.C. § 285;

12.     Award DePuy Synthes its attorney fees and costs incurred in prosecuting this action, together with pre-judgment and post-judgment interest;

13.     Hold Fidelio liable for VOI's infringement if justice requires; and

     14.     Grant DePuy Synthes such other and further relief as this Court deems just and proper, including an injunction.

**JURY DEMAND**

     DePuy Synthes hereby respectfully requests a trial by jury of all issues so triable, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

     Dated this ____ day of June 2021.

                                      GRAYROBINSON, P.A.

                                      By: /s/_____
                                      R. Troy Smith
                                      Florida Bar No. 485519
                                      Cole Y. Carlson
                                      Florida Bar No. 112863
                                      50 N. Laura Street, Suite 1100
                                      Jacksonville, FL 32202
                                      Phone: (904) 598-9929
                                      Facsimile: (904) 598-9109
                                      *troy.smith@gray-robinson.com*
                                      *stephen.anderson@gray-robinson.com*
                                      *cole.carlson@gray-robinson.com*
                                      *maria.daniels@gray-robinson.com*
                                      *jessica.gonzalez@gray-robinson.com*

                                      -and-

                                      Jason G. Sheasby (admitted *pro hac vice*)
                                      California Bar No.: 205455
                                      Andrew E. Krause (admitted *pro hac vice*)
                                      California Bar No.: 294850
                                      Irell & Manella, LLP
                                      1800 Avenue of the Stars, Ste. 900
                                      Los Angeles, CA 90067-4276
                                      Phone: (310) 203-7096
                                      Facsimile: (310) 203-7199
                                      *jsheasby@irell.com*
                                      *akrause@irell.com*

*Attorneys for Plaintiffs DePuy Synthes*
*Products, Inc. and DePuy Synthes Sales, Inc.*

# 1822468 v1