# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

| | | |
|---|---|---|
| DEPUY SYNTHES PRODUCTS, INC. and DEPUY SYNTHES SALES, INC., | ) ) | |
| Plaintiffs, | ) ) | Case No. 3:18-CV-01342-HES- |
| v. | ) ) | PDB |
| VETERINARY ORTHOPEDIC IMPLANTS, INC., SYNTEC SCIENTIFIC CORPORATION, and FIDELIO CAPITAL AB, | ) ) ) | |
| Defendants. | ) ) | |
| | ) | |

## DEFENDANTS VOI AND FIDELIO'S MOTION FOR
## SUMMARY JUDGMENT AND MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 56, Defendants Veterinary Orthopedic Implants, Inc. and Fidelio Capital AB move for summary judgment of invalidity of U.S. Patent 11,026,728 (the '728 patent) (Ex. 1) based on its failure to provide written description support for claim 1, the only asserted claim of this patent. Summary judgment is appropriate because no reasonable factfinder could find written description support. Even Plaintiffs concede that the '728 patent does not disclose claim 1 under the only possible construction. Also, because Plaintiffs' arguments further show the claim's scope is not reasonably certain, claim 1 is also invalid as indefinite.

Defendants also move for summary judgment of noninfringement of claim 1 of the '728 patent and all asserted claims of U.S. Patent 8,523,921 (the '921 patent) (Ex. 2). Summary judgment is appropriate because the relevant facts regarding the accused products are not in dispute, and noninfringement can be found based on claim construction alone—a legal determination.

## MEMORANDUM OF LAW

### I.      Statement of Undisputed Material Facts

#### A.      Facts Related to the '728 Patent

Claim 1 of the '728 patent (the only asserted claim) recites a plate having a proximal portion including "at least three proximal portion screw holes each designed to accept a screw, wherein a first proximal portion screw hole is a superior screw hole, a second proximal portion screw hole is a cranial screw hole . . . , and a third proximal portion screw hole is a caudal screw hole." '728 patent at 11:13-20. Claim 1 also recites that "the screw hole path of the superior screw hole being angled no more than 90 degrees relative to the base plane." *Id.* at 11:28-30. Unasserted claim 2 also recites that "the screw hole path of the caudal screw hole is angled no more than 90 degrees relative to the base plane." *Id.* at 11:31-33.

The '728 patent describes the angle of the screw hole paths in the plate's proximal portion. *Id.* at 6:61-7:31, Figs. 7-9. It describes, in reference to Figure 9 (reproduced here), that these angles are measured from the base plane at the plate's bottom to an imaginary center line extending upward through each screw hole in the plate. *Id.* at 7:12-27.



The '728 patent states that "[t]he superior hole 30 can be designed such that its

center line 34 is at an angle of between about 91° and about 97°, preferably between about 92° and about 95° from the base plane 42, but it can also be at an angle of 90°." *Id.* at 7:19-27. The '728 patent also states that Figure 9 illustrates "the cranial 31 and caudal 32 holes are at an angle of 90°, or perpendicular, to the base plane 42, however either or both of these holes can be designed such that their center lines 34 are at an angle between about 85° and about 89°." *Id.* at 7:27-31.

The '728 patent explains that the angle of the superior screw hole path measured from the base plane to the center line of the path as shown in Figure 9 is what permits the superior screw to be angled distally.

> In the embodiment illustrated, as seen in FIG. 9, the superior hole 30 is designed such that the center line 34 for the hole is at an angle of about 93° to the base plane 42. This results in the superior screw 30*a* being angled distally or inwardly toward the center of the proximal portion 14 of the plate 10.

*Id.* at 7:19-24.

The '728 patent thus discloses that the superior screw can be angled distally by angling its hole path distally between about 91° and 97° from the base plane. *Id.* at 7:19-27. Conversely, a superior screw hole path angled less than 90° from the base plane would cause the superior screw to be angled proximally. Plaintiffs admit that the patent's "specification does not contain any description of angling the superior screw hole proximally away from the proximal portion of the plate, or toward the articular surface where the femur and tibia contact." *See* Dkt. 353 at 18, FF39.

The only angles disclosed in the '728 patent for the superior screw hole path are 90°, 93°, 91°-97°, and 92°-95°. '728 patent at 7:19-27, Fig. 9. The '728 patent

does not disclose that the superior screw hole may be any angle less than 90° relative to the base plane. *Id.*; Ex. 7, Ledet Tr. 208:20-23. For the superior screw hole, Figure 9 shows "an angle between the base plane and the axis of the screw, which is labeled as 93 degrees." Ex. 7, Ledet Tr. 208:24-209:4. Figure 9 does not show any other angle for superior screw hole 30, whether it is a complementary or supplementary angle.[1] *Id.* at 204:18-21. Indeed, the '728 patent nowhere discusses any angle complementary to those described in the specification and shown in Figure 9.

