# UNITED STATED DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

DEPUY SYNTHES PRODUCTS, INC.
and DEPUY SYNTHES SALES, INC.,

    Plaintiffs,

    vs.

VETERINARY ORTHOPEDIC
IMPLANTS, INC., SYNTEC
SCIENTIFIC CORPORATION, and
FIDELIO CAPITAL AB,

    Defendants.

)
)
)
)
)
)
)
)
)
)

Case No. 3:18-cv-01342-HES-PDB

## PLAINTIFFS' RESPONSE IN OPPOSITION TO
## <u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>

Plaintiffs DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc. ("Plaintiffs") hereby oppose Defendants' Motion for Summary Judgment (the "Motion," or "Mot."). Doc. 376.[1] As detailed herein, each of Defendants' arguments is contradicted by the record evidence, creating at the very minimum genuine disputes of fact precluding summary judgment. Each of Defendants' arguments is also contrary to law.

## I.   Defendants are not entitled to summary judgment on any of their defenses relating to the '728 patent.

### A.   Defendants' written description arguments are incorrect and disputed.

Defendants seek summary judgment that the '728 patent does not provide written description for the limitation "angled no more than 90 degrees relative to the base plane." Written description is an issue of fact, and Defendants' burden to prove by clear and convincing evidence. *Invitrogen Corp. v. Clontech Lab'ys., Inc.*, 429 F.3d 1052, 1072-73 (Fed. Cir. 2005). To comply with the written description requirement, the specification "need not describe the claimed subject matter in exactly the same terms as used in the claims; it must simply indicate to persons skilled in the art that as of the [filing] date the applicant had invented what is now claimed." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002).

The inquiry on summary judgment is thus: have Defendants shown there is *no genuine dispute* that the specification does *not* indicate to persons skilled in the art that the inventors possessed a superior screw hole path "angled no more than 90 degrees

---

[1] Exhibits 1-10 refer to the exhibits Defendants' filed with the motion. Exhibits A-I refer to the exhibits to the concurrently filed Declaration of Andrew Krause.

relative to the base plane"? Defendants' motion falls far short of this standard. Defendants simply ignore the facts, including their own experts' testimony about the specification's disclosure, which at a minimum precludes summary judgment.

"Drawings constitute an adequate description if they describe what is claimed and convey to those of skill in the art that the patentee actually invented what is claimed." *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1322 (Fed. Cir. 2002). Figure 9 of the '728 patent (below, with annotations) depicts the distally-angled screw hole path of the superior screw hole in the plate's proximal portion.



FIG. 9

As confirmed by Plaintiffs' expert and by two of Defendants' own experts, a person of skill in the art would read the '728 patent, including Figure 9, to demonstrate the inventors' possession of a screw hole path angled no more than 90 degrees relative to the base plane. Figure 9 labels this angle with a 93 degree angle (**blue**) above the base plane. As the parties' experts agree, this angle may also be labeled as an 87 degree angle (**red**) relative to the base plane.

Defendants' expert, Dr. Vito, admitted that Figure 9 illustrates a screw hole path

of 87 degrees relative to the base plane:

> **Q.** [F]rom the base plane blue that you drew in your declaration, you're measuring 93 degrees between the axis of the center line and the –and the base plane 42, correct?
> **A.** Yes.
> **Q.** And my point is the same angle can be described using that red line as 87 degrees.
> **A.** Yes, that's correct. They're complementary angles so yes.
> **Q.** And a person of ordinary skill in the art knows that the red would be the complementary angle to the blue?
> **A.** Yes, that's correct.

Ex. A (Vito Tr.) at 219:24-220:11 (discussing Ex. B (Vito Ex. 17)) (annotated Figure

excerpted above). Defendants' expert Mr. Drewry testified similarly:

> **Q.** And if you go to figure 9 []the angle measurements that are depicted in Figure 9 are the angle measurements above the base plane, correct?
> **A.** That's correct.
> ...
> **Q.** I just want an answer to my question, yes or no, that a person of skill would understand that 93 degrees of the axis measured above the base plane is the same as 87 degrees measured below the base plane.
> **A.** Yes, that's correct.

