## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | |
|---|---|
| DEPUY SYNTHES PRODUCTS, INC. and DEPUY SYNTHES SALES, INC., ) | Case No. 3:18-cv-01342-HES-PDB |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | |
| ) | |
| VETERINARY ORTHOPEDIC IMPLANTS, INC., SYNTEC SCIENTIFIC CORPORATION, and FIDELIO CAPITAL AB, ) | |
| ) | |
| Defendants. ) | |

## PLAINTIFFS' MEMORANDUM REGARDING
## PRETRIAL ISSUES AND OUTSTANDING EXHIBIT OBJECTIONS

# TABLE OF CONTENTS

**Page**

I.  Introduction ............................................................................. 1

II.  Pending Pretrial Issues................................................................ 1

III.  Plaintiffs' Objections to Defendants' Exhibit List ......................................... 1

    A.  Bucket 1. Unasserted Prior Art ......................................................... 2

    B.  Bucket 2. Expert Reports of non-testifying experts............................. 3

    C.  Bucket 3. Communications contained in company records that forward third party communications .................................................. 4

    D.  Bucket 4. Exhibits relating to the Compresiv and Versiv plates which VOI launched after the close of fact discovery and for which VOI has not provided complete discovery............................... 4

    E.  Bucket 5. Exhibits from expert reports that provide final conclusions on damages amounts rather than summaries of underlying data................................................................... 7

    F.  Bucket 6. Neutral summaries of underlying financial data. ................ 8

    G.  Bucket 7. Exhibits that disclose financial data on non-animal health aspects of Johnson & Johnson ................................................. 8

    H.  Bucket 8. Third party articles .......................................................... 10

    I.  Bucket 9. Third party hearsay claims................................................ 10

    J.  Bucket 10. Exhibits involving the design patent infringement action between VOI and Synthes; claim construction declarations; discovery correspondence; or materials from the PTAB proceedings VOI brought against the '921 patent ................... 11

    K.  Bucket 11. Figures annotated by experts.......................................... 13

IV.  Conclusion ............................................................................ 13

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bianco v. Globus Med., Inc.*,
    30 F. Supp. 3d 565 (E.D. Tex. 2014) ............................................................. 3, 8

*Coca-Cola Co. v. Pepsico, Inc.*,
    No. 1:02-CV-2887, 2005 WL 5974444 (N.D. Ga. Mar. 17, 2005) ....................... 3

*DNT, LLC v. Sprint Spectrum, LP*,
    No. CIV.A. 3:09CV21, 2010 WL 582164 (E.D. Va. Feb. 12, 2010) ................. 12

*Every Penny Counts, Inc. v. Am. Express Co.*,
    563 F.3d 1378 (Fed. Cir. 2009) ...................................................................... 12

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009) ...................................................................... 12

*Saadi v. Maroun*,
    8:07–cv–1976, 2009 WL 3028312 (M.D. Fla. Sep. 17, 2009) ........................... 3, 7

*Special Purpose Accts. Receivable Co-op. Corp. v. Prime One Cap. Co.*,
    No. 00-6410-CIV, 2003 WL 25666712 (S.D. Fla. May 19, 2003) ...................... 13

**Rules**

Fed. R. Evid. 402 .............................................................................................. 3

Fed. R. Evid. 403 .............................................................................................. 3

## I.     Introduction

Plaintiffs DePuy Synthes Products, Inc. and DePuy Synthes Sales, Inc. (together, "Synthes") hereby submit this memorandum regarding pending pretrial issues.

## II.    Pending Pretrial Issues

Synthes hereby identifies the following pretrial disputes that are pending before the Court:

- Plaintiffs' Motion Requesting (1) Jury Binders and (2) Claim Construction of the Term "Edges of the Tibia" (Dkt. 495, 497, 499).

