## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

DEPUY SYNTHES PRODUCTS, INC. and
DEPUY SYNTHES SALES, INC.,

    Plaintiffs,

  v.

VETERINARY ORTHOPEDIC IMPLANTS,
INC., SYNTEC SCIENTIFIC
CORPORATION, and FIDELIO
CAPITAL AB,

    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:18-CV-01342-HES-
PDB

## DEFENDANTS' TRIAL BRIEF

Pursuant to the Court's Pretrial Order (Dkt. 470), Defendants Veterinary

Orthopedic Implants, Inc. ("VOI") and Fidelio Capital AB ("Fidelio") (together,

"Defendants") submit this trial brief.

First, this brief provides a summary of the remaining legal issues for the Court,

including (1) Defendants' opposed motion to strike Dr. Gall's untimely supplemental

expert report; (2) Plaintiffs' belated motion for leave to supplement the expert report

of Dr. Gall; (3) Defendants' motion to exclude Plaintiffs' new agency theory of

liability; (4) Plaintiffs' and Defendants' briefing on claim construction of the term

"edges of the tibia"; (5) Plaintiffs' opposed-in-part motion requesting jury binders;

(6) whether Plaintiffs' doctrine of equivalents theory of infringement for claims 1 and

20 of U.S. Patent No. 8,523,921 ("the '921 patent") should be precluded by

prosecution history estoppel; and (7) Defendants' position in its memorandum

identifying unresolved objections to deposition testimony (submitted to the Court concurrently with this brief) that the deposition testimony of Matthew Haas and Dr. Raymond Vito should be excluded in their entirety.

Second, this brief provides an explanation of several disputed jury instructions and an explanation with authorities for why the Court should adopt Defendants' proposed instructions.

Fidelio also reiterates its objection to the exercise of personal jurisdiction over Fidelio, and notes that its further participation in this action remains subject to Fidelio's defense that the Court does not have personal jurisdiction over Fidelio.

## I.     Remaining Legal Issues for the Court

Defendants respectfully request that the Court resolve the following disputed legal issues before trial begins.

### A.     Defendants' Opposed Motion to Strike Dr. Gall's Untimely Supplemental Expert Report

As set forth in Defendants' December 22, 2022, motion—Dkt. 500, incorporated herein by reference—Defendants respectfully ask this Court to strike the Supplemental Expert Report of Ken Gall, Ph.D., and all opinion and evidence related to Plaintiffs' late-disclosed damages theory that VOI's Compresiv and Versiv TPLO plates are not noninfringing alternatives because they allegedly infringe.

In a textbook example of trial by ambush, Plaintiffs disclosed their theory that VOI's Compresiv and Versiv plates are not noninfringing alternatives to the plates accused of infringement for the first time on December 17, 2022, in Dr. Gall's

supplemental expert report ("Supplemental Report"). Dkt. 500-1, Ex. A ¶¶ 9, 21 (Supplemental Report). Plaintiffs served this Supplemental Report *less than three weeks* before the start of trial. Plaintiffs' conduct—first withholding and then untimely disclosing a new expert witness opinion—is the very type of gamesmanship that the discovery obligations imposed by the Federal Rules are meant to prevent. Plaintiffs' late disclosure is particularly egregious given the ample opportunity for timely disclosure. The only available cure for the prejudice to Defendants this close to trial is to strike the new expert opinion and any testimony offered that these noninfringing VOI Compresiv and Versiv products infringe.

### B. Plaintiffs' Belated Motion for Leave to Supplement the Expert Report of Dr. Gall

Apparently recognizing their procedural error discussed in Section I.A above, Plaintiffs belatedly filed a motion for leave to supplement the expert report of Dr. Gall. Dkt. 502. This motion, however, does not raise any potential rationale for the belated supplement that was not already addressed in Defendants' prior motion or resolved by the Court's Order (Dkt. 465) denying Plaintiffs' related motion to exclude certain expert testimony (Dkt. 415). The evidence regarding the Compresiv and Versiv plates was available to Plaintiffs prior to opening expert reports, yet Plaintiffs inexplicably waited until the eve of trial to raise their argument that the Compresiv and Versiv plates allegedly infringe.