### B. Facts Related to the '921 Patent

The '921 patent has been discussed in detail in other briefing before this Court. *See, e.g.*, Dkt. 124; Dkt. 347. Particularly relevant here is that the '921 patent discloses "three orthogonal planes" purportedly used (with other terms) to describe the contour of a TPLO plate. '921 patent at 5:31-38. Figures 2B-2D, reproduced below, show these planes—base plane 42, mid-plane 44, and transverse plane 46.



---

[1] Plaintiffs and its expert, Dr. Ledet, use "complementary" angles to refer to two angles that total 180°. Dkt. 353 at 19-20, FF40-42; Ex. 7, Ledet Tr. 206:14-208:9. Complementary angles are two angles that total 90°, while supplementary angles are two angles that total 180°. *See* www.mathsisfun.com/geometry/complementary-angles.html. At his deposition, Dr. Ledet agreed that he should have referred to supplementary rather than complementary angles. Ex. 7, Ledet Tr. 206:14-208:9, 210:3-16, 249:13-17. Because Dr. Ledet has used both "complementary" and "supplementary" to refer to two angles that total 180°, this motion also uses "complementary" angle and "supplementary" angle interchangeably.

Independent claims 1, 19, and 20 of the '921 patent each recite a "mid-plane," and this term is the subject of the pending claim construction dispute. *E.g.*, Dkt. 124 at 12; Dkt. 347. Defendants proposed that "mid-plane" should be construed as "[a] plane passing through something in such a way as to divide it into symmetrical halves." Dkt. 124 at 12. It is undisputed that none of the accused products has a proximal portion that can be divided into symmetrical halves. Ex. 3, Gall Tr. 62:12-63:21; Ex. 9, Drewry Decl. ¶¶ 83-85.

The '921 patent also describes angling the screws in the plate's proximal portion relative to the tibia's anatomical features. For example, the plate is "preferably designed to have the screws for the proximal portion 14 angle into the tibia so that the screws are directed away from the articular surface between the tibia and the femur, away from the osteotomy surface of the tibia, and away from the edges of the tibia." '921 patent at 6:18-23. This feature, recited in claim 12, is also the subject of the pending claim construction dispute. *E.g.*, Dkt. 124 at 13-14; Dkt. 347.

During claim construction, Defendants proposed that this limitation should be construed as "[a]ngled in the opposite direction from the articular surface, in the opposite direction from the joint between the tibia and femur, in the opposite direction from the surface of the cut portion of bone and in the opposite direction from the outer edge of the tibia." Dkt. 124 at 13-14. It is undisputed that none of the accused products has at least three screw hole paths in the proximal portion of the plate angled in the opposite direction from the articular surface, in the opposite direction from the joint between the tibia and femur, in the opposite direction from

5

the surface of the cut portion of bone, and in the opposite direction from the outer edge of the tibia. Ex. 3, Gall Tr. 72:5-16; Ex. 9, Drewry Decl. ¶¶ 37-82.

Neither party proposed any construction for the phrase "edges of the tibia" recited in claim 12. It is undisputed, however, that the accused Elite plates have at least one screw hole path (in the proximal portion) that directs a screw to exit an outer perimeter of the tibia. Ex. 3, Gall Tr. 104:19-25; Ex. 5, Gall Rpt. ¶ 229; Ex. 6, Gall Reply Rpt. ¶ 63.

## II.   Standard of Review

Summary judgment is appropriate if the movant shows no genuine issues of disputed material fact. Fed. R. Civ. P. 56(a). The court must view the evidence in a light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *Procaps S.A. v. Patheon, Inc.*, 845 F.3d 1072, 1079 (11th Cir. 2016).

## III.   The '728 Patent Is Invalid for Lack of Written Description and Indefiniteness

Under 35 U.S.C. § 112, ¶ 1,[2] a patent must have a written description that supports the claims and shows that the inventors invented what is claimed. *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc). If patent claims are not sufficiently supported by the patent's written description, they are invalid under § 112 for failing to meet the written description requirement. *Id.* at

---

[2] 35 U.S.C. § 112 was amended and subsections were renamed by the America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011) (AIA), which took effect on September 16, 2012. Because the '921 and '728 patents claim priority to applications filed before that effective date, the AIA is not applicable. The pre-AIA version of 35 U.S.C. § 112 applies and is cited herein.