Ex. 8 (Drewry Tr.) at 66:22-67:12. *See also* Ex. 7 (Ledet Tr.) at 223:24-224:1 (Plaintiffs'

expert confirming: "In Figure 9 it [the center line of the superior screw hole] is shown

as 93 degrees from the base plane, and the supplementary[2] angle is 87 degrees from

the same base plane."). This precisely comports with the claim language "angled no

more than 90 degrees relative to the base plane."

Defendants' argument that a path angled less than 90 degrees relative to the

base plane would angle a screw proximally, rather than distally, *see* Mot. at 9, is

unsupported and directly contrary to the specification. The patent consistently depicts

---

[2] In light of Dr. Vito's initial use of the term "complementary" angles, the parties have interchangeably used the term "complementary" and "supplementary" angles to refer to the geometric concept at issue. Ex. A (Vito Tr.) at 219:21-220:7. *See also* Mot. at 4, n.1.

and describes the superior screw hole as angled distally where the complementary angle is, as in Figure 9 above, no more than 90 degrees. A further example is illustrated below.



Ex. 1 ('728 patent) at Fig. 1B (annotated); *id.* at 2:40-46 ("the superior screw hole is designed such that the superior screw will be angled distally from the bone-contacting surface"); 6:43-46 ("angled away from the articular surface where the femur and tibia contact."); 10:4-19 ("the superior screw 30*a* is designed to have a targeted screw path that is angled downward slightly, distally").

The expert testimony and specification raise, at the very minimum, a genuine dispute of fact precluding summary judgment. *See, e.g., Vasudevan Software, Inc. v. MicroStrategy, Inc.*, 782 F.3d 671, 682-83 (Fed. Cir. 2015) (finding expert testimony regarding specification's "discussion, and therefore, possession" of the claimed feature where "portions of the specification do not speak *in haec verba*" "to at least raise a genuine issue of material fact on whether the specification shows" possession sufficient to preclude summary judgment). Defendants' argument that the specification does not

expressly use the words "no more than 90 degrees," and gives examples phrased differently, *see* Mot. at 9, not only ignores the above-cited evidence but also the legal standard. It is well settled that "it is not necessary that the limitations of a claim be set forth *in haec verba,* or, presumably, in the case where numbers, not words, are at issue, *in haec numera.*" *Indivior UK Ltd. v. Dr. Reddy's Lab'ys S.A.*, 18 F.4th 1323, 1328 (Fed. Cir. 2021) (citation omitted). For example, Defendants contend that "[c]laim 1 does not recite a complementary angle[.]" Mot. at 11. But, as discussed above, there is substantial evidence that the 93 degree angle expressly depicted in Figure 9 is understood by a person of skill as also showing a complement of 87 degrees. Accordingly, the written description requirement is satisfied, at the very minimum, under the doctrine of inherent disclosure. *Yeda Rsch. & Dev. Co. v. Abbott GMBH & Co. KG*, 837 F.3d 1341, 1345 (Fed. Cir. 2016) ("when a specification describes an invention that has certain undisclosed yet inherent properties, that specification serves as adequate written description to support a subsequent patent application that explicitly recites the invention's inherent properties."). Accordingly, summary judgment is inappropriate.

Defendants' unsupported assertion that there is "no genuine dispute of material fact that the '728 patent does not disclose a superior screw hole path angled less than 90°…even under Plaintiff's proposed construction" has no basis. As discussed above, substantial evidence establishes such disclosure, specifically including paths with angles less than 90 degrees measured using the complementary angles that both parties' experts agree are necessarily disclosed in connection with the patent's

description of a distally-angled superior screw path. Indeed, Defendants appear to concede that the '728 patent discloses superior screw hole paths angled parallel or distally relative to the base plane. *See* Mot. at 3 ("The '728 patent explains that the angle of the superior screw hole path measured from the base plane to the center line of the path as shown in Figure 9 is what permits the superior screw hole to be angled distally.").