- Plaintiffs' Motion for Leave to Supplement the Expert Report of Dr. Ken Gall Based on New Evidence Produced by Defendants on November 29, 2022 and December 15, 2022 (Dkt. 502) and Defendants' Motion to Strike Dr. Gall's Supplemental Expert Report (Dkt. 500).  VOI produced plates for its "design around" for the first time on November 29, and data allegedly evidencing first sales of this "design around" on December 15.  Dr. Gall has supplemented his report to engage this new information.

- Plaintiffs' Objections to Defendants' Exhibit List (addressed herein).

- The Parties' Disputed Jury Instructions (Dkt. 486, 490).

- Defendants' Motion to Exclude Plaintiffs' Agency Theory of Liability (Dkt. 498). Plaintiffs oppose this motion and will file a response prior to trial (the response is not yet due).

- Plaintiffs also anticipate filing, prior to trial, a motion for admission of certain deposition designations that Plaintiffs may play in their case-in-chief.

Other than the exhibit objections discussed herein, these issues have or will be separately briefed or argued and Plaintiffs do not repeat the arguments here.

## III.   Plaintiffs' Objections to Defendants' Exhibit List

Synthes respectfully submits the following outstanding objections to

Defendants' exhibit list. For the convenience of the Court, Synthes's objections have been organized into "buckets" with a representative exhibit for each bucket, and additional exhibits presenting the same issues as the representative document. Synthes submits that the Court's ruling regarding the representative exhibit will also apply to the additional exhibits in each bucket, avoiding the need to rule individually on each exhibit. The Parties are continuing to meet and confer in an effort to further narrow exhibit objections prior to trial, and will promptly update the Court should issues be resolved.

### A.    Bucket 1. Unasserted Prior Art

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX0028 (U.S. Patent No. 7,963,981 B2 by Binder et al.) | DX025; DX026; DX027; DX029; DX030 |

This bucket consists of U.S. Patents and publications that Defendants did not assert in obviousness combinations presented in expert reports and (in some cases) did not even identify as prior art in their invalidity contentions. For example, DX0026 is a U.S. Patent that was not cited in Defendants' operative invalidity contentions, or as part of an obviousness combination in its invalidity expert report. Dkt. 482 at 4.[1]

The Court already granted Plaintiffs' motion *in limine* "to preclude any unelected prior art and prior art combinations." Dkt. 463 at 2. That ruling excludes

---

[1] Pursuant to the Pretrial Order (Dkt. 470), working copies of all trial exhibits will be provided to the Court on the first day of trial. Should the Court wish to inspect exhibits addressed in this memorandum before trial, Plaintiffs can furnish copies of the exhibits upon the Court's request.

these exhibits. The Court's ruling was appropriate because unelected prior art is not available as a basis for invalidity, and would only confuse and mislead the jury by presenting references no expert addresses. Fed. R. Evid. 402, 403; *see also Coca-Cola Co. v. Pepsico, Inc.*, No. 1:02-CV-2887, 2005 WL 5974444, at *4 (N.D. Ga. Mar. 17, 2005) (excluding "Prior Art Not Cited in or Supported by Defendants' Prior Art Claim Charts").

**B.    Bucket 2. Expert Reports of non-testifying experts**

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX041 (Exhibit 12 to Troy D. Drewry's Rebuttal Expert Report, Inspection Report of Part - DT L CBLO 3.5B R) | DX032; DX033; DX034; DX035; DX036; DX037; DX038; DX039; DX040 |

This bucket consists of expert reports prepared by experts who will not testify at trial. For example, DX041 is an "Inspection Report" attached to the report of Defendants' expert Mr. Drewry, that identifies the "Report Author" as "Eddie Jimenez." Dkt. 482 at 5. Mr. Jimenez is not on either party's witness list and will not testify at trial. Dkt. 457.

Expert reports are hearsay and are not admissible at trial. *See, e.g., Saadi v. Maroun*, 8:07–cv–1976, 2009 WL 3028312, at *1 (M.D. Fla. Sep. 17, 2009) ("Defendants ask the Court to exclude the expert reports of both Dr. Plante and Mr. Nissenbaum. The Court grants this request. If the experts do not testify, the reports must be excluded as hearsay."); *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) ("expert reports, such as those prepared by Dr. Cheng and Dr.