### C. Defendants' Motion to Exclude Plaintiffs' New Agency Theory of Liability

As set forth in Defendants' December 22, 2022, motion—Dkt. 498, incorporated herein by reference—Defendants respectfully ask this Court to exclude Plaintiffs' new agency theory of liability from trial. Plaintiffs seek, on the eve of trial, to inject a new theory of liability based on principles of agency—and without disclosing exactly what the theory is or the basis for the theory. Plaintiffs did not disclose an agency theory of liability in their operative Third Amended Complaint. Dkt. 280. Nor did Plaintiffs include it in the parties' Pretrial Stipulation. Dkt. 457. Nor did Plaintiffs include it in any expert reports or infringement contentions. Plaintiffs did not even raise an agency theory of liability in their briefing on personal jurisdiction. Dkt. 338. Instead, Plaintiffs try to slip a new agency theory into this case for the very first time via their recently proposed *jury instructions*. Dkt. 490 at 12; *see also Wilder v. R.J. Reynolds Tobacco Co.*, No. 3:09-cv-10109, 2013 WL 12157861, at *4 (M.D. Fla. Jan. 17, 2013) (precluding plaintiff's "11th-hour inclusion" of a new claim that was not included in plaintiff's pretrial statement and raised for the first time in proposed jury instructions). And those jury instructions merely purport to describe an alleged legal standard for agency in the Second Circuit—they do not provide Plaintiffs' allegations as to how or why VOI is an agent of Fidelio, let alone any factual basis that could support such allegations. Short of exclusion, there is no cure for the surprise of Plaintiffs' untimely disclosure of this entirely new theory of liability and the prejudice it causes Defendants.

**D.    The Court Should Construe "Edges of the Tibia" as "the Outer Perimeter of the Tibia"**

The Court should construe "edges of the tibia" as recited in claim 12 of the '921 patent as the outer perimeter of the tibia as set forth in Defendants' Response to Plaintiffs' Motion Requesting Claim Construction (Dkt. 499), Defendants' Motion for Summary Judgment (Dkt. 376), Defendants' Reply in Support of Motion for Summary Judgment (Dkt. 384), and VOI's Proposed Findings of Fact and Conclusions of Law for Motion for Summary Judgment (Dkt. 449), which are incorporated herein by reference. Claim 12 of the '921 patent recites in part: "wherein screw hole paths for the at least three screw holes are predetermined and angled so as to direct screws away from an articular surface between a tibia and a femur, away from an osteotomy surface of the tibia, and away from edges of the tibia and into a central mass of the tibia." Prior briefing on this issue has made clear there is a dispute as to the scope and meaning of "edges of the tibia" as recited in claim 12 of the '921 patent. *See* Dkts. 376, 380, 384.

Defendants contend that "edges of the tibia" is the outer perimeter of the tibia, which is its plain and ordinary meaning. If that meaning applies, Defendants' accused plates do not infringe this claim. Although Plaintiffs purport to seek to have "edges of the tibia" given its plain and ordinary meaning, Plaintiffs studiously avoid saying what that plain and ordinary meaning actually is. The reason is transparent. To preserve their infringement argument, Plaintiffs need "edges of the tibia" to cover only some—yet undefined—subset of the outer perimeter. But Plaintiffs cannot

expressly make that argument because, if they did, it would render the claim indefinite, as one reading the claim would have no idea what subset of the outer perimeter is captured by "edges of the tibia," and thus would have no idea what is covered by the claim. Taken together, these points merely reinforce that Defendants' construction is the correct one and should be adopted. And because "the parties raise an actual dispute regarding the proper scope of these claims, the court, not the jury"—prior to trial—"must resolve that dispute." *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).

### E.   Plaintiffs' Motion Requesting Jury Binders

As set forth in Defendants' December 22, 2022, response—Dkt. 499, incorporated herein by reference—Defendants do not oppose the use of jury binders. *Id.* at 1. Defendants only oppose furnishing the jury with a chart of the Court's claim constructions that goes beyond the four terms expressly construed by the Court. *Id.* at 1-2.