1358. The "test for sufficiency is whether the disclosure . . . reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Id.* at 1351; *see also Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1158 (Fed. Cir. 1998) (stating that the patent disclosure "must reasonably convey to one of skill in the art that the inventor possessed the later-claimed subject matter at the time the parent application was filed"). "Compliance with the written description requirement is a question of fact but is amenable to summary judgment in cases where no reasonable fact finder could return a verdict for the non-moving party." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1307 (Fed. Cir. 2008).

Claims are indefinite under 35 U.S.C. § 112, ¶ 2, if they "fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Whether a claim meets the "definiteness requirement of . . . § 112 ¶ 2 is a matter of claim construction," and is thus amenable to summary judgment. *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311-12 (Fed. Cir. 2012).

Here, no reasonable factfinder could find claim 1 is supported by the disclosure of the '728 patent. There is no genuine issue of material fact that the '728 patent does not disclose a superior screw hole path angled less than 90°, as required by claim 1, even under Plaintiffs' proposed construction or when measured by the only way the '728 patent itself discloses. Indeed, Plaintiffs themselves admitted in a proposed finding of fact during briefing on indefiniteness that the '728 patent contains no such description. *See* Dkt. 353 at 18, FF39. As a result, the sufficiency of

the written description turns on the legal issue of claim construction and is thus amenable to summary judgment.

Likewise, indefiniteness is a legal issue determined by claim construction. Here, Plaintiffs and their expert assert that the '728 patent's specification discloses at least two ways to measure the angle of the superior screw hole path through the bone plate—one expressly shown in Figure 9 and one implied as complementary to that express angle. Because there are different ways to measure the angle of the superior screw hole and each would result in materially different outcomes, the scope of claim 1 is not reasonably certain and is indefinite.

## A.    Claim 1 of the '728 Patent Lacks Written Description Support

Claim 1 of the '728 patent requires that the plate's proximal portion has a superior screw hole "angled no more than 90 degrees relative to the base plane." '728 patent at 11:28-30. An angle of "no more than 90 degrees" includes angles of 0° to 90°. Ex. 7, Ledet Tr. 202:11-20. The '728 patent, however, only discloses angles of "93°," "between about 91° and about 97°," "preferably between about 92° and about 95°," and "90°" for the superior screw hole. '728 patent at 7:19-27. The '728 patent does not disclose any angle between 0° and 89° for the superior screw hole path, let alone state that it should be "no more than 90 degrees." As a result, the claimed angle for the superior screw hole path is not disclosed in the '728 patent.

Plaintiffs assert that the path of the superior screw hole in claim 1 should be construed to mean the "screw hole path is angled parallel or distally relative to the base plane." Dkt. 291 at 13. Plaintiffs argue that the specification teaches that the

8

hole for the superior screw must be angled distally to angle the screw away from the articular surface of the bone. Dkt. 307 at 19-20. But the patent expressly teaches that this is achieved by having the superior screw hole path at angles of "93°," "between about 91° and about 97°," or "between about 92° and about 95°." '728 patent at 7:19-27. Thus, the patent teaches that the superior screw hole path is angled distally when it is angled greater than 90°—*not* less than 90°, as claimed. Even if claim 1 is construed to require that the superior screw hole path be angled distally, claim 1 has no written description support because the patent does not disclose achieving that with angles less than 90°. In other words, because the '728 patent's specification does not disclose a superior screw hole path that is angled distally when angled "no more than 90 degrees," claim 1 is not supported even under Plaintiffs' construction.

If the superior screw hole path is angled less than 90° as claimed, then the superior screw hole would be angled in the opposite or proximal direction. *See, e.g.*, Dkt. 307 at 19-20. But even Plaintiffs admit that the '728 patent's "specification does not contain any description of angling the superior screw hole proximally away from the proximal portion of the plate, or toward the articular surface where the femur and tibia contact." Dkt. 353 at 18, FF39. Thus, there is no factual dispute that what claim 1 actually claims is not what the specification actually describes.

Recognizing this defect, Plaintiffs now argue the opposite of what the specification describes and shows in Figure 9. Specifically, Plaintiffs now urge that claim 1 refers to angles complementary to those shown in Figure 9. *See* Dkt. 307 at 19-20 (Plaintiffs arguing, "[i]f the claim was not referring to the measurement of the

acute complementary angle relative to the base plane, the screw would be pointed in the opposite direction," i.e., the proximal direction, "directing the superior screw into the knee joint, the exact problem that the claimed feature sought to avoid"). But this reads "complementary angle" into claim 1, a feature not supported by the '728 patent and not even part of Plaintiffs' proposed construction.