Defendants attempt to minimize the multiple experts who contradict their summary judgment position by mis-citing *Rivera v. Int'l Trade Comm'n*, 857 F.3d 1315 (Fed. Cir. 2017) for the proposition that "it is not proper to allow expert testimony on what would have been obvious to an ordinary artisan." Mot. at 10. This legal standard is inapplicable here, where the evidence is not that the specification renders obvious the claimed subject matter, but rather that the specification discloses it. As *Rivera* itself makes clear, expert testimony is appropriate for this purpose. Indeed, *Rivera* specifically explains that a patentee may rely on "information that is 'well-known in the art' for purposes of meeting the written description requirement." *Rivera*, 857 F.3d at 1322 (citing cases).

Finally, Defendants also argue that Plaintiffs' construction of claim 1 would "would make claim 2 unsupported." Mot. at 12. However, claim 2 is not asserted. Because written description "must be determined claim by claim," *Capon v. Eshhar*, 418 F.3d 1349, 1360 (Fed. Cir. 2005), Defendants' suggestion that claim 2 does not satisfy the written description requirement is both incorrect and irrelevant. *See In re Borkowski*, 422 F.2d 904, 909 (C.C.P.A. 1970) ("A disclosure may, of course, be

insufficient to support one claim but sufficient to support another."). Defendants' citation to *Wright Med. Tech., Inc. v. Osteonics Corp.*, 122 F.3d 1440, 1445 (Fed. Cir. 1997) thus is inapt.

Further, to the extent that Defendants invoke claim 2 in a surreptitious attempt to argue against Plaintiffs' proposed claim construction, that is improper and should be stricken. The Court ordered a deadline for the parties to disclose the intrinsic evidence upon which they would rely for construing the claims of the '728 patent. Doc. 288. This deadline has long passed, and the *Markman* briefing and hearing have concluded. Defendants never identified claim 2 as allegedly supporting their proposed constructions of claim 1, and it was never addressed by the parties or their experts during claim construction. Docs. 286, 290, 302, 347, 349. Thus, any such argument is waived. *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1356 (Fed. Cir. 2007) ("The district court found that [Defendant] waived any argument with respect to this term by failing to raise it during the claim construction phase. We agree.").

## B. Defendants' indefiniteness arguments are incorrect and disputed.

A claim is indefinite only if, when "read in light of the specification" it "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments*, Inc., 572 U.S. 898, 901 (2014). Indefiniteness is ultimately a question of law, but based on underlying factual findings, and must be proven by clear and convincing evidence. *Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n,* 936 F.3d 1353, 1359 (Fed. Cir. 2019).

Defendants allege that "there are at least two possible ways to measure an angle relative to a base plane as claimed in claim 1," and that this renders claim 1 indefinite. Mot. at 13-14. Defendants rely on *Ball Metal Beverage Container Corp. v. Crown Packaging Tech., Inc.*, 838 F. App'x 538, 542 (Fed. Cir. 2020), which states that "a claim may be invalid as indefinite when (1) different known methods exist for calculating a claimed parameter, (2) nothing in the record suggests using one method in particular, and (3) application of the different methods result[s] in materially different outcomes for the claim's scope." However, Defendants wholly fail to demonstrate an absence of genuine issue regarding its burden to show that "nothing in the record suggests using one method in particular" to measure the claimed angle.

To the contrary, the record evidence, including opinions from Plaintiffs' expert, is that a person of skill would read the specification to specifically suggest "one method in particular"—use of the complementary angle measured below the base plane. For example, as further discussed above in Section I.A, the '728 patent explains that the superior screw hole is "angled distally or inwardly toward the center of the proximal portion of the plate," Ex. 1 ('728 patent) at 7:22-24, such that it is "angled away from the articular surface where the femur and tibia contact." *Id.* at 6:43-46. A person of skill in the art understands that the claim is referring to the measurement below the base plane, because otherwise the superior screw would be directed into the knee joint, the exact problem the claimed feature sought to avoid. *Id.* at 1:67-2:3 ("Improved designs for screw placement into the tibia are needed to avoid the screws from being

located . . . near the articular surface of the tibia and the femur."). *See* annotated Fig. 1b, above.