McMillan prior to trial, are hearsay and, absent agreement to their admission, are inadmissible"). The basis for exclusion is even stronger where the expert will not testify because, in addition to being hearsay, Synthes cannot cross examine the authoring expert regarding the content of the report. Allowing Defendants to introduce these documents would be unduly prejudicial and would only confuse the jury by introducing material from an expert who is not testifying.

### C.    Bucket 3. Communications contained in company records that forward third party communications

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX048 (2012-11-20 Email to Maria Cunningham from Timothy Horan FW: suture anchors) | DX143; DX144; DX145; DX146; DX147; DX148; DX149; DX150; DX151; DX152; DX153; DX154; DX155; DX156; DX157; DX158; DX159; DX160; DX161; DX162; DX164; DX267; DX268; DX269; DX270; DX271; DX272 |

This bucket consists of documents in company records that forward communications from third parties. For example, DX048 is an email between individuals at Synthes that forwards a communication received from a third party physician regarding TPLO and CBLO procedures. VOI has objected to these same type of dcuments that are on Synthes' exhibit list.  A single rule needs to apply.

### D.   Bucket 4. Exhibits relating to the Compresiv and Versiv plates which VOI launched after the close of fact discovery and for which VOI has not provided complete discovery.

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX054 (Veterinary Orthopedic Implants Compresive and Versive TPLO Plates Product Marketing Design) | DX055; DX339; DX340; DX341; DX342; DX376; DX377; DX378; DX379; DX388 |

VOI intends to tell the jury that what it describes as its "Versiv" and "Compresiv" plates are non-infringing alternatives to the Synthes patents. The exhibits in this bucket relate to the alleged "Versiv" and "Compresiv" plates, and should be excluded because they were produced after the close of fact discovery, because VOI did not produce complete information on them, and because VOI failed to timely disclose the Versiv and Compresiv plates as alleged non-infringing alternatives during discovery. The bucket also includes alleged physical samples of the Versiv and Compresiv plates that VOI failed to produce until November 29, 2022.

Fact discovery in this case closed on September 30, 2020. Dkt. 196. Defendants did not produce any evidence regarding the Versiv or Compresiv designs during fact discovery, and they were not identified in response to Plaintiffs' interrogatory seeking the identification of "any product that You contend would have been an acceptable substitute for each of the Accused Products . . .to customers who purchased each such product" during the discovery period. Dkt. 413-2 at 6-7.

Defendants claim that the possibility of Versiv and Compresiv plates was first disclosed to Synthes on December 22, 2021. While this date is itself after the close of

fact discovery, the alleged disclosure that Defendants point to was not a discovery disclosure at all, but rather a settlement letter identifying the plates only as proposed products. The letter did not identify the plates as alleged non-infringing alternatives in this case, or state that they were actually available on the market. And, because it was a potential settlement communication, it could not be properly shared with experts.

The first actual discovery disclosure regarding the Versiv and Compresiv TPLO plates was not until February 25, 2022, when Defendants produced "CAD" files that it claimed reflected Versiv and Compresiv designs. Defendants did not, however, identify these plates as alleged non-infringing alternatives in this litigation or contend that they were available on the market. And because discovery had already closed, Synthes was unable to take fact discovery on whether VOI ever had the ability, capacity, and intent to manufacture these plates, or whether they were prepared solely as hypothetical litigation "props." Defendants also claim to have served a supplemental interrogatory response on Synthes identifying the Versiv and Compresiv plates as alleged non-infringing alternatives on March 1, 2022 (after the close of fact discovery). However, Defendants' March 1 response did not state the Versiv and Compresiv plates were alleged non-infringing alternatives in this case, it merely described them as "redesigned." It further stated the Versiv and Compresiv plates "are being tested," suggesting that what Defendants had produced was not final design information and that the plates were not on the market. *See* Dkt. 496-2.