### F.   Prosecution History Estoppel Precludes Plaintiffs' Doctrine of Equivalents Theory of Infringement for Claims 1 and 20 of the '921 Patent

Plaintiffs contend that certain of VOI's accused products infringe claims 1 and 20 of the '921 patent under the doctrine of equivalents. *See* Dkt. 490 at 10; Dkt. 457 at 31 ¶ 2. The doctrine of equivalents, however, is limited by prosecution history estoppel. Specifically, prosecution history estoppel is a limitation on a patentee's ability to allege infringement that prohibits a patentee from using the doctrine of equivalents to reclaim subject matter that it surrendered or disclaimed during

prosecution to obtain the patent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 734 (2002); *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313, 1322 (Fed. Cir. 1999). Whether prosecution history estoppel applies is a question of law for the Court to decide, not the jury. *Amgen Inc. v. Coherus BioScis. Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1368 (Fed. Cir. 2003) (en banc) ("Questions relating to the application and scope of prosecution history estoppel thus fall within the exclusive province of the court. Accordingly, the determinations concerning whether the presumption of surrender has arisen and whether it has been rebutted are questions of law for the court, not a jury, to decide."). Here, it applies, and it precludes Plaintiffs' argument that VOI's Swiss Group 2-3, Swiss Group 5-8, and CBLO plates infringe claims 1 and 20 of the '921 patent under the doctrine of equivalents.

Claim 1 of the '921 patent recites "the bone-contacting surface of the proximal portion being pre-configured and dimensioned to conform to a tibial bone segment and having a contour formed as an arc of a cylinder." Claim 20 recites a similar limitation. During prosecution before the Patent Office, the applicants for the '921 patent specifically disavowed the scope of the claimed cylinder that Plaintiffs now argue is covered by the doctrine of equivalents:

> During prosecution of the '921 patent, the Examiner found that "Weaver et al. teach the bone-contacting surface being pre-contoured . . . and being partially defined by a cylinder (see e.g. figure 23)." DSTPLO00001454. . . .
>
> The applicants sought to overcome this rejection by arguing that tapering and/or twisting in Weaver's bone

> contacting surfaces precludes Weaver from suggesting the
> claimed arc of a cylinder. . . .
>
> The applicants . . . made clear that "**a cylinder**, even a
> partial one, **by definition does not involve any tapering
> or twisting**." DSTPLO00001475 (emphasis added). Thus,
> according to the applicants, "the tapered, twisted curvature
> of bone contacting surface of [the proximal portion] should
> not be regarded as 'being partially defined by a cylinder.'"
> DSTPLO00001475.

Dkt. 413, Ex. 7 ¶¶ 79-80 (alteration in original). Because these arguments were made

to obtain the '921 patent, Synthes cannot argue infringement under the doctrine of

equivalents for this limitation. Therefore, in view of the arguments made during

prosecution in order to obtain the '921 patent that limit the claimed cylinder to a

specific "definition," the contour of the bone-contacting surface of VOI's Swiss

Group 2-3, Swiss Group 5-8, and CBLO plates cannot meet this limitation under the

doctrine of equivalents.

### G.    The Deposition Testimony of Matthew Haas and Dr. Raymond Vito Should Be Excluded in Their Entirety

Concurrently with the filing of this Trial Brief, Defendants are submitting to

the Court a memorandum identifying unresolved objections to deposition testimony.

This memorandum raises two issues with respect to Plaintiffs' deposition

designations that affect whether any testimony of two witnesses can be shown to the

jury.

First, Plaintiffs intend to call Matthew Haas by deposition at trial and have

served a script identifying the deposition testimony they intend to play. *See* Dkt. 483

at 2 (identifying Mr. Haas as a witness Plaintiffs "intend to call . . . by deposition in

their case-in-chief"). The Court should exclude all deposition testimony by Mr. Haas under Federal Rules of Evidence 403 and 404 because it is improper use of character evidence and its limited probative value is substantially outweighed by the danger of unfair prejudice and needlessly presenting cumulative evidence.