Plaintiffs' expert acknowledged claim 1's defect. Indeed, Dr. Ledet admitted that "it's the complementary angles that are what is being described in the claim" because, in his view, the claim would not otherwise "make sense." Ex. 7, Ledet Tr. 204:18-205:3; *see also id.* at 210:3-16 (stating that "it would have been obvious to one skilled in the art to know that . . . the claim is ultimately referring to the supplementary angle"). It is not proper to allow expert testimony on what would have been obvious to an ordinary artisan to teach limitations that are not in the specification. *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315, 1322 (Fed. Cir. 2017) ("The knowledge of ordinary artisans may be used to inform what is actually in the specification, but not to teach limitations that are not in the specification, even if those limitations would be rendered obvious by the disclosure in the specification." (citations omitted)); *PowerOasis*, 522 F.3d at 1310 (affirming summary judgment and holding that expert declaration about what would have been obvious was "not sufficient to raise a genuine issue of material fact" of whether the specification had adequate written description support). Nor is it the Court's role to fix claims that do not make sense. *See, e.g.*, *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002) (stating that "[i]t is not our function to rewrite claims to preserve

their validity" and refusing to construe "perpendicular" to mean "parallel" to comport with the specification and preserve validity under § 112); *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1368 (Fed. Cir. 2005) ("[C]ourts should not rewrite claims to preserve validity."). Claim 1 does not recite a complementary angle, and it should not be rewritten to recite a complementary angle that the patent does not disclose. *See, e.g.*, Dkt. 307 at 17-18 (Plaintiffs acknowledging that the '728 patent does not expressly disclose a complementary angle and only arguing that the angle described in Figure 9 inherently has a complementary angle).

Plaintiffs have also argued that the phrase "relative to the base plane" in claim 1 somehow distinguishes the claim from Figure 9 and makes the claim directed to an angle complementary to that shown in Figure 9. *Id.* at 18-19. But that is inconsistent with the testimony of Plaintiffs' expert. As Dr. Ledet testified, when the '728 patent describes Figure 9 as having a superior screw hole path with angles of "93°," "between about 91° and 97°," and "preferably between about 92° and about 95°," the '728 patent does so by describing angles measured "to the base plane" and "from the base plane." Ex. 7, Ledet Tr. 230:7-10; '728 patent at 7:19-27. That is synonymous with the language of claim 1 stating that the angle be measured "relative to the base plane." Thus, the language "relative to the base plane" in claim 1 does not save Plaintiffs here.

Plaintiffs' argument that claim 1 covers an angle complementary to that shown in Figure 9 also runs afoul of claim 2. Using the same language as in claim 1 for the superior screw hole path, claim 2 recites that the path "of the caudal screw

hole is angled no more than 90 degrees relative to the base plane." '728 patent at 11:31-33. The '728 patent describes the angle of the caudal screw hole as "90°" or "between about 85° and about 89°." *Id.* at 7:27-31. Those angles are all "no more than 90 degrees," as claim 2 recites. And this comports with Figure 9, which shows the angle of the caudal screw hole, like the angle of the superior screw hole, is measured from the base plane at the plate's bottom to the hole's center line through the plate's top. *Id.* at Fig. 9. Thus, claim 2 directly follows the '728 patent's specification. But if claim 2 were to cover a complementary angle, as Plaintiffs now assert for the same language in claim 1, then that would make claim 2 unsupported. Plaintiffs' arguments for claim 1 would thus create a nonsensical result for claim 2. *See Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997) ("[W]e must not interpret an independent claim in a way that is inconsistent with a claim which depends from it.").

In short, claim 1 recites a range of angles for the superior screw hole path that the '728 patent simply does not support. The range of "no more than 90 degrees relative to the base plane"—or any specific angle between 0° and 89° within that range—exists nowhere in the '728 patent. Claim 1 is thus invalid for failing to meet the written description requirement. *See, e.g.*, *Ariad*, 598 F.3d at 1358 (holding claims invalid that were broader than the specification); *In re Wertheim*, 541 F.2d 257, 263-64 (CCPA 1976) (stating that the written description requirement not met when a claimed range reads on embodiments outside of the disclosed range); *Gen. Hosp. Corp. v. Sienna Biopharms., Inc.*, 888 F.3d 1368, 1372-73 (Fed. Cir. 2018); *Gentry Gallery, Inc.*

12

*v. Berkline Corp.*, 134 F.3d 1473, 1478-79 (Fed. Cir. 1998).