As Plaintiffs' expert, Dr. Ledet, testified:

> I think it's clear, again from the specification here – excuse me – where it clearly says that the superior screw is angled downward or distal, I'd have to find the exact language, but is angled distally. And where the claim then says that it's less than 90 degrees, it would be very clear to one skilled in the art that in order to have the combination of that superior screw being angled distally and to be less than 90 degrees, that it would be measured from the supplement of what's shown in Figure 9.

Ex. 7 (Ledet Tr.) at 225:8-18.

Plaintiffs submit that the above-described teachings from the specification render claim 1 definite as a matter of law. At the very minimum, this evidence and the related expert testimony raises a genuine factual dispute regarding whether "the record suggests using one method in particular," thus precluding summary judgment. *Ball Metal Beverage Container Corp.* 838 F. App'x at 542.

## C. Defendants' noninfringement argument is entirely based on an incorrect claim construction.

Defendants seek summary judgment of noninfringement of the '728 patent only "if the Court construes claim 1 to require measuring the claimed angle from the base plane to an imaginary center line extending upward through the screw hole." Mot at 15. As discussed in detail in Plaintiffs' *Markman* briefing, this construction is unsupported. If the Court adopts Plaintiffs' construction, or *any* construction that does not explicitly require measuring the angle only in this specific manner, then (as Defendants acknowledge) the motion fails as a matter of law.

## II. Defendants are not entitled to summary judgment of noninfringement on the '921 patent.

"Whether an accused device infringes requires a two-step analysis—the court first 'determines the scope and meaning of the patent claims asserted, and then the properly construed claims are compared to the allegedly infringing device.'" *CommScope Technologies LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1295 (Fed. Cir. 2021) (citations omitted). Here, Defendants argue that they do not infringe the '921 patent on three bases. The first two relate to claim 12. Mot. at 16. The third relates to claims 1, 19, and 20, which recite a "mid-plane." *Id.* at 23-24. As discussed below, each argument is both legally and factually incorrect.

### A. Defendants' claim 12 argument is contradicted by the facts, including its own experts.

With respect to claim 12, Defendants' argument is predicated on element 12[d], which recites:

> wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia.

'921 patent, cl. 12. Plaintiffs contend that this term should be given its plain and ordinary meaning. Defendants contend that the term should be construed to mean: "[a]ngled in the opposite direction from the articular surface of the joint between the tibia and femur, in the opposite direction from the surface of the cut portion of bone and in the opposite direction from the outer edge of the tibia and into the location in the tibia with the greatest or biggest mass of bone."

Defendants generally argue that the limitation is not satisfied under their proposed construction, Mot. at 17. The only specific argument Defendants make,

however, is based on the image below. Specifically, Defendants argue that the Elite

TPLO[3] plates do not infringe because they allegedly have "at least one screw hole path

in the proximal portion that directs a screw to exit the outer perimeter of the tibia."

Mot. at 22-23 (annotating alleged screw exit with yellow circle).



Defendants' motion fails at the outset because, even if true, there is substantial

evidence that this would not avoid infringement under any proposed construction.

Defendants' suggestion that the experts agree there is no infringement simply ignores

its own experts' prior testimony and VOI's admissions to the Patent Office. For

example, Defendant VOI filed petitions for *inter partes* review against the '921 patent

on July 12, 2019—about a month after receiving Plaintiffs' infringement contentions—

including IPR No. 2019-01332, which challenged claim 12. In support of that petition,

VOI filed expert declarations from its litigation experts, Dr. Peck and Mr. Drewry.

---

[3] Defendants do not articulate any factual basis for noninfringement, under any construction of element 12[d], for any Accused Products other than Elite TPLO. Though Dr. Gall did not apply Defendants' erroneous construction, Plaintiffs have not conceded noninfringement under Defendants' proposed construction. *See Kyocera Wireless Co. v. President Elecs.*, Ltd., 179 F. App'x 53, 54 (Fed. Cir. 2006) ("[E]xpert evidence is not always necessary to resolve questions of patent infringement.").