On November 29, 2022, long after the close of fact and expert discovery, Defendants produced physical samples of the alleged Versiv and Compresiv TPLO

plates. Defendants provided no explanation for why it did not offer to produce these plates when they produced the design drawings, or after Synthes noted in reply expert reports that the designs were not real plates. This delay suggests that Synthes was correct that that the designs previously disclosed were not final. Two weeks later, on December 15, 2022, Defendants produced alleged sales data for the Versiv and Compresiv plates. This was the first time that Defendants had produced materials indicating that the Versiv and Compresiv plates were allegedly sold, as opposed to merely hypothetical products.

**E.    Bucket 5. Exhibits from expert reports that provide final conclusions on damages amounts rather than summaries of underlying data.**

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX056 (Exhibit 1.0 to the Rebuttal Expert Report of Michele M. Riley, Summary of Damages by Scenario) | DX057; DX058; DX059; DX060; DX061; DX062; DX063; DX064; DX065; DX066; DX067; DX068; DX069; DX070; DX071; DX072; DX073; DX074; DX075; DX076; DX078; DX079; DX080; DX081; DX086; DX087; DX088; DX089; DX090; DX096; DX097 |

This bucket consists of exhibits to damages expert reports that contain the expert's calculation of damages. For example, DX056 is a "Summary of Damages by Scenario" attached to the report of Defendants' expert Michele Riley, which tallies her calculations of damages for various time periods. Dkt. 482 at 6. Defendants' expert can testify to her damages calculations at trial, to the extent they are in non-stricken portions of her expert report. But the exhibits to her expert report are hearsay and are not properly admitted at trial. *See, e.g.*, *Saadi v. Maroun*, 8:07–cv–1976, 2009 WL

3028312, at *1 (M.D. Fla. Sep. 17, 2009) ("Defendants ask the Court to exclude the expert reports of both Dr. Plante and Mr. Nissenbaum. The Court grants this request. If the experts do not testify, the reports must be excluded as hearsay. If the experts do testify, then the Court finds that their reports would be duplicative, unnecessary, and given undue weight."); *Bianco v. Globus Med., Inc.*, 30 F. Supp. 3d 565, 570 (E.D. Tex. 2014) ("expert reports, such as those prepared by Dr. Cheng and Dr. McMillan prior to trial, are hearsay and, absent agreement to their admission, are inadmissible"). Further, these are not admissible as summaries because they do not merely reflect underlying data from source documents, but rather the expert's own calculations.

### F.      Bucket 6. Neutral summaries of underlying financial data.

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX077 (Exhibit 5.2 to the Rebuttal Expert Report of Michele M. Riley, VOI Accused Unit Sales to Sister Companies Per Profit & Loss Statements) | DX082; DX083; DX084; DX091; DX093 |

This bucket consists of summaries prepared by expert witnesses of underlying financial data. For example, DX077 is a summary of certain accused VOI unit sales taken from profit and loss statements produced in discovery. Dkt. 482 at 8. Synthes has proposed to Defendants that the Parties stipulate to admissibility of certain summaries of financial information and have agreed Defendants may use certain summaries, however, as of the filing of this memorandum Defendants have not responded regarding Plaintiffs' proposed summaries. A single rule needs to apply to both sides.

G.   Bucket 7. Exhibits that disclose financial data on non-animal health aspects of Johnson & Johnson

| <u>Representative Exhibit</u> | <u>Additional Exhibits in Bucket</u> |
|---|---|
| DX085 (Exhibit D5 to the Rebuttal Expert Report of Michele M. Riley, DePuy Company-wide P&L) | DX101; DX106; DX107; DX109; DX118; DX119; DX166 |

This bucket consists of exhibits that disclose financial data from Johnson & Johnson (the parent of Synthes) unrelated to animal health. For example, DX085 is a summary prepared by Defendants' damages expert that lists DePuy's "Company-Wide P&L," including non-animal products. Dkt. 482 at 9.