Second, Plaintiffs intend to call Defendants' technical expert, Dr. Raymond Vito, by deposition at trial. Dr. Vito served expert reports in support of Defendants' *claim construction* briefing and has not otherwise participated in this litigation. Dr. Vito did not submit an expert report during expert discovery or otherwise submit an expert report in support of noninfringement or invalidity. The Court should exclude all deposition testimony by Dr. Vito under Federal Rule of Civil Procedure 32 and Federal Rules of Evidence 402, 403, and 802, and because Plaintiffs previously indicated to Defendants and the Court that they no longer intended to call Dr. Vito by deposition (*see* Dkt. 483 (not including Dr. Vito)).

## II.    Defendants' Select Objections to Plaintiffs' Proposed Jury Instructions

Defendants' Proposed Jury Instructions consistently track the Federal Circuit Bar Association ("FCBA") Model Patent Jury Instructions for patent-specific issues and the Eleventh Circuit Pattern Jury Instructions and Florida Standard Jury Instructions for issues that are not unique to patent law. *See* Dkt. 486. Plaintiffs' Proposed Jury Instructions, however, omit several important model instructions that

should be included in this case.[1] What's more, Plaintiffs propose several legally erroneous instructions, including for willfulness and agency.

Defendants object to Plaintiffs' Proposed Jury Instructions and respectfully request that this Court use Defendants' Proposed Jury Instructions instead. Defendants address three of the most glaring problems with Plaintiffs' Proposed Jury Instructions below.[2]

## A.    Plaintiffs' Proposed Willfulness Instruction Is Legally Erroneous

Plaintiffs' proposed willfulness instruction invites the jury to "consider whether VOI or Fidelio's behavior was malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith." Dkt. 490 at 13. But the Supreme Court held in *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 579 U.S. 93 (2016), that whether a defendant's conduct is "egregious"—including whether the conduct is "wanton, malicious, bad-faith, deliberate, consciously wrongful, [and] flagrant"— goes to a district court's "discretion in deciding whether to award *enhanced damages*," not willfulness. *Id.* at 103-04 (emphasis added).

The Federal Circuit has similarly confirmed that the Supreme Court's use of "wanton, malicious, and bad-faith" in "*Halo* refers to 'conduct warranting enhanced

---

[1] *Compare* Dkt. 490, *with* Dkt. 486 at 46 ("Prior Art"), 50 ("Level of Ordinary Skill"), 57 ("Lost Profits—Noninfringing Substitutes—Acceptability"), 58 ("Lost Profits—Noninfringement Substitutes—Availability"), 59 ("Lost Profits—Capacity"), 60 ("Lost Profits—Amount of Profit"), 70 ("Reasonable Royalty—Availability of Noninfringing Substitutes"), 71 ("Damages—Apportionment").

[2] Defendants also object to Plaintiffs' Proposed Jury Verdict Form (Dkt. 491). Given the remaining disputes between the parties as to the claims and issues that should go before the jury—including Plaintiffs' newfound agency theory and infringement under the doctrine of equivalents—Defendants propose that the Court address objections to the verdict forms at a later date.

damages,' not conduct warranting a finding of willfulness." *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1329-30 (Fed. Cir. 2021) (quoting *Halo*, 579 U.S. at 103-04), *cert. denied*, 142 S. Ct. 2732 (2022). "Under *Halo*, the concept of 'willfulness' requires a jury to find no more than deliberate or intentional infringement." *Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1378 (Fed. Cir. 2020) (citing *Halo*, 579 U.S. at 105). And "[t]he question of enhanced damages is addressed by the court *once an affirmative finding of willfulness has been made*." *Id.* (emphasis added). It is only "at this second stage"—i.e., whether to enhance damages—that "considerations of egregious behavior and punishment are relevant." *Id.*