###    B.    Claim 1 of the '728 Patent Is Indefinite

Even if claim 1 could cover a complementary angle, it only shows that claim 1 is indefinite. In the claim construction briefing and proposed findings of fact on indefiniteness, Defendants showed that claim 1 is indefinite given the different ways to measure the superior screw hole's angle, resulting in materially different outcomes for the claim's scope. Dkt. 290 at 15-20; Dkt. 302 at 9-13; Dkt. 352 at 15-18, 23. Specifically, Defendants showed that there are an infinite number of ways to measure the angle between a line and a plane, Dkt. 302 at 9-13, and that even using the direction shown in Figure 9 leads to a claimed range not disclosed in the '728 patent, Dkt. 290 at 19.

At his deposition, Plaintiffs' expert, Dr. Ledet, conceded that there are at least two ways to measure the angle recited in claim 1. Dr. Ledet testified that when "measuring an angle relative to the base plane," it "could be a complementary angle, or it could be an angle as is shown in Figure 9." Ex. 7, Ledet Tr. 205:13-18; *see also id.* at 224:22-225:4, 232:15-233:2 ("Again, I think based on Figure 9 and the specification, we're talking about a line shown in Figure 9 relative to a plane. The line is shown. The plane is shown. And the angle between them is shown. The one angle that could be used to describe it is shown, and there's another angle that could be used to describe it, which is implied."), 222:13-19. There is no dispute that there are at least two possible ways to measure an angle relative to a base plane as claimed in claim 1. And, as a result, the scope of claim 1 would not be reasonably certain to

one of skill in the art.

"[A] claim may be invalid as indefinite when (1) different known methods exist for calculating a claimed parameter, (2) nothing in the record suggests using one method in particular, and (3) application of the different methods result[s] in materially different outcomes for the claim's scope." *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, 838 F. App'x 538, 542 (Fed. Cir. 2020) (citations omitted). There is no dispute that applying the two ways for measuring an angle from the base plane identified by Dr. Ledet leads to materially different outcomes. Indeed, Plaintiffs assert that Defendants infringe under one method and do not infringe under the other method.

As discussed above, the '728 patent's specification describes only using the angle in Figure 9, which would lead to an undisputed finding of no infringement. The specification does not disclose measuring the angle of the superior screw hole path by measuring the angle complementary to the one measured according to Figure 9, let alone suggest that would be the preferred method over that shown in Figure 9.

For these reasons, the scope of claim 1 is not reasonably certain and should be held invalid as indefinite.

## IV.    The Accused Products Do Not Infringe the '728 Patent

Patent infringement requires a two-step process. "[F]irst, the scope of the claims are determined as a matter of law," and second, after properly construing the claims, the "claims are compared to the allegedly infringing device to determine, as a

14

matter of fact, whether all of the limitations of at least one claim are present, either literally or by a substantial equivalent, in the accused device." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002). "Summary judgment on the issue of infringement is proper when no reasonable jury could find that every limitation recited in a properly construed claim either is or is not found in the accused device either literally or under the doctrine of equivalents." *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374-75 (Fed. Cir. 2007) (citation omitted).

Here, there is no genuine issue of material fact that the accused products do not infringe claim 1 of the '728 patent. Specifically, if the Court construes claim 1 to require measuring the claimed angle from the base plane to an imaginary center line extending upward through the screw hole (consistent with the specification, including Figure 9), then the accused products do not include a "screw hole path of the superior screw hole . . . angled no more than 90 degrees relative to the base plane." Defendants' expert, Mr. Drewry, explained that none of the accused products has such an angle measured this way. Ex. 9, Drewry Decl. ¶¶ 86-95. And Plaintiffs' expert, Dr. Gall, does not dispute that the accused products would not infringe, either. *See* Ex. 3, Gall Tr. 111:19-112:9.

## V.   The Accused Products Do Not Infringe the '921 Patent

For the reasons below, there is no genuine issue of material fact that the accused products do not infringe any asserted claim of the '921 patent.

### A.   The Accused Products Do Not Infringe Claims 12-14 of the '921 Patent Because They Do Not Include the Claimed Screw Hole Paths

Defendants do not infringe claims 12-14 of the '921 patent because the accused products do not meet claim 12's requirement for "screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia" (also identified as "element 12(d)"). '921 patent at 11:10-15. Defendants do not infringe regardless of whether the Court adopts Defendants' or Plaintiffs' construction of this limitation.

First, under Defendants' construction of element 12(d), there is no dispute that the accused products do not include at least three screw hole paths "angled *in the opposite direction* from the articular surface, *in the opposite direction* from the joint between the tibia and femur, in the opposite direction from the surface of the cut portion of bone and *in the opposite direction* from the outer edge of the tibia." Dkt. 124 at 13-14 (emphases added).