Both stated, unequivocally, that the bone plates depicted below satisfy element 12[d], including the portion requiring that the screws be directed "away from . . . edges of the tibia." Ex. C (Drewry) at ¶¶ 63-64; Ex. D (Peck) at ¶¶ 55-56 (same).



Defendants' experts' prior testimony is totally at odds with their summary judgment argument that a use case where the end of the screw ultimately penetrates means that the screw hole path is not "angled… away from edges of the tibia and into a central mass of the tibia." The plates depicted in these x-rays exhibit screw hole paths "in which the tips of the screws enter the bone plate from the medial side of the tibia where the plate is installed and enter the central mass of the tibia lateral of the point of entry." Ex. F (Gall Decl.) at ¶¶ 11-14. The x-rays also depict the use of bicortical screws that exit an outer perimeter of the tibia, *id.* at ¶¶ 15-16, just like those depicted in the x-ray that forms the supposed basis for noninfringement in the motion.

Defendants' experts also testified previously that "[a] person of ordinary skill would be motivated by the knowledge of these designs to ensure that a TPLO plate included screw holes with axes that directed the screws into a converging pattern away

from . . . the edges of the bone." Ex. C (Drewry) at ¶ 64; *see also id.* at ¶ 63, Ex. D (Peck) at ¶¶55-56. Neither Dr. Peck nor Mr. Drewry testified that the above-referenced designs—even when used with bicortical screws that exit the lateral perimeter of the tibia—required ***any*** modification to satisfy element 12[d], for example by having the screws avoid subsequently exiting the bone.

As Defendants' experts acknowledge, the claim language focuses on the path of the screws from the edge of the tibia towards the central mass. There is no negative limitation precluding subsequent exit by the end of the screw. Indeed, in his claim construction declaration, Dr. Peck cited the image below as depicting screw trajectories "[a]way from edges of the tibia and into a central mass of the tibia." Doc. 169-2 at ¶ 11. The trajectories were depicted with arrows, indicating that they theoretically extend infinitely, and thus screws of sufficient length would subsequently exit the bone.



Moreover, in each embodiment described in the '921 patent, the proximal portion screws penetrate the tibial perimeter adjacent to the plate surface and continue on a trajectory at the opposite wall of the bone. *See* Fig. 13 (annotated below). Dr. Peck did not consider the surfaces annotated in **green** and **purple** to be the relevant edges of

the tibia, given that the TPLO plates described in the patent do not direct the proximal portion screws "in the opposite direction" of those surfaces.



Fig. 13

Further, at his most recent deposition, Dr. Peck expressly testified that the image below does *not* show that the "screws are targeted in the direction of the edge of the tibia." Ex. H (Peck 7/11/22 Tr.) at 80:8-81:5 (discussing Peck Depo. Ex. 7, (Ex. I)).



Indeed, Plaintiffs' own products also can be used with screws that are designed to exit the perimeter, as shown below. Ex. E at 10. Yet there is additional record evidence that those products practice the claims, including element12[d]. *See, e.g.,* Doc.

378 (Plaintiffs' Motion for Summary Judgment).



Accordingly, there is substantial evidence that TPLO plates used with bicortical screws that exit the lateral wall of the tibia do not avoid infringement under any construction of element 12[d]. Accordingly, there is at the very minimum a genuine dispute of fact, and summary judgment should be denied.