This Court granted Synthes's motion *in limine* "to exclude information regarding the size and wealth of, and other proceedings involving, J&J and its other divisions." Dkt. 463 at 1. Therefore, these exhibits have already been excluded. To the extent Defendants argue otherwise, exclusion is appropriate for the same reasons discussed in Synthes's motion *in limine*. Dkt. 414 at 1-3. As explained there, financial information on non-animal products or divisions is irrelevant because VOI's own damages expert, Ms. Riley, agrees that the appropriate entities for purposes of damages are the DePuy Synthes Plaintiffs, and she does not contend that any other divisions of J&J or their revenues have any relevance to damages. Ms. Riley agrees that J&J would not have been involved in the hypothetical negotiation for purposes of determining a reasonable royalty. And when she analyzes profitability, she agrees that the relevant profits are those of the Synthes Plaintiffs, not their corporate parent. *Id.* Introducing unrelated financial information would only serve to prejudice the jury by

referencing Johnson & Johnson's size or wealth, or alluding to other Johnson & Johnson products that may be controversial.

### H.   Bucket 8. Third party articles

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX099 (Daneshvary, Nasser, et al., "The Nature of Demand for Companion Pet Health Care," Journal of Applied Business Research, Volume 9, Number 4, 1993) | DX102; DX103; DX104; DX105; DX111; DX113; DX116; DX120; DX121; DX125; DX129; DX131; DX135; DX136; DX137; DX138; DX139; DX170; DX171; DX173; DX174; DX274; DX275; DX276; DX277; DX278 |

This bucket consists of third party articles. For example, DX099 is an article titled "The Nature of Demand For Companion Pet Health Care" published by the Journal of Applied Business Research. Dkt. 482 at 10. It is cited by the Parties' damages experts as part of their discussion regarding the relationship between price and demand for the accused products.  VOI is objecting to the admission of articles of the same class on Synthes' exhibit list.  A single rule needs to apply.

### I.   Bucket 9. Third party hearsay claims

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX181 (NGD Locking UCP Plate for TPLO. U.S. Patent No. D536,453S, U.S. 7,695,472 B2 U.S. 7,772,653 B2, EU 1468655. Available: www.ngdvet.com) | DX251; DX286 |

This bucket consists of third party documents that contain unsubstantiated hearsay claims regarding their products. For example, DX181 is a marketing brochure from a third party called NGD that claims (among other things) "The NGD UCP

Plate, in clinical use since early 2004, was the FIRST to offer the Locking Technology option for the TPLO procedure." Dkt. 482 at 19.

Statements from third party documents – especially marketing puffery – are inadmissible hearsay and lack foundation and authentication. No hearsay exception applies to such documents, for example, Defendants have not established they are business records or obtained records declarations. Synthes has no way to challenge or cross examine the veracity of these out-of-court statements, and there is no basis to put unverified hearsay before the jury.

**J.** **Bucket 10. Exhibits involving the design patent infringement action between VOI and Synthes; claim construction declarations; discovery correspondence; or materials from the PTAB proceedings VOI brought against the '921 patent**

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX279 (C.A. No. 3:19-cv-00801-HES-JRK Complaint for Design Patent Infringement, July 3, 2019) | DX280; DX281; DX290; DX310; DX311; DX337; DX338 |

This bucket consists of (1) exhibits that reference the design patent infringement action between the Parties, (2) claim construction declarations submitted during the *Markman* process, (3) discovery correspondence between the parties, and (4) materials from PTAB proceedings filed by VOI against the asserted patents. For example, DX279 is the complaint from the design patent infringement action. Dkt. 482 at 26.

Each of these categories has either already been excluded or is inadmissible.

First, the Parties have stipulated that "The existence and judgment of the design patent lawsuit between Synthes and VOI" "will not be raised in front of the jury

without first approaching the bench and securing a ruling on admissibility." Dkt. 457 (Amended Joint Pretrial Stipulation) at 35.