Indeed, the Federal Circuit has expressly held that "[q]uestions of whether an accused patent infringer's conduct was 'egregious behavior' or 'worthy of punishment' are therefore *not appropriate* for jury consideration." *Id.* at 1378-79 (emphasis added); *see also Bioverativ Inc. v. CSL Behring LLC*, No. 17-914-RGA, 2021 WL 5936510, at *1 (D. Del. Dec. 14, 2021) (recognizing that it was erroneous to reference a standard of "wanton, malicious, and bad-faith behavior" in considering willfulness at summary judgment (citation omitted)); *Greatbatch Ltd. v. AVX Corp.*, No. 13-723-LPS, 2016 WL 7217625, at *4 n.6 (D. Del. Dec. 13, 2016) (holding that "it is unclear how a jury could (or whether it should) be asked to distinguish between 'egregious' and 'typical' infringement under the Supreme Court's *Halo* standard," because *Halo* described "'egregious infringement behavior' in the context of *District*

11

*Courts'* (not [a] jury's) discretion to grant enhanced damages" (citing *Halo*, 579 U.S. at 103-04)), *aff'd*, 813 F. App'x 609 (Fed. Cir. 2020).

While the AIPLA model instruction on willfulness—which is what Plaintiffs cite in support of their proposed instruction (Dkt. 490 at 13)—includes the "malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith" language, that model was drafted in 2019 *before* the Federal Circuit clarified the difference between willfulness and enhancement in *SRI* and *Eko Brands*. *See* 2019 AIPLA Model Patent Jury Instructions at 11.0; *SRI*, 14 F.4th at 1330; *Eko Brands*, 946 F.3d at 1378-79. In fact, in *Eko Brands*, the Federal Circuit expressly held that similar language in an earlier FCBA model instruction was erroneous. *See Eko Brands*, 946 F.3d at 1378-79 (holding that the inclusion of the phrases "especially worthy of punishment," "reserved for egregious behavior," "malicious," "consciously wrongful," and "bad faith" in earlier version of FCBA model instruction on willfulness instruction was erroneous, even though "the instruction as a whole was not legally erroneous given the limited nature of Eko's objection"). The latest FCBA model instruction on willfulness—which Defendants propose here—no longer includes such terms. *See* Dkt. 486 at 41-42; FCBA Model Patent Jury Instructions, § B.3 at 3.10 (May 2020).

Plaintiffs' inclusion of "malicious, wanton, deliberate, consciously wrongful, flagrant, [and] in bad faith" in their proposed willfulness instruction is irreconcilable with *Halo* and its progeny. In particular, Plaintiffs' proposed instruction conflates the

jury's narrow role in determining willfulness with the Court's discretion in determining enhancement. And it plants in the jurors' minds prejudicial considerations that are ultimately irrelevant to their willfulness determination.

Unlike Plaintiffs' erroneous willfulness instruction, Defendants' proposal is consistent with *Halo* in leaving egregiousness—and whether conduct is malicious, wanton, deliberate, consciously wrongful, flagrant, or in bad faith—for the Court to consider when deciding whether to enhance damages *after* any finding of willfulness. *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 875 F.3d 1369, 1382 (Fed. Cir. 2017) ("[A]n award of enhanced damages does not necessarily flow from a willfulness finding."). Defendants respectfully request that the Court adopt their proposed willfulness instruction.

### B.  Even If the Court Permits Plaintiffs to Inject a New Agency Theory of Liability at the Eleventh Hour, Defendants Object to Plaintiffs' Proposed Agency Instruction

As explained above and in Defendants' Motion to Exclude Plaintiffs' New Agency Theory of Liability (Dkt. 498), this Court should exclude Plaintiffs from presenting a new agency theory of liability at trial. But even if the Court permits Plaintiffs' 11th-hour inclusion of an agency theory for the very first time in proposed jury instructions, Defendants further object to Plaintiffs' proposed agency instruction, which appears to recite an incomplete standard from the Second Circuit. *See* Dkt. 490 at 12.