Second, even if the Court adopts Plaintiffs' construction for element 12(d), the accused products still do not have at least three screw hole paths angled to direct screws away from *the edges of the tibia*. Expert discovery has revealed that the parties dispute the scope of the claimed "edges of the tibia"—a legal dispute that this Court has not previously considered. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that

dispute."). When "edges of the tibia" is given its proper scope, there is no genuine dispute of material fact that the accused products do not infringe claims 12-14.

### 1.   No infringement under Defendants' construction of element 12(d)

During claim construction, Defendants proposed that element 12(d) should be construed as "[a]ngled in the opposite direction from the articular surface, in the opposite direction from the joint between the tibia and femur, in the opposite direction from the surface of the cut portion of bone and in the opposite direction from the outer edge of the tibia." Dkt. 124 at 13-14. Defendants' expert, Mr. Drewry, explained that none of the accused products satisfies the claim under Defendants' construction. Ex. 9, Drewry Decl. ¶¶ 37-82. Plaintiffs' expert, Dr. Gall, does not dispute that, under Defendants' construction of the claim, the accused products do not infringe claim 12. Ex. 3, Gall Tr. 72:5-16 (admitting he did not even analyze infringement under Defendants' construction). Therefore, should the Court agree with Defendants' construction of element 12(d), there is no genuine dispute that the accused products do not infringe claims 12-14.

### 2.   No infringement even under Plaintiffs' construction of element 12(d)

Even if the Court agrees with Plaintiffs' construction of claim element 12(d), the accused products still do not meet claim 12's requirement of "screw hole paths . . . angled so as to direct screws . . . *away from edges of the tibia*." Expert discovery has now highlighted that the parties disagree over the scope of "edges of the tibia," a legal issue for the Court to resolve.

17

During claim construction, Plaintiffs asserted that this limitation of claim 12 should be construed such that "angled . . . away from edges of the tibia" means "do[es] not invade" the edges of the tibia. Dkt. 189 at 28-29. In other words, Plaintiffs argued that "angled . . . away from" means that the screws cannot go near or through the edges of the tibia. Plaintiffs did not offer any construction of "edges of the tibia" or suggest that this limitation should be given anything but its plain and ordinary meaning. Recently, however, Plaintiffs' expert, Dr. Gall, has taken the position that "edges of the tibia" applies to only select portions of the tibia's edges. *See*, *e.g.*, Ex. 3, Gall Tr. 74:20-77:2; Ex. 4. Plaintiffs have taken the position that a plate can have screw hole paths that permit screws to exit certain portions of the tibia's edges while still (somehow) directing those screws "away from edges of the tibia," as claim 12 requires. In other words, Plaintiffs now allege that "away from edges of the tibia" means that screws should not exit certain, undefined portions of the tibia, but can still exit other portions of the tibia.

Nothing in claim 12 limits "edges of the tibia" to only certain portions of the tibia. This phrase should be given its plain and ordinary meaning, *i.e.*, "outer perimeter of the tibia." And under that plain and ordinary meaning, claim 12 requires that a plate have screw hole paths that direct screws away from the edges or outer perimeter of the tibia. In other words, the screw hole paths should not permit screws to exit anywhere along the outer perimeter of the tibia, and "edges of the tibia" should not be narrowed to only some undefined portions of the tibia, as Plaintiffs now propose.

18

Because the parties now dispute the scope of the "edges of the tibia" limitation, the Court, and not the jury, should decide its meaning. *See O2 Micro*, 521 F.3d at 1360 ("When the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").[3] And when properly construed, there is no factual dispute that the accused Elite products do not infringe because they have at least one proximal screw hole that directs a screw through the outer perimeter of the tibia. Ex. 3, Gall Tr. 104:19-25; Ex. 5, Gall Rpt. ¶ 229; Ex. 6, Gall Reply Rpt. ¶ 63.

### a.   The claimed "edges" mean "the outer perimeter" of the tibia

The "edges of the tibia," recited in claim 12, plainly mean "the outer perimeter of the tibia." This comports with the parties' claim construction positions. Dkt. 169 at 29 (Defendants using "outer edge of the tibia" as plain meaning for this phrase); Dkt. 168 at 32-33 (Plaintiffs arguing that the phrase is "understandable without further definition"). But given the recent expert reports, the parties now dispute whether "edges of the tibia" should be narrowed to mean some subset of the tibia's entire outer perimeter. While the '921 patent does not expressly define the "edges of the tibia," the plain language of the claim and the specification make clear that this phrase encompasses the outer perimeter of the tibia, not some subset of the outer perimeter of the tibia.