### B. Even if perimeter penetration were relevant, the Elite TPLO plates can be used with monocortical screws.

There is also a second, independent defect in Defendants' arguments regarding element 12[d]. Defendants' argument is predicated on an image of a plate in use with bicortical screws. Claim 12 is not a method claim directed to this particular use case; it is an apparatus claim directed to the capability of a "bone plate." Dr. Peck admitted that the accused products, including the Elite TPLO plates, as manufactured and sold, can be used with screws that "don't need to be bicortical," "to achieve appropriate stability or rigidity of fixation," and as such, the surgeon can "simply adjust the length of [his or her] screws." Ex. H (Peck Tr.) at 76:2-13; Ex. 3 (Gall Tr.) at 80:16-20 (explaining that by design a bicortical screw penetrates to "the opposing cortex . . . directly on the opposite side of the screw entry hole. For a biocortical screw, you're

trying to get it to look into the opposing cortex if you're doing that."); *id.* at 80:21-81:8 ("[W]hen you put a bicortical screw in, it goes all the way across to the opposing wall, then that helps you biomechanically. So you would know that that's a region where it's okay to come out."). Thus, at a minimum, there is a genuine question of fact as to whether the Elite TPLO plates infringe even under Defendants' erroneous positions.

### C. Defendants' attempt to reinterpret the claim should be rejected.

Defendants attempt to distract from the extensive factual support that element 12[d] is satisfied, including its own experts' admissions, by arguing that they are now seeking construction of the phrase "edges of the tibia." This attempt to raise a new claim construction dispute has no merit. As discussed above, Defendants' own experts concede that this element focuses on the trajectory of the screws towards the central mass of the tibia, not where the end of the screw ultimately exits (or does not exit). As also discussed above, the Elite TPLO plates indisputably do not exit the tibia ***at all*** when used with monocortical screws. Thus, interpretation of the term "edges of the tibia" is not necessary to resolve any controversy. *Vivid Techs., Inc. v. Am. Science & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) (Court need construe "only those terms . . . that are in controversy, and only to the extent necessary to resolve the controversy.").

In any event, Defendants' new arguments regarding the meaning of "edges of the tibia" are not correct or credible. As explained above, Defendants' arguments contradict the plain meaning as applied by both parties' experts. Moreover, they are inconsistent with the patent and the parties' consistent usage throughout this litigation.

For example, Defendants' brief depicts a version of Figure 13 "annotated here to show the tibia's outer perimeter in red," and purporting to "not show any screw exiting (or otherwise invading) any portion of the tibia's outer perimeter or edge." Mot. at 20. But under the new construction Defendants now advance, the outer perimeter line would extend around the medial surface adjacent to the TPLO plate (annotated below in **green**). In every application of a TPLO plate, the bone screws penetrate this surface, but Defendants have never claimed in any context that this penetration is somehow outside the scope of the claims, nor do Defendants identify anything in this patent supporting this illogical proposition.



Additionally, VOI's experts have expressly contradicted at deposition the argument that the claimed "edges of the tibia" encompass the entire surface that Defendants' counsel highlighted in red.  For example, the patent identifies 70 in the figure above as the "the outer edge 70 of the tibia." Ex. 2 at 9:44-49.  Dr. Peck describes 70 as the proximal caudal "tibial fossa." Ex. H at 71:5-15.  He confirmed that there are not any VOI plates "in which the screw is -- screws are directed at the proximal cause -- caudal tibial fossa." *Id*. at 71:17-21. Likewise, Mr. Drewry testified that the

portions of the tibia where screws enter and potentially exit (in the case of bicortical screws) are known as the "medial and lateral sides of the tibia." Ex. 8 at 8:8-14; 9:8-19. He admitted that in the patent, the medial and lateral sides of the tibia are never defined as edges of the tibia:

> **Q**. First, is the medial and lateral sides ever identified as edges of the tibia?
> **A**. No, sir. They are not.

*Id*. at 9:17-19. Mr. Drewry's testimony is that the areas highlighted in green and purple are never defined as edges of the tibia in the patent. Yet Defendants now argue that screws may not exit from the purple area.



Mr. Drewry also admitted that in VOI's designs, the screws are never pointed in the direction of "the outer edge 70 of the tibia" which is the item in the specification Defendants' concede should be used to interpret the claim:

> **[Q.]** I'm asking, as "edge" is defined in Figure 3, is that location 70, are any of VOI's screws pointed toward, directed toward the 70 location in Figure 3?
> **A.** No. Not pointed to the 70 location.

Ex. 8 (Drewry Tr.) at 10:8-14.