Second, the Court granted Plaintiffs' motion *in limine* "to preclude arguments inconsistent with the Court's *Markman* order." Dkt. 463 at 2. This motion expressly included the argument that "Defendants and their expert Mr. Drewry should be precluded from offering any arguments, opinions or evidence at trial regarding any claim constructions proposed during the Markman process that were not adopted by the Court, were rejected by the Court, and/or are inconsistent with the Court's constructions." Dkt. 414 at 10-11; *see also Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) ("Once a district court has construed the relevant claim terms, and unless altered by the district court, then that legal determination governs for purposes of trial. No party may contradict the court's construction to a jury."); *Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009) ("[T]he court's obligation is to ensure that questions of the scope of the patent claims are not left to the jury."); *DNT, LLC v. Sprint Spectrum, LP*, No. CIV.A. 3:09CV21, 2010 WL 582164, at *3 (E.D. Va. Feb. 12, 2010) ("The parties' proposed claim constructions which were not adopted by the Court are not relevant and would certainly increase the risk of jury confusion."). Claim construction materials are inadmissible for all the reasons discussed in the motion *in limine* – namely, that they would introduce opinions proposed during the *Markman* process that were not adopted by the Court, were rejected by the Court, and/or are inconsistent with the Court's constructions. The jury will be instructed on the Court's issued constructions.

Third, discovery correspondence between the Parties is irrelevant, inadmissible, and unduly prejudicial. Rehashing discovery disputes between lawyers is not relevant to the jury's task, and will only invite a prejudicial sideshow about discovery procedures. *See Special Purpose Accts. Receivable Co-op. Corp. v. Prime One Cap. Co.*, No. 00-6410-CIV, 2003 WL 25666712, at *2 (S.D. Fla. May 19, 2003) ("the prejudicial effect of explaining the answer, and the inevitable recitation of other discovery disputes, leads the Court to exclude such cross-examination").

Fourth, the Court granted Defendants' motion *in limine* to exclude PTAB proceedings. Dkt. 469 at 1 ("Defendant's First Motion in Limine to exclude evidence and argument about inter partes review proceedings and noninstitutional decisions is GRANTED without prejudice to allow Plaintiffs to introduce evidence if Defendant raises the issue first during trial."). These materials have therefore been excluded unless Defendants open the door.

### K.   Bucket 11. Figures annotated by experts

| Representative Exhibit | Additional Exhibits in Bucket |
|---|---|
| DX320 (Exhibit 7 of Kenneth Gall, Ph.D.'s Transcript, Annotated Figure 13) | DX282; DX321 |

This bucket consists of figures that have been annotated by experts. For example, DX320 is a copy of Figure 13 from the '921 Patent that was annotated during Dr. Gall's deposition. Dkt. 482 at 30. VOI has objected to the same class of exhibits on Synthes' exhibit list.  A single rule needs to apply.

## IV.    Conclusion

For the foregoing reasons, Synthes respectfully requests that the Court sustain

its objections to Defendants' exhibits and resolve the other pending pretrial matters

noted herein.

Dated this 29th day of December, 2022.

GRAYROBINSON, P.A.

By: *Troy Smith*
R. Troy Smith
Florida Bar No. 485519
50 N. Laura Street, Suite 1100
Jacksonville, FL 32202
Phone: (904) 598-9929
Facsimile: (904) 598-9109
*troy.smith@gray-robinson.com*
*maria.daniels@gray-robinson.com*

-and-

Jason G. Sheasby (admitted *pro hac vice*)
California Bar No.: 205455
Lisa S. Glasser (admitted *pro hac vice*)
California Bar No.: 223406
Andrew E. Krause (admitted *pro hac vice*)
California Bar No.: 294850
Stephen Payne (admitted *pro hac vice*)
California Bar No.: 310567
Irell & Manella, LLP
1800 Avenue of the Stars, Ste. 900
Los Angeles, CA 90067-4276
Phone:        (310) 203-7096
Facsimile: (310) 203-7199
*jsheasby@irell.com*
*akrause@irell.com*
*lglasser@irell.com*
*spayne@irell.com*
**Attorneys for Plaintiffs DePuy Synthes
Products, Inc. and DePuy Synthes Sales, Inc.**

#49155449 v1

- 14 -