"Under Florida law, to hold a parent liable as the principal of a subsidiary-agent, Plaintiffs must establish: '(1) acknowledgement by the principal that the agent

will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent.'" *Alvarez Galvez v. Fanjul Corp.*, 533 F. Supp. 3d 1268, 1284-85 (S.D. Fla. 2021) (quoting *Salinero v. Johnson & Johnson*, No. 1:18-CV-23643-UU, 2019 WL 4585215, at *3 (S.D. Fla. Sept. 20, 2019)); *see also MeterLogic, Inc. v. Copier Sols., Inc.*, 126 F. Supp. 2d 1346, 1354-59 (S.D. Fla. 2000); *Sun Tr. Bank v. Sun Int'l Hotels Ltd.*, 184 F. Supp. 2d 1246, 1267-68 (S.D. Fla. 2001). The parent corporation "must exercise control to the extent the subsidiary 'manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'" *Salinero*, 2019 WL 4585215, at *3 (quoting *State v. Am. Tobacco Co.*, 707 So. 2d 851, 855 (Fla. 4th DCA 1998)).

But instead of proposing a standard based in Florida law—as Plaintiffs did for their alter ego/piercing the corporate veil instruction (*see* Dkt. 490 at 11)—Plaintiffs propose an agency instruction plucked from *Second Circuit* cases. *See id.* at 12 (citing *Autronic Plastics, Inc. v. Apogee Lighting, Inc.*, No. 19-CV-6268 (MKB), 2021 WL 5965715 (E.D.N.Y. Dec. 16, 2021)); *see also Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307 (2d Cir. 1963) (addressing agency in the context of copyright infringement). Under Plaintiffs' proposed agency instruction, Plaintiffs must prove that Fidelio "(1) has a direct financial interest in the infringing activity, and (2) has the right and ability to supervise VOI, which is evidenced by some continuing connection between Fidelio and VOI in regard to the infringing activity." *See* Dkt. 490 at 12. Plaintiffs' proposed instruction, however, says nothing about the

14

requirements that Fidelio must acknowledge that VOI would act for it and that VOI must accept the undertaking. *Salinero*, 2019 WL 4585215, at *3. Nor does it explain the necessary degree of *control* by Fidelio over VOI—"to the extent [that VOI] 'manifests no separate corporate interests of its own and functions solely to achieve the purposes of [Fidelio].'" *Id.* (quoting *Am. Tobacco*, 707 So. 2d at 855).

Indeed, Federal Circuit case law dictates that the Second Circuit standard does *not* apply here. In patent cases, while Federal Circuit law controls issues unique to patent law, the Federal Circuit looks to the law of the regional circuit on issues that are not unique to patent law, such as alter ego and agency. *See, e.g.*, *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007) ("Since the alter ego issue is not unique to patent law, we apply the law of the regional circuit."). That is why *Autronic Plastics* applied Second Circuit law regarding agency—the case arose in the Eastern District of New York, i.e., the Second Circuit.

Plaintiffs further cite *British Telecommunications PLC v. IAC/InteractiveCorp*, 356 F. Supp. 3d 405 (D. Del. 2019), in support of their proposed agency instruction. Dkt. 490 at 12. But that case does not support Plaintiffs' proposed instruction based on Second Circuit law either. Instead, Federal Circuit Judge William Bryson applied Third Circuit and Delaware law to evaluate the alter ego and agency questions for a case pending in the District of Delaware. *See Brit. Telecomms.*, 365 F. Supp. 3d at

409.[3] And unlike Plaintiffs' proposed agency instruction, *British Telecommunications* underscores that for liability to arise under an agency theory, the alleged agency relationship must "be directly related to the cause of action." *Id.*; *see also Rush Creek Ranch, LLLP v. Adams*, No. 5:08-cv-149-Oc-10GRJ, 2009 WL 10670504, at *2 (M.D. Fla. Apr. 21, 2009) ("A principal may be held vicariously liable for the acts of its agent committed *within the scope* of the agent's real authority." (emphasis added)).

What's more, neither Plaintiffs' Third Amended Complaint nor Plaintiffs' Proposed Jury Instructions offer any explanation as to why Florida law should apply to their alter ego/piercing the corporate veil theory, but Second Circuit or Delaware law should apply to their agency theory. Indeed, Plaintiffs' inconsistency only underscores the problems with raising entirely new theories of liability on the eve of trial. Nevertheless, to the extent that Delaware law controls over any portion of Plaintiffs' alter ego/piercing the corporate veil theory, Delaware law is clear that "[p]iercing the corporate veil is an action that sounds in equity" and is therefore an issue for the Court—not the jury—to decide. *United States v. Golden Acres, Inc.*, 684 F. Supp. 96, 103 (D. Del. 1988); *Zhai v. Stein*, No. 10C-11-079 (RRC), 2012 WL 1409358, at *7 (Del. Super. Ct. Jan. 6, 2012) ("The Supreme Court of Delaware has unequivocally explained that piercing the corporate veil may only be accomplished

---

[3] The Federal Circuit decision cited in Plaintiffs' jury instructions—*Akamai Technologies, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1023 (Fed. Cir. 2015) (en banc)—is inapplicable here. That case addresses liability in the context of joint infringement of a claim by two actors, and there are no allegations of joint infringement in this case.

in the Court of Chancery because Delaware still embraces the distinctions between law and equity.").

At bottom, there is no basis to provide the jury an agency instruction apparently plucked from Second Circuit law. To the extent the Court allows Plaintiffs to present a new agency theory of liability at trial, Defendants respectfully request that the Court adopt Defendants' proposed agency instruction, which is consistent with well-established principles of agency liability and Florida law. Moreover, to the extent that Delaware law applies to any portion of Plaintiffs' alter ego/piercing the corporate veil theory, the Court—not the jury—should decide the issue.

**C.     Plaintiffs' Proposed Damages Instructions Fail to Instruct the Jury on Several Critical Requirements**

Plaintiffs' Proposed Jury Instructions omit several instructions addressing critical requirements for proving damages, including lost profits and a reasonable royalty. Defendants respectfully request that this Court adopt their proposed instructions addressing each of these requirements.

**Lost Profits—Noninfringing Substitutes—Acceptability and Availability**: To recover lost profits, Plaintiffs must prove, among other things, that there were no available, acceptable, noninfringing substitute products. Consistent with this requirement, both the FCBA Model Patent Jury Instructions and AIPLA Model Patent Jury Instructions include specific instructions addressing the acceptability and availability of noninfringing substitutes. *See* FCBA Model Patent Jury Instructions,

§ B.5 at 5.2 (May 2020); 2019 AIPLA Model Patent Jury Instructions at 10.2.1.4. But Plaintiffs' Proposed Jury Instructions do not include these important explanations—only Defendants have included them. *Compare* Dkt. 490 at 20-21, *with* Dkt. 486 at 55-58; *Am. Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1270 (Fed. Cir. 2008); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). Instead, Plaintiffs attempt to gloss over these requirements by erroneously instructing the jury that a product is not an acceptable noninfringing substitute "if it was the subject of an infringement claim." Dkt. 490 at 20. Yet it is not enough for Plaintiffs to simply allege that a product is the "subject" of an infringement allegation—Plaintiffs are required to prove the "absence of acceptable noninfringing substitutes." *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). Defendants' proposed instructions follow the FCBA Model Patent Jury Instructions and correctly explain these principles to the jury.

**Lost Profits—Capacity and Amount of Profit:** In addressing lost profits, both the FCBA Model Patent Jury Instructions and AIPLA Model Patent Jury Instructions further include specific instructions addressing capacity and how to compute the profits. *See* FCBA Model Patent Jury Instructions, § B.5 at 5.2 (May 2020); 2019 AIPLA Model Patent Jury Instructions at 10.2.1.6, 10.2.1.7. In order to recover lost profits, Plaintiffs must prove that they had the manufacturing and marketing ability to actually make the sales they allegedly lost due to Defendants' infringement. *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1553 (Fed. Cir. 1997). Moreover, Plaintiffs are required to account for any additional costs or expenses that

they would have had to pay to make the allegedly lost sales. *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 745 F.2d 11, 22 (Fed. Cir. 1984). Only Defendants' Proposed Jury Instructions include these important explanations for the jury.

**Reasonable Royalty—Availability of Noninfringing Substitutes:** The AIPLA Model Patent Jury Instructions correctly recognize that in determining a reasonable royalty, the jury may also consider evidence concerning the availability and cost of acceptable noninfringing substitutes to the patent invention. 2019 AIPLA Model Patent Jury Instructions at 10.2.5.8; *see also Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017). Plaintiffs, however, have erroneously omitted this instruction from their proposal. Consistent with controlling Federal Circuit law, this instruction should be included here. *See* Dkt. 486 at 70.

**Apportionment:** Both the Supreme Court and the Federal Circuit have repeatedly held that any damages award must be apportioned to the value attributable to the patent invention, as distinct from unpatented features. *See, e.g.*, *Garretson v. Clark*, 111 U.S. 120, 121 (1884); *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). Indeed, both the FCBA Model Patent Jury Instructions and AIPLA Model Patent Jury Instructions include specific instructions addressing apportionment. *See* FCBA Model Patent Jury Instructions, § B.5 at 5.12 (May 2020); 2019 AIPLA Model Patent Jury Instructions at 10.2.5.4. Yet Plaintiffs' Proposed Jury Instructions erroneously omit any discussion of apportionment. This Court should include Defendants' proposed instruction on apportionment. Dkt. 486 at 71.

**No Double Recovery:** Plaintiffs only remaining liability claims against Fidelio arise from alleged acts of infringement by *VOI*. *See* Dkt. 490 at 11-12. Accordingly, Defendants also propose a specific instruction for the jury to avoid awarding a double recovery arising from the same allegedly infringing sales. *See* Dkt. 486 at 54. The prohibition against multiple recoveries arising from the same set of operative facts is well recognized throughout the Eleventh Circuit Pattern Jury Instructions. *See, e.g.*, Eleventh Circuit Pattern Jury Instructions, Civil Cases at 9.33, 10.2 (Annotations and Comments), 10.5 (Annotations and Comments), 11.4 (Mar. 2022). And other courts have similarly recognized that the prohibition against double recovery applies to patent damages. *In re Nintendo of Am., Inc.*, 756 F.3d 1363, 1366 (Fed. Cir. 2014); *Cellular Commc'ns Equip., LLC. v. Apple Inc.*, No. 6:14-cv-251, 2016 WL 6884648, at *3 (E.D. Tex. Aug. 26, 2016) (holding that a plaintiff "cannot receive a double recovery for the same sales"); *Shifferaw v. Emson USA*, No. 2:09-CV-54-TJW-CE, 2010 WL 1064380, at *3 (E.D. Tex. Mar. 18, 2010). This Court should include Defendants' proposed jury instruction expressly prohibiting a double recovery. *See* Dkt. 486 at 54.

Respectfully submitted,

By: /s/ *Cindy A. Laquidara*

Cindy A. Laquidara
Florida Bar No.: 394246
Email:
cindy.laquidara@akerman.com
William C. Handle
Florida Bar No. 1002425
Email:
william.handle@akerman.com
AKERMAN LLP
50 North Laura Street, Suite 3100
Jacksonville, FL  32202
Telephone: (904) 798-3700
Facsimile: (904) 798-3730

Date: December 29, 2022

Sonja W. Sahlsten
Florida Bar No. 119797
sonja.sahlsten@finnegan.com
J. Michael Jakes (*admitted pro hac vice*)
D.C. Bar No. 415471
mike.jakes@finnegan.com
Timothy J. May (*admitted pro hac vice*)
D.C. Bar No. 474276
timothy.may@finnegan.com
Kathleen Daley (*admitted pro hac vice*)
D.C. Bar No. 431887
kathleen.daley@finnegan.com
W. Brady Nash (*admitted pro hac vice*)
D.C. Bar No. 1782080
brady.nash@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001
(202) 408-4000

Benjamin A. Saidman (*admitted pro hac vice*)
Georgia Bar No. 117695
benjamin.saidman@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
271 17th Street, NW, Suite 1400
Atlanta, Georgia 30363
(404) 653-6400

*Attorneys for Defendants Veterinary Orthopedic Implants, Inc. and Fidelio Capital AB*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 29, 2022, I electronically filed the

foregoing document with the Clerk of the Court using the CM/ECF system, which

will send a notice of electronic filing to all CM/ECF participants.

*/s/ Cindy A. Laquidara*
Cindy A. Laquidara, Esq.