The parties do not appear to dispute that a tibia "edge" is at least a surface of

---

[3] The parties could also submit supplemental briefing to address this claim construction dispute.

the tibia. Indeed, the '921 patent equates the tibia's "edge" with the tibia's "surface" by, for example, disclosing that the "screw path is pre-targeted to advantageously . . . *avoid the outer edge or surface of the tibia*." '921 patent at 9:36-41 (emphasis added). The parties also do not appear to dispute that claim 12 does not cover screws that exit the tibia. Plaintiffs even argued during claim construction that "angled . . . away from edges of the tibia" means "do[es] not invade" the edges of the tibia. Dkt. 189 at 28-29. A screw that exits an edge of the tibia necessarily invades the edge of the tibia.

Nothing in the claims or the '921 patent limits "edges of the tibia" to a particular part of the tibia's perimeter. And nothing in claim 12 or the '921 patent limits "edges of the tibia" to a particular part of the tibia's surface. Indeed, according to the '921 patent, "plate 10 is also preferably designed to have the screws for the proximal portion 14 angle into the tibia so that the screws are directed . . . away from the edges of the



Fig. 13

tibia." '921 patent at 6:18-23. Figure 13, annotated here to show the tibia's outer perimeter in red, shows how these screws are directed to avoid the tibia's edges. *See also id.* at 9:44-54. Figure 13 does not show any screw exiting (or otherwise invading) any portion of the tibia's outer perimeter or edge. *See* Ex. 8, Drewry Tr. 25:8-10.

Figure 13 also has a label for "outer edge 70." *See* '921 patent at 9:44-54. But nothing in the specification or Figure 13 supports an argument that this "outer

edge 70" somehow refers to only a portion of the tibia's outer edge (e.g., by using brackets or arrows). If anything, the language of claim 12 refers to the entire outer edge. Specifically, claim 12 does not use the term "outer" and recites plural "edges," making clear that the term "edges" in claim 12 refers to the overall "outer edge" portion. Even Plaintiff's expert, Dr. Gall, agreed that the claimed "edges" are not limited to "outer edge 70". Ex. 3, Gall Tr. 76:2-7 ("I'm not saying that 70 is the edge. I'm just saying that in that region those would be edges in that spot. You can have multiple edges in different spots . . . .").

Indeed, when Dr. Gall was asked during his deposition to identify the claimed "edges" on Figure 13, he explained that "[y]ou can have multiple edges in different spots." *Id.*; *see also id.* at 74:20-75:12. Dr. Gall illustrated at least some of the claimed "edges" with grey marks, shown in the red boxes of annotated Figure 13 below:



Ex. 4 (Ex. 7 from Dr. Gall's deposition) (red annotations added); *see also* Ex. 3, Gall Tr. 74:20-77:2. Dr. Gall explained that he was unable to identify "every single [edge]." Ex. 3, Gall Tr. 76:11-77:2. He was further asked whether the three "edges" identified on the caudal side (toward the bottom of the page in the image above) were the only edges on the caudal side, and he replied, "I'm not sure if it's all of them or if I would have to define all of them, but I'm saying those are examples of the edges." *Id.* at 77:11-16.

Dr. Gall's construction, which narrows "edges" to mean only some undefined portions or subset of the tibia's outer perimeter, would make the claim indefinite. Even he could not identify each portion of the tibia edge allegedly referred to in claim 12's recitation of "edges of the tibia." His construction interpreting "edges of the tibia" to refer to some outer edge portions but not others, makes the scope uncertain and the claim indefinite. *See Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) ("A claim is indefinite if its legal scope is not clear enough that a person of ordinary skill in the art could determine whether a particular composition infringes or not."). Instead, consistent with the plain language of the claim and the specification, the "edges of the tibia" should be construed as "the outer perimeter of the tibia." If not so construed, claim 12 would be indefinite.

**b.    The Elite plates do not infringe claim 12**

If the Court adopts Defendants' construction of "edges of the tibia," there is no genuine issue of material fact that the accused Elite plates do not infringe claim 12 because they have at least one screw hole path in the proximal portion that directs a

screw to exit the outer perimeter of the tibia.

Dr. Gall acknowledged that the two screws in the Elite plates' proximal portion exit the "opposite" cortex edge of the tibia, as shown in the image reproduced here. Ex. 6, Gall Reply Rpt. ¶ 63 (excerpted and annotated with yellow circle to show where the screws exit); Ex. 5, Gall Rpt. ¶ 229; Ex. 3, Gall Tr. 104:19-25. Because there is no dispute that two of the three proximal screws exit the tibia's edge, there is no genuine dispute of material fact that the Elite plates do not infringe claims 12-14 of the '921 patent.



### B. The Accused Products Do Not Infringe Claims 1-8, 19, or 20 of the '921 Patent Because They Do Not Have the Claimed "Mid-Plane"

Defendants do not infringe claims 1-8, 19, or 20 because, as correctly construed, the accused products do not have the claimed "mid-plane."[4] Defendants

---

[4] Claims 1, 19, and 20 use three planes to allegedly define the two claimed rotations. But the two "rotated" phrases define nothing, making these phrases indefinite. Dkt. 169 at 19-22; *see also Abdou v. Alphatec Spine, Inc.*, No. 12-CV-1804 BEN RBB, 2014 WL 6611422, at *9 (S.D. Cal. Nov. 19, 2014). Even if the "contour axis" is twice rotated (as Plaintiffs argue), the "rotated" phrases define no orientation of that axis. *See* Dkt. 352 at 2-11, FF1-39 (detailing PTAB decisions, Plaintiffs' arguments, specification citations, and illustrations demonstrating that the "rotated" phrases fail to define any "contour axis" location). Now, even Plaintiffs' experts cannot explain how these "rotated" phrases define an orientation. *See, e.g.*, Ex. 5, Gall Rpt. ¶ 174 (alleging one rotation defines

proposed that "mid-plane" should be construed as "[a] plane passing through something in such a way as to divide it into symmetrical halves." Dkt. 124 at 12.

Defendants' expert, Mr. Drewry, explained that "[n]one of the Accused Products include a proximal portion that can be divided into 'symmetrical halves' as required by Defendants' construction." Ex. 9, Drewry Decl. ¶¶ 83-85. Plaintiffs' expert, Dr. Gall, does not dispute that the accused products do not infringe under Defendants' construction of "mid-plane." *See* Ex. 3, Gall Tr. 62:12-63:21 (explaining, in response to a question about the claimed "mid-plane," that "I believe I mostly used the plaintiffs' proposed constructions in my analysis"). Thus, there is no genuine dispute that, should the Court agree with Defendants' construction of "mid-plane," the accused products do not infringe claims 1-8, 19, or 20 of the '921 patent.

## VI.   Conclusion

For these reasons, the Court should grant summary judgment that claim 1 of the '728 patent is invalid for lack of written description support; that claim 1 of the '728 patent is invalid for indefiniteness; that the accused products do not infringe claim 1 of the '728 patent; that the accused products do not infringe claims 12-14 of the '921 patent; and that the accused products do not infringe claims 1-8, 19, and 20 of the '921 patent.

---

that the proximal portion is "shifted to the left or right" (but not showing how the claims support this, when the claims allow for any rotation—even 360°, which is no shift at all) and alleging the other rotation defines that the proximal portion is "bent up" (but not showing how the claims support this, when the claims allow for any rotation in any direction—even down)); *see also* Ex. 10, Ledet Rpt. ¶¶ 107-121 (responding to prior art plate having same bends or shifts, but not showing how claim language distinguishes this prior art and, instead, making only conclusory statement that "heavy burden" of proving indefiniteness was not met).

Respectfully submitted,                    Date: July 29, 2022

By: */s/ Cindy A. Laquidara*

Cindy A. Laquidara                         Sonja W. Sahlsten
Florida Bar No.: 394246                    Florida Bar No. 119797
cindy.laquidara@akerman.com                sonja.sahlsten@finnegan.com
William C. Handle                          J. Michael Jakes (*admitted pro hac vice*)
Florida Bar No. 1002425                    D.C. Bar No. 415471
william.handle@akerman.com                 mike.jakes@finnegan.com
AKERMAN LLP                                Timothy J. May (*admitted pro hac vice*)
50 North Laura Street, Suite 3100          D.C. Bar No. 474276
Jacksonville, FL  32202                    timothy.may@finnegan.com
Telephone: (904) 798-3700                  Kathleen Daley (*admitted pro hac vice*)
Facsimile: (904) 798-3730                  D.C. Bar No. 431887
                                           kathleen.daley@finnegan.com
                                           FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, LLP
                                           901 New York Avenue, NW
                                           Washington, DC 20001
                                           (202) 408-4000

                                           Benjamin A. Saidman (*admitted pro hac vice*)
                                           Georgia Bar No. 117695
                                           benjamin.saidman@finnegan.com
                                           FINNEGAN, HENDERSON, FARABOW,
                                            GARRETT & DUNNER, LLP
                                           271 17th Street, NW, Suite 1400
                                           Atlanta, Georgia 30363
                                           (404) 653-6400

*Attorneys for Defendants, Veterinary Orthopedic Implants, Inc. and Fidelio Capital AB*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 29, 2022, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system, which

will send a notice of electronic filing to all CM/ECF participants.

*/s/ Cindy A. Laquidara*
Cindy A. Laquidara, Esq.