Finally, in addition to being unnecessary and substantively meritless,

Defendants' new claim construction arguments were waived. The noninfringement argument to which Defendants contend the claim construction issue relates is entirely based on an x-ray image from a VOI document that was cited in Plaintiffs' infringement contentions for the Elite TPLO plates, served on June 14, 2019. Ex. G at 17; Ex. F (Gall Decl.) at ¶ 9. For the '921 patent, the scheduling order provided for a claim construction process that began when the parties exchanged lists of terms for construction on September 26, 2019, leading to the submission of a joint claim construction chart on December 16, 2019. Doc. 124. Briefing was completed on May 26, 2020 (Docs. 168, 169, 190, 191), and a *Markman* hearing was held on January 12, 2022. Docs. 347, 350. Had Defendants wished to construe "edges of the tibia" on the basis they advance in the motion, they had ample notice and opportunity to do so. They did not, and the issue thus was waived. *See Cent. Admixture Pharmacy Servs., Inc.*, 482 F.3d at 1356; *Prisua Eng'g Corp. v. Samsung Elecs. Co.*, No. 1:16-CV-21761, 2018 WL 11352591, at *6 (S.D. Fla. Feb. 15, 2018) ("Failure to timely raise a dispositive issue of claim construction constitutes waiver.").

### D.     Defendants' arguments for claims 1-8, 19, and 20 are incorrect and based on disputed facts.

Defendants contend that they do not infringe claims 1-8, 19, and 20 because the accused products allegedly lack the claimed "mid-plane" under Defendants' proposed construction. Mot. at 23-24. Defendants' proposed construction should be rejected for the reasons set forth in Plaintiffs' *Markman* briefing. If the Court adopts Plaintiffs' construction, or ***any*** construction that does not explicitly require a mid-plane that

renders the plate symmetrical, then the motion fails as a matter of law. The PTAB has

expressly held that VOI's proposed construction is non-sensical:

> [VOI]'s interpretation of this phrase as requiring that the claimed bone plate have a *symmetrical* proximal portion is flawed. Petitioner apparently interprets the phrase "the mid-plane bisecting the base plane" as requiring a "mid-plane" that also "bisects" the proximal portion of the plate into two symmetrical halves. Pet. 23–24. Yet there is no support cited in the '921 patent for that narrow reading. Indeed, the bone plate that is described and depicted as the preferred embodiment of the '921 patent has a plainly *asymmetrical* proximal portion.

Dkt. 168-9 at 27-28.

And VOI's expert Dr. Vito admitted that there is nothing in the specification

that requires the mid-plane to have symmetrical halves.

> **Q.** Is there any portion of the specification that describes the mid-plane bisecting the base plane into two symmetrical portions?
> …
> **A.** Bisecting is used when discussing the mid-plane and what it does. I don't recall seeing the word "symmetrical."

Ex. A at 82:7-20. As a result, Plaintiffs could still establish that VOI's designs meet the

limitation either literally or by equivalents, creating at least a genuine dispute of

material fact precluding summary judgment. "[E]xpert evidence is not always

necessary to resolve questions of patent infringement." *Kyocera Wireless Co.*, 179 F.

App'x at 54.

## III.   Conclusion

The Court should enter an order denying Defendants' motion for summary

judgment.

Dated this 19th day of August, 2022.

GRAYROBINSON, P.A.

By:    /s/ R. Troy Smith
R. Troy Smith
Florida Bar No. 485519
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
Phone: (904) 598-9929
Facsimile: (904) 598-9109
*troy.smith@gray-robinson.com*
*maria.daniels@gray-robinson.com*
*jessica.gonzalez@gray-robinson.com*

-and-

Jason G. Sheasby (admitted *pro hac vice*)
California Bar No.: 205455
Andrew E. Krause (admitted *pro hac vice*)
California Bar No.: 294850
Irell & Manella, LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067-4276
Phone:        (310) 203-7096
Facsimile: (310) 203-7199
*jsheasby@irell.com*
*akrause@irell.com*

***Attorneys for Plaintiffs DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